bead or a series of beads as concentric rings protruding from the seal surface of protuberance 17. While not wishing to be bound by theory, it is believed that a textured surface on protuberance 17 can allow for the application of a more uniform and/or concentrated pressure during a sealing process. Textured surfaces can provide increased sealing capability between protuberance 17 and removeable closure 19 due to any irregularities introduced during molding, trimming, shipping processes and the like during manufacture of container 11.

The Removable Closure

[0058]Again referring to FIG. 1, fresh packaging system 10 comprises a closure 18 that is a laminated, peelable seal 19 that is removeably attached and sealed to container 11. Peelable seal 19 has a hole beneath which is applied a degassing valve, indicated as a whole by reference number 20. One-way valve 20 can be heat welded or glued to peelable seal 19.

[0059]In a preferred embodiment according to FIG. 3, the interior of peelable seal 19 to the outer side of peelable seal 19 is a laminate and comprises, in sequence, an inner film 21, such as polyethylene, a barrier layer 22, such as a metallized sheet, preferably metallized PET, metallized PE, or aluminum, and an outer film of plastic 23, such as PET. Inner film 21 is preferably formed from the same material as the outer layer of container 11. Thus, inner film 21 is preferably a polyolefin, and more preferably polyethylene (PE). Plastic outer film 23 is preferably produced from a material such as polyester. However, one skilled in the art would realize that other materials, such as a foil closure, and other stretchable and non-stretchable layer structures can be used and still remain within the scope of the present invention. Additionally, an oxygen scavenger, as described supra, can be incorporated into, or on, any layer of peelable seal 19 to remove free, or complexed, oxygen.

[0060]Both inner film 21 and barrier layer 22 are perforated, preferably by means of cuts, pricks, or stampings, to form flow opening 24, as shown in FIG. 3. In the area above the outlet opening, outer film 23 is not laminated to barrier layer 22, thereby forming longitudinal channel 25. Channel 25 extends the entire width of the laminate so that during manufacture, channel 25 extends to the edge of closure 18.

[0061]As a result, a very simple and inexpensive one-way valve 20 is formed by means of the non-laminated area of outer film 23 and outlet opening 24. The gases produced by the contents within container 11 may flow through valve 20 to the surrounding environment. Since an overpressure exists in container 11, and since outer film 23 usually adheres or at least tightly abuts barrier layer 22 because of the inner pressure, unwanted gases, such as oxygen, are prevented from flowing into container 11 and oxidizing the contents. Thus, outer film 23 serves as a membrane that must be lifted by the inner gas pressure in the packing in order to release gas. It is preferred that one-way valve 20 respond to pressures developed within container 11. This pressure can exceed 10 millibars, and preferably exceed 15 millibars, and more preferably would exceed 20 millibars, and most preferably, exceed 30 millibars.

[0062]Additionally, a small amount of liquid can be filled into channel 25. The liquid can be water, siloxane-based oils, or oil treated with an additive so that the oil is prevented from becoming rancid prior to use of the product. The pressure at which the release of internal off gas from container 11 occurs can be adjusted by varying the viscosity of the liquid within channel 25.

[0063]In an alternative, but non-limiting, embodiment, a one-way degassing valve can comprise a valve body, a mechanical valve element, and a selective filter as described in U.S. Pat. No. 5,515,994, herein incorporated by reference.

[0064]Closure 18 is preferably sealed to container 11 along a rim (protuberance) 17 of

Exhibit _2_
Page _44_

container 11. Preferable, but non-limiting, methods of sealing include a heat sealing method incorporating a hot metal plate applying pressure and heat through the closure material and the container rim, causing a fused bond. The peel strength achieved is generally a result of the applied pressure, temperature, and dwell time of the sealing process. However, it should be known to one skilled in the art, that other types of seals and seal methods could be used to achieve a bond with sufficient and effective seal strength, including, but not limited to, a plurality of annular sealing beads disposed on rim 17.

[0065]As shown in FIG. 8, in an alternative embodiment, peelable seal 19c of container 11c can include a pivotable pouring device 50. Pivotable pouring device 50 can be placed at any location on peelable seal 19a or at any position on container 11c. In a preferred embodiment, it is also believed that pivotable pouring device 50 could be disposed on a non-peelable seal located under peelable seal 19c in the interior volume of container 11c. This could enable a user to remove peelable seal 19c, exposing the non-peelable seal having the pivotable pouring device 50 disposed thereon. The user could then pivot the pivotable pouring device 50 to dispense a product contained within container 11c. After dispensing the product from container 11c via pivotable pouring device 50, the user could pivot the pivotable pouring device 50 to effectively close non-peelable seal, thereby effectively sealing container 11c. As would be known to one of skill in the art, exemplary, but non-limiting, examples of pivotable pouring device 50 include pouring spouts.

[0066]It is believed that pivotable pouring device 50 could have dimensions that facilitate the flow of product from container 11c, as would be known to one of skill in the art. A depression, slot, or other orifice can be disposed on either peelable seal 19c or the non-peelable seal to facilitate insertion of a user's appendage or other device to aid in the application of force necessary to pivot pivotable pouring device 50.

[0067]In the alternative embodiment of FIG. 8a, a striker bar 52, formed from either a portion of peelable seal 19d or a non-peelable seal, can be used to strike off excess product from a volumetric measuring device. Without wishing to be bound by theory, it is believed that striker bar 52 could facilitate more consistent measurements of product by increase the packing density and volume present within the volumetric measurement device. Further, it is believed that the presence of the remainder of peelable seal 19d or a non-peelable seal can assist in the retention of the various aromatic and non-aromatic gasses that naturally evolutes from a product held within container 11d.

The Overcap

[0068]Referring to FIG. 1, fresh packaging system 10 optionally comprises an overcap 30 comprised of dome portion 31, skirt portion 32, rib 33, and optionally vent 34. As a non-limiting example, overcap 30 is generally manufactured from a plastic with a low flexural modulus, for example, low-density polyethylene (LDPE), high-density polyethylene (HDPE), polyethylene (PE), polypropylene (PP), linear low-density polyethylene (LLDPE), polycarbonate, polyethylene terephthalate (PET), polystyrene, polyvinyl chloride (PVC), co-polymers thereof, and combinations thereof. This allows for an overcap 30 that has a high degree of flexibility, yet, can still provide sufficient rigidity to allow stacking of successive containers. By using a flexibile overcap 30, mechanical application during packaging as well as re-application of overcap 30 to container 11 after opening by the consumer is facilitated. A surprising feature of a flexible overcap 30 is the ability of the end user to "burp" excess atmospheric gas from container 11 thereby reducing the amount of oxygen present. Further, an oxygen scavenger, as described supra, can be incorporated into, or on, any layer of peelable seal 19 to remove free, or complexed, oxygen.

[0069]Dome portion 31 is generally designed with a curvature, and hence height, to accommodate for an outward displacement of closure 18 from container 11 as a packaged product, such as roast and ground coffee, off gases. The amount of curvature needed in



Exhibit 2
Page 45

dome portion 31 can be mathematically determined as a prediction of displacement of closure 18. As a non-limiting example, a nominal height of dome portion 31 can be 0.242 inches (0.61 cm) with an internal pressure on closure 18 of 15 millibars for a nominal 6-inch (15.25 cm) diameter overcap. Further, the dome portion 31 is also generally displaceable beyond its original height as internal pressure rises in container 11, causing closure 18 to rise prior to the release of any off gas by one-way valve 20.

[0070]Referring to FIG. 4, overcap 30 comprises a rib 33. Rib 33 protrudes outwardly from the generally planar dome portion 31 and serves as a physical connection between dome portion 31 and skirt 32. Generally, skirt 32 has a hook shape for lockingly engaging protuberance 17 of container 11. Rib 33 isolates skirt 33 from dome portion 31, acting as a cantilever hinge so that outward deflections (O) of dome portion 31 are translated into inward deflections (I) of skirt 33. This cantilevered motion provides for an easier application of overcap 30 to container 11 and serves to effectively tighten the seal under internal pressures.

[0071]Additionally, rib 33 can allow for successive overcaps to be stacked for shipping. Skirt 32 preferably has a flat portion near the terminal end to allow for nesting of successive overcaps. Furthermore, rib 33 can extend sufficiently away from dome portion 31 so that successive overcaps may be stacked with no disruption of the stack due to a maximum deflection of closure 18 and the dome portion 31 of overcap 30. Without desiring to be bound by theory, it is believed that the downward load force rests entirely on rib 33 rather than across dome portion 31. Resting all downward forces on rib 33 also protects closure 18 from a force opposing the outward expansion of closure 18 from container 11 due to the off gas generated by a contained product.

[0072]As shown in FIG. 5, an exploded view of the region around rib 33, dome portion 31 correspondingly mates with protuberance 17 of container 11. As a non-limiting example, container 11, after opening, requires replacement of overcap 30. A consumer places overcap 30 on container 11 so that an inside edge 34 of rib 33 contacts protuberance 17. A consumer then applies outward pressure on skirt 32 and downward pressure on dome portion 31, expectorating a majority of ambient air entrapped within the headspace of container 11. As shown in FIG. 6, the inside edge 34 of rib 33 then fully seats on protuberance 17, producing a complete seal. In a non-limiting example, protuberance 17 varies from -5[deg] to +5[deg] from a line perpendicular to body 14. Inside edge 34 is designed to provide contact with protuberance 17 for this variation. As another non-limiting example, overall travel of the inside edge 34 of rib 33 has been nominally measured at three millimeters for a protuberance 17 width of four to six millimeters. It has been found that when protuberance 17 is angularly disposed, protuberance 17 forms a sufficient surface to provide for sealing adhesive attachment of closure 18 to protuberance 17.

[0073]Additionally, the inside edge 34 of rib 33 can effectively prevent the pollution of protuberance 17, with or without closure 18 in place, thereby providing a better seal. As pressure within container 11 builds due to off gas from the entrained product, dome portion 31 of overcap 30 deflects outward. This outward deflection causes the inside edge 34 of rib 33 to migrate toward the center of container 11 along protuberance 17. This inward movement results in a transfer of force through rib 33 to an inward force on skirt portion 32 to be applied to container wall 14 and the outer portion of protuberance 17, resulting in a strengthened seal. Additionally, significant deflections of dome 31 due to pressurization of closure 18 causes the inside edge 34 to dislocate from protuberance 17 allowing any vented off gas to escape past protuberance 17 to the outside of overcap 30. This alleviates the need for a vent in overcap 30.

[0074]As shown in FIG. 9, in an alternative embodiment of overcap 30b comprises a plurality of nested cylindrical formations. In other words, in this alternative embodiment, the base of overcap 30b, having a diameter, d, forms a base portion 60 upon which the upper portion 62

Exhibit _2_
Page _46_

of overcap 30b, having a diameter, d-Deltad, is disposed thereon. The upper portion 62 of overcap 30b can have an annular protuberance 64 disposed thereon. It is believed that the annular protuberance 64 disposed upon the upper portion 62 of overcap 30b can provide a form upon which annular ring 42 disposed upon closed bottom 13, can lockably nest.

[0075]As shown in FIGS. 9a and 10, in an alternative embodiment, the inner surface of the base portion 60 of overcap 30b can have an annular sealing ring 66 disposed thereon. Annular sealing ring 66 was surprisingly found to facilitate the mating of surfaces corresponding to annular sealing ring 66 and the finish portion of container 11. Mating the surfaces in this manner can provide an audible recognition that both surfaces have made contact and that a secure seal between protuberance 17 and the internal surface of overcap 30b has been made. A surprising feature of overcap 30b is the ability of the end user to "burp" excess atmospheric gas from container 11 thereby reducing the amount of oxygen present. Further, it is believed that an inner surface of base portion 60 mate with at least a portion of protuberance 17 so that there is provided an overlap of the inner surface of base portion 60 with protuberance 17. One of skill in the art would realize that any configuration of the annular sealing ring 66 may be used to provide the facilitation of the corresponding mating surfaces, including, but not limited to, interrupted annular rings, a plurality of protuberances, and combinations thereof. It is also believed that providing a protuberance 69 in the form of an annular ring, plurality of protuberances, and other protuberances known to one of skill in the art, can provide a method of stacking a plurality of overcaps 30b prior to overcap 30b being applied to a container.

[0076]As shown in FIG. 9a, it was surprisingly found that a plurality of protuberances 68 disposed upon the inner surface of overcap 30b could facilitate the replacement of overcap 30b upon container 11. Without desiring to be bound by theory, it is believed that a plurality of protuberances 68 could facilitate overcap 30b replacement. It is further believed that the plurality of protuberances 68 disposed upon the inner surface of overcap 30b can effectively translate the horizontal component of a force applied to overcap 30b during replacement of overcap 30b upon container 11 through the plurality of protuberances 68 thereby allowing the plurality of protuberances 68 to effectively traverse over the edge of container 11 and ultimately aligning the longitudinal axis of overcap 30b with the longitudinal axis of container 11. It would be realized by one of skill in the art that the plurality of protuberances 68 could comprise a plurality of spherical, semi-spherical, elliptical, quarter-round, and polygonal projections, indentations, and combinations thereof.

Coffee Packaging

[0077]A preferred method of packaging a whole, roast coffee in accordance with the present invention to provide a more freshly packed coffee product, is detailed herein.

[0078]A whole coffee bean is preferably blended and conveyed to a roaster, where hot air is utilized to roast the coffee to the desired degree of flavor development. The hot roasted coffee is then air-cooled and subsequently cleaned of extraneous debris.

[0079]In a preferred, but non-limiting step, a whole roast coffee is cracked and normalized (blended) before grinding to break up large pieces of chaff. The coffee is then ground and cut to the desired particle size for the grind size being produced. The ground coffee then preferably enters a normalizer that is connected to the bottom of the grinder heads. In the normalizer, ground coffee is preferably slightly mixed, thus, improving the coffee appearance. As another non-limiting step, the coffee discharges from the normalizer and passes over a vibrating screen to remove large pieces of coffee.

[0080]The ground coffee is then preferably sent to a filler surge hopper and subsequently to a filling apparatus (filler). The filler weighs a desired amount of coffee into a bucket that in turn, dumps the pre-measured amount of coffee into a container manufactured as detailed

Exhibit 2
Page 41

supra. The container is then preferably topped-off with an additional amount of coffee to achieve the desired target weight.

[0081]The container is then preferably subjected to an inert gas purge to remove ambient oxygen from the container headspace. Non-limiting, but preferred, inert gases are nitrogen, carbon dioxide, and argon. Optionally, an oxygen scavenger, as described supra, and generally present in the form of a packet can be included within the container to provide removal of free or complexed oxygen. A closure, as disclosed supra, is placed on the container to effectively seal the contents from ambient air. Preferably the closure has a one-way valve disposed thereon. An overcap, disclosed supra, is then applied onto the container, effectively covering the closure and locking into the container sidewall ridge. The finished containers are then packed into trays, shrink wrapped, and unitized for shipping.

Freshness

[0082]It is believed that the resulting inventive packaging system provides a consumer with a perceptively fresher packed roast and ground coffee that provides a stronger aroma upon opening of the package and the perception of a longer-lasting aroma that is apparent with repeated and sustained openings of the packaging system. Not wishing to be bound by any theory, it is believed that roast and ground coffee elutes gases and oils that are adsorbed onto the polyolefinic compound comprising the inside of the container and closure. Upon removal of the closure, the polyolefinic compound then evolutes these adsorbed gases and oils back into the headspace of the sealed container. It is also believed that the inventive packaging system can also prevent the infiltration of deleterious aromas and flavors into the packaging system. Thus, the construction of the instant packaging system can be altered to provide the benefit of most use for the product disclosed therein. To this end, it is further believed that the packaging system can be utilized for the containment of various products and yet provide the benefits discussed herein.

[0083]Applicants characterize the surprising aroma benefits provided by the present article of manufacture in terms of the article's "overall coffee aroma value", which is an absolute characterization. Applicants also characterize the aroma benefits relative to a control article (a prior art metallic can, as described below). Such a characterization is referred to herein as the article's "differential coffee aroma value". The methods for measuring overall coffee aroma value and differential coffee aroma value are described in detail in the Test Method section infra. The article of manufacture will have an overall coffee aroma value of at least about 5.5. Preferably, the article will have an overall coffee aroma value of at least about 6, more preferably at least about 6.5, still more preferably at least about 7, and still more preferably at least about 7.5.

[0084]Preferably, the article of manufacture of the present invention will have a differential coffee aroma value of at least about 1.0, more preferably at least about 2.0, and most preferably at least about 2.8.

[0085]Test Method

[0086]A test container and an existing industry standard metallic container (control container) are packed with identical fresh roast and ground coffee product, prepared as stated above, and stored for 120 days prior to testing. Immediately prior to testing, the containers are emptied and wiped with a paper towel to remove excess roast and ground coffee product. Each container is then capped and let stand prior to testing in order to equilibrate. During testing, each container used is exchanged with another similarly prepared, but, unused container at one-hour intervals. A control container is a standard 603, tin-plated, 3-pound (1.36 Kg), vacuum-packed, steel can.

[0087]Individual panelists are screened for their ability to discriminate odors utilizing various



Exhibit 2
Page 48

standard sensory methodologies as part of their sensory screening. Panelists are assessed for aroma discriminatory ability using the gross olfactory acuity-screening test (universal version) as developed by Sensonics, Inc., for aroma. This test method involves a potential panelist successfully identifying aromas in a "scratch and sniff" context.

[0088]Forty successful, qualified panelists are then blindfolded and each evaluates a test container and a control container. Each blindfolded panelist smells a first container (either test container or control container) and rates the aroma on a 1 to 9 point scale (integers only) with reference to the following description: no aroma (1) to a lot of aroma (9). After a brief relief period, the blindfolded panelist evaluates the second container. The range for overall aroma is again assessed by panelists using the same rating system.

[0089]The panel results for overall coffee aroma value are then tabulated and statistically evaluated. Standard deviations based on a Student T statistical test are calculated with 95% confidence intervals to note where statistically significant differences occur between the mean values of the two products tested. Exemplary and statistically adjusted results of a "blind test" panel using existing packaging methodologies for roast and ground coffee are tabulated in Table 3, as follows:

[0090]

Search terms may have been found within the contents of this table. Please see the table in the original document.

[0091]Based upon this test panel, it was surprisingly found that the present articles of manufacture provide a perceived "fresher" roast and ground coffee end product for a consumer. The improvement in overall coffee aroma was increased from the control sample adjusted panel value of 4.5 to an adjusted panel value of 7.3 for the inventive article, resulting in a differential adjusted value of 2.8.

[0092]While particular embodiments of the present invention have been illustrated and described, it will be obvious to those skilled in the art that various changes and modifications may be made without departing from the spirit and scope of the invention. One skilled in the art will also be able to recognize that the scope of the invention also encompasses interchanging various features of the embodiments illustrated and described above. Accordingly, the appended claims are intended to cover all such modifications that are within the scope of the invention.

**ENGLISH-CLAIMS:**
Return to Top of Patent

What is claimed is:

1. A packaging system comprising: a container having a longitudinal axis and comprising a closed bottom, an open top, and a body having an enclosed perimeter between said bottom and said top;wherein said bottom, top, and body together define an interior volume;wherein said body comprises at least one region of deflection disposed thereon, and wherein said region of deflection allows flexion and thereby has less resistance to flexing than the body of said container proximate to said region of deflection;a protuberance continuously disposed around the perimeter of said body proximate to said top wherein said protuberance forms a ridge external to said body;a handle disposed on said body; anda flexible closure removably attached and sealed to said protuberance;wherein said bottom and said body are constructed



Exhibit ___7___
Page ___4A___

from a material having a tensile modulus number ranging from at least about 35,000 pounds per square inch (2,381 atm) to at least about 650,000 pounds per square inch (44,230 atm);wherein said container has a top load capacity of at least about 16 pounds (7.3 kg); and wherein said closure has a one-way valve disposed thereon.

2. The packaging system as claimed in claim 1 wherein said flexible closure comprises a foil.

3. The packaging system as claimed in claim 1 wherein said flexible closure is a laminate comprising a first layer, a second layer, and a barrier layer disposed therebetween.

4. The packaging system as claimed in claim 3 wherein said first layer is a polyolefin.

5. The packaging system as claimed in claim 4 wherein said valve is responsive to internal pressures within said container exceeding 10 millibars.

6. The packaging system as claimed in claim 5 wherein said valve is responsive to internal pressures within said container exceeding 20 millibars.

7. The packaging system as claimed in claim 6 wherein said valve is responsive to internal pressures within said container exceeding 30 millibars.

8. The packaging system as claimed in claim 1 wherein said bottom and said body are formed from a blow-moldable material.

9. The packaging system as claimed in claim 8 wherein said material is a polyolefin.

10. The packaging system as claimed in claim 8 wherein said blow-moldable material is selected from the group consisting of polycarbonate, low density polyethylene, high density polyethylene, polyethylene terephthalate, polypropylene, polystyrene, polyvinyl chloride, co-polymers thereof, and combinations thereof.

11. The packaging system as claimed in claim 1 wherein said material is a multi-layered structure.

12. The packaging system as claimed in claim 11 wherein said multi-layered structure further comprises a polyolefin layer proximate to said interior volume and at least one layer that is an oxygen barrier.

13. The packaging system as claimed in claim 12 wherein said polyolefin is selected from the group consisting of low density polyethylene, high density polyethylene, polypropylene, co-polymers thereof, and combinations thereof.

14. The packaging system as claimed in claim 1 wherein said handle is integral with said body.

15. The packaging system as claimed in claim 1 wherein said handle is substantially parallel to said longitudinal axis of said container.

16. The packaging system as claimed in claim 1 further comprising an overcap having a rib disposed proximate to and along the perimeter of said overcap, said rib defining an inner dome portion and an outer skirt portion of said overcap.

17. The packaging system as claimed in claim 16 wherein said rib has a height at least equal to the maximum displacement of said dome portion.

18. The packaging system as claimed in claim 16 wherein said overcap is constructed from a

Exhibit ___2___
Page ___50___

material selected from the group consisting of polycarbonate, low density polyethylene, high density polyethylene, polyethylene terephthalate, polypropylene, polystyrene, polyvinyl chloride, co-polymers thereof, and combinations thereof.

19. The packaging system of claim 1 wherein said at least one region of deflection is responsive to at least one force internal or external to said container.

20. The packaging system as claimed in claim 1 wherein said tensile modulus number ranges from at least about 40,000 pounds per square inch (2,721 atm) to at least about 260,000 pounds per square inch (17,692 atm).

21. The packaging system as claimed in claim 20 wherein said tensile modulus number ranges from at least about 90,000 pounds per square inch (6,124 atm) to at least about 150,000 pounds per square inch (10,207 atm).

22. The packaging system as claimed in claim 1 wherein coffee is placed therein.

23. The packaging system as claimed in claim 22 wherein said coffee is roast and pound.

24. The packaging system as claimed in claim 23 wherein said container containing said roast and ground coffee is flashed with an inert gas.

25. The packaging system as claimed in claim 24 wherein said inert gas is selected from the group consisting of nitrogen, carbon dioxide, argon, and combinations thereof.

26. The fresh packaging system as claimed in claim 1 wherein said top load capacity is at least about 48 pounds (21.8 Kg).

27. A method for packing coffee using the fresh packaging system of claim 1 comprising the steps of: filling said container with roast and ground coffee;flushing said container with an inert gas; and,sealing said container with said flexible closure.

28. The method of claim 27 further comprising the step of: placing an overcap over said flexible closure, said overcap having a rib disposed proximate to and along the perimeter of said overcap, said rib defining an inner dome portion and an outer skirt portion of said cap.

29. The method of claim 27 further wherein said flexible closure further comprises a valve responsive to internal pressures within said container exceeding 10 millibars.

30. The method of claim 27 wherein said handle is integral with said body.

31. The packaging system of claim 1, wherein said container further comprises at least one rib parallel to the longitudinal axis, said rib adding structural stability to said container with respect to top load capacity.

32. The packaging system of claim 31 wherein said at least one region of deflection is in the form of a rectangular panel and said at least one rib is proximate thereto.

33. An article of manufacture comprising: a closed bottom;an open top;a body forming an enclosed perimeter between said bottom and top;wherein said bottom, top, and body together define an interior volume;wherein said body comprises at least one region of deflection disposed thereon, and wherein said region of deflection allows flexion and thereby has less resistance to flexing than the body of said container proximate to said region of deflection;wherein said body includes a protuberance continuously disposed around the perimeter of said body proximate to said top; and,wherein said bottom and body are constructed from a polyolefin;a flexible closure having a one-way valve disposed thereon, the

Exhibit ___2___
Page ___51___

closure removably attached to said protuberance wherein said closure forms a seal with said protuberance;roast and ground coffee contained within said interior volume; and,wherein said article of manufacture has an overall coffee aroma value of at least about 5.5.

34. The article of manufacture of claim 33 wherein said overall coffee aroma value is at least about 6.5.

35. The article of manufacture of claim 34 wherein said overall coffee aroma value is at least about 7.3.

36. The article of manufacture of claim 33 wherein said polyolefin is selected from the group consisting of low density polyethylene, high density polyethylene, polypropylene, co-polymers thereof, and combinations thereof.

37. A packaging system comprising: a container for holding coffee having a longitudinal axis and comprising a closed bottom, an open top, a handle, and a body having an enclosed perimeter between said bottom and said top;wherein said bottom, top, and body together define an interior volume;wherein said body comprises at least one region of deflection disposed thereon, and wherein said region of deflection allows flexion and thereby has less resistance to flexing than the body of said container proximate to said region of deflection;a protuberance continuously disposed around the perimeter of said body proximate to said top wherein said protuberance forms a ridge external to said body;a flexible closure removably attached and sealed to said protuberance; and, wherein said bottom and said body are constructed from a material having a tensile modulus number ranging from at least about 35,000 pounds per square inch (2,381 atm) to at least about 650,000 pounds per square inch (44,230 atm); and wherein said container has a top load capacity of at least about 16 pounds (7.3 kg).

38. The packaging system of claim 37 wherein said handle is disposed on said body of said container.

39. The packaging system of claim 37 wherein said handle is integral with said body.

40. The packaging system of claim 37 wherein said handle is substantially parallel to said longitudinal axis of said container.

41. The packaging system of claim 37 wherein said bottom and said body are formed from a material selected from the group consisting of polycarbonate, low density polyethylene, high density polyethylene, polyethylene terephthalate, polypropylene, polystyrene, polyvinyl chloride, co-polymers thereof and combinations thereof.

42. The packaging system of claim 37 wherein said container contains coffee therein.

43. The packaging system of claim 37 wherein said container contains roast and ground coffee therein.

44. A packaging system comprising: a container for holding coffee having a longitudinal axis and comprising a closed bottom, an open top, a handle, a one-way valve and a body having an enclosed perimeter between said bottom and said top;wherein said bottom, top, and body together define an interior volume;wherein said body comprises at least one region of deflection disposed thereon, and wherein said region of deflection allows flexion and thereby has less resistance to flexing than the body of said container proximate to said region of deflection;a protuberance continuously disposed around the perimeter of said body proximate to said top wherein said protuberance forms a ridge external to said body;a flexible closure removably attached and sealed to said protuberance; and,wherein said bottom and said body are constructed from a material selected from the group consisting of polycarbonate, low

Exhibit ___7___
Page ___57___

density polyethylene, high density polyethylene, polyethylene terephthalate, polypropylene, polystyrene, polyvinyl chloride, co-polymers thereof and combinations thereof.

45. The packaging system of claim 44 wherein said handle is disposed on said body of said container.

46. The packaging system of claim 44 wherein said handle is integral with said body.

47. The packaging system of claim 44 wherein said handle is substantially parallel to said longitudinal axis of said container.

48. The packaging system of claim 44 wherein said container contains coffee therein.

49. The packaging system of claim 48 wherein said coffee is roast and ground.

50. A packaging system comprising: a container for holding coffee having a longitudinal axis and comprising a closed bottom, an open top, a handle, and a body having an enclosed perimeter between said bottom and said top; wherein said bottom, top, and body together define an interior volume; wherein said body comprises at least one region of deflection disposed thereon, and wherein said region of deflection allows flexion and thereby has less resistance to flexing than the body of said container proximate to said region of deflection; a protuberance continuously disposed around the perimeter of said body proximate to said top wherein said protuberance forms a ridge external to said body; a flexible closure removably attached and sealed to said protuberance; and, wherein said bottom and said body are constructed from a material selected from the group consisting of polycarbonate, low density polyethylene, high density polyethylene, polyethylene terephthalate, polypropylene, polystyrene, polyvinyl chloride, co-polymers thereof and combinations thereof.

51. The packaging system of claim 50 wherein said handle is disposed on said body of said container.

52. The packaging system of claim 50 wherein said handle is integral with said body.

53. The packaging system of claim 50 wherein said handle is substantially parallel to said longitudinal axis of said container.

54. The packaging system of claim 50 wherein said container contains coffee therein.

55. The packaging system of claim 54 wherein said coffee is roast and ground.

**SYS-LOAD-DATE:** April 18, 2007

Source: Command Searching > Utility, Design and Plant Patents ⓘ
Terms: patno=7169418 (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Wednesday, May 23, 2007 - 1:18 PM EDT

 LexisNexis®    About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Exhibit ___2___
Page ___53___

**LexisNexis®** *Total Research System*

Switch Client ⁞ Preferences ⁞ Feedback ⁞ Sign Off ⁞ ? Help

⁞ *My Lexis*™ ⁞ Search ⁞ Research Tasks ⁞ Search Advisor ⁞ Get a Document ⁞ *Shepard's®* ⁞ Alerts ⁞          History ⁞ 🖉

Sources ⁞ Guided Search Forms ⁞ Command Searching ⁞

**Command Searching > Patent Cases from Federal Courts and Administrative Materials** ⁱ

### Enter Search Terms                                                    ? ⁞ Search Hel

◉ Terms and Connectors   ○ Natural Language   ○ Easy Search

┌─────────────────────────────────────────────┐ ▲  Suggest Terms   🔍 Search
│ 7169418 or 7,169,418                          │    for My Search
│                                               │ ▼
└─────────────────────────────────────────────┘    Check Spelling

**Restrict by Document Segment:**

Select a document segment, enter search terms for the segment, then click Add.

[ Select a Segment ▾ ]   [                    ]   [ Add ↑ ]

Note: Segment availability differs between sources. Segments may not be applied consistently across sources.

**Restrict by Date:**

◉ No Date Restrictions ▾   ○ From [        ]  To [        ]   Date Formats...

| Search Con |  |
|---|---|
| and | and |
| or | or |
| w/N | with |
| pre /N | prec |
| w/p | in s |
| w/seg | in s |
| w/s | in s |
| and not | and |
| > More Connec |  |

**How Do I...?**

> Use wildcard
  for one or m
  search term?
> Restrict by d
> Restrict by d

🖉 View

---



*My Lexis*™ | Search | Research Tasks | Search Advisor | Get a Document | *Shepard's®* | Alerts
History | Delivery Manager | Switch Client | Preferences | Feedback | Sign Off | Help

**About LexisNexis** | **Terms & Conditions**
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Exhibit 2
Page 54

## No Documents Found!
No documents were found for your search terms
"7169418 or 7,169,418"

---

Click "Save this search as an Alert" to schedule your search to run in the future.

- OR -

Click "Edit Search" to return to the search form and modify your search.

Suggestions:
- Check for spelling errors .
- Remove some search terms.
- Use more common search terms, such as those listed in "Suggested Words and Concepts"
- Use a less restrictive date range.

---

 ✓ Save this Search as an Alert    [Edit Search]

LexisNexis®    About LexisNexis  |  Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Exhibit ___2___
Page ___55___

**LexisNexis®** *Total Research System*

Switch Client | Preferences | Feedback | Sign Off | ? Help

*My Lexis™* | Search | Research Tasks | Search Advisor | Get a Document | *Shepard's®* | Alerts     History | 🖰

Sources | Guided Search Forms | Command Searching

Command Searching > Patent, Trademark & Copyright Periodicals, Combined ⓘ

**Enter Search Terms**                                                                                   ? ■ ■ Search Hel

◉ **Terms and Connectors**   ○ **Natural Language**   ○ **Easy Search**

| 7169418 or 7,169,418 | ▲ | Suggest Terms for My Search | 🔍 **Search** |
|---|---|---|---|
| | ▼ | Check Speling | |

**Search Con**

| and | and |
| or | or |
| w/N | with |
| pre /N | prec |
| w/p | in s: |
| w/seg | in s: |
| w/s | in s: |
| and not | and |
| >More Connec |

**Restrict by Document Segment:**

Select a document segment, enter search terms for the segment, then click Add.

Select a Segment ▼ [          ] [ Add ↑ ]

Note: Segment availability differs between sources. Segments may not be applied consistently across sources.

**How Do I...?**
> Use wildcard
  for one or m
  search term?
> Restrict by d
> Restrict by d

**Restrict by Date:**

◉ No Date Restrictions ▼   ○ From [       ] To [       ]     Date Formats...

📖 Vie

*My Lexis™* | Search | Research Tasks | Search Advisor | Get a Document | *Shepard's®* | Alerts
History | Delivery Manager | Switch Client | Preferences | Feedback | Sign Off | Help

**LexisNexis®**     About LexisNexis  | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Exhibit   7
Page    56

## No Documents Found!
No documents were found for your search terms
**"7169418 or 7,169,418"**

Click "Save this search as an Alert" to schedule your search to run in the future.

- OR -

Click "Edit Search" to return to the search form and modify your search.

Suggestions:
- Check for spelling errors .
- Remove some search terms.
- Use more common search terms, such as those listed in "Suggested Words and Concepts"
- Use a less restrictive date range.

 ✓ Save this Search as an Alert    Edit Search

LexisNexis®    About LexisNexis  |  Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Exhibit 7
Page 57

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| INTER PARTES REEXAM CONTROL NUMBER | FILING OR 371(c) DATE | PATENT NUMBER |
|---|---|---|
| 95/000,219 | 03/08/2007 | 7169418 |

STITES & HARBISON PLLC
1199 NORTH FAIRFAX STREET
SUITE 900
ALEXANDRIA, VA 22314

Date Mailed: 03/22/2007

## NOTICE OF *INTER PARTES* REEXAMINATION REQUEST FILING DATE

Requester is hereby notified that the filing date of the request for *inter partes* reexamination is 03/08/2007, the date that the filing requirements of 37 CFR § 1.915 were received.

A decision on the request for *inter partes* reexamination will be mailed within three months from the filing date of the request for *inter partes* reexamination. (See 37 CFR 1.923.)

A copy of this Notice is being sent to the person identified by the requestor as the patent owner. Further patent owner correspondence will be with the latest attorney or agent of record in the patent file. (See 37 CFR 1.33.) Any paper filed should include a reference to the present request for *inter partes* reexamination (by Reexamination Control Number) and should be addressed to: Mail Stop Inter Partes Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria VA 22313-1450.

cc: Patent Owner

27752
THE PROCTER & GAMBLE COMPANY
INTELLECTUAL PROPERTY DIVISION
WINTON HILL BUSINESS CENTER - BOX 161
6110 CENTER HILL AVENUE
CINCINNATI, OH 45224

Legal Instruments Examiner
Central Reexamination Unit 571-272-7705; FAX No. 571-273-9900

PART 3 - OFFICE COPY

Exhibit 2
Page 58

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| *INTER PARTES* REEXAM CONTROL NUMBER | FILING OR 371 (c) DATE | PATENT NUMBER |
|---|---|---|
| 95/000,219 | 03/08/2007 | 7169418 |

27752
THE PROCTER & GAMBLE COMPANY
INTELLECTUAL PROPERTY DIVISION
WINTON HILL BUSINESS CENTER - BOX 161
6110 CENTER HILL AVENUE
CINCINNATI, OH 45224

Date Mailed: 03/22/2007

## NOTICE OF ASSIGNMENT OF *INTER PARTES* REEXAMINATION REQUEST

The above-identified request for *inter partes* reexamination has been assigned to Art Unit 3991. All future correspondence in this proceeding should be identified by the control number listed above and directed to: Mail Stop Inter Partes Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria VA 22313-1450.

A copy of this Notice is being sent to the latest attorney or agent of record in the patent file or, if none is of record, to all owners of record. (See 37 CFR 1.33(c).) If the addressee is not, or does not represent, the current owner, he or she is required to forward all communications regarding this proceeding to the current owner(s) (MPEP 2222). An attorney or agent receiving this communication who does not represent the current owner(s) may wish to seek to withdraw pursuant to 37 CFR 1.36 in order to avoid receiving future communications. If the address of the current owner(s) is unknown, this communication should be returned with the request to withdraw pursuant to Section 1.36.

cc: Third Party Requester

STITES & HARBISON PLLC
1199 NORTH FAIRFAX STREET
SUITE 900
ALEXANDRIA, VA 22314

Legal Instruments Examiner
Central Reexamination Unit 571-272-7705; FAX No. 571-273-9900

PART 3 - OFFICE COPY

Exhibit 7
Page 59

| | |
|---|---|
| Reexam Control # | 95/000,219 |
| Patent No. # | 7,169,219 |
| Confirmation # | 8236 |
| 1st Request Date | 01/31/07 |
| Art Unit | 3991 |
| Examiner | |
| Requestor Docket # | G-1165 |

## RESPONSE TO REEXAMINATION COMMUNICATION

Main Stop *Inter Partes* Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

S I R :

In response to the NOTICE OF FAILURE TO COMPLY WITH *INTER PARTES* REEXAMINATION

REQUEST FILING REQUIREMENTS dated March 5, 2007:

A) please consider the responsive **Remarks** provided hereafter; and

B) please substitute the REPLACEMENT INFORMATION DISCLOSURE STATEMENT BY APPLICANT

(PTO/SB/08) provided herewith for the INFORMATION DISCLOSURE STATEMENT BY APPLICANT

(PTO/SB/08) originally filed.

In view of the REPLACEMENT INFORMATION DISCLOSURE STATEMENT and the remarks

provided, it is submitted that the Reexamination Request is now in condition to receive a filing

date and further action consistent therewith.

It will be noted a Certificate of Service is also provided after the Remarks.

Respectfully submitted,

Date:   March 8, 2007

By:   Marvin Petry
Registration No.:   22,752

**STITES & HARBISON PLLC** ✦ 1199 North Fairfax St. ✦ Suite 900 ✦ Alexandria, VA 22314
TEL: 703-739-4900 ✦ FAX: 703-739-9577 ✦ CUSTOMER NO. 00881

123LT:1931:44118:1:ALEXANDRIA

Exhibit ___2___
Page ___60___

Control # 95/000,219
Req. Docket # G-1165

# ATTACHMENT A

## Remarks

In the outstanding NOTICE OF FAILURE TO COMPLY WITH INTER PARTES REEXAMINATION REQUEST FILING REQUIREMENTS, it was indicated that the IDS listing which accompanied the original Reexamination Request filed on January 31, 2007 was improper because it contained the five noted references which were not discussed in association with any claim for which reexamination was sought. In the NOTICE, it was also indicated that this problem could be overcome by the filing of a replacement IDS listing including only those patents and printed publications that are discussed in association with any claim for which reexamination was sought. Therefore, provided herewith is a <u>REPLACEMENT</u> INFORMATION DISCLOSURE STATEMENT BY APPLICANT from which the objected to references have been deleted.

It will be appreciated that the objected to references were referred to for background purposes in the Reexamination Request and/or Detailed Explanation, and such discussions are still present. It was indicated by an examiner in Art Unit 3991 that the retaining of that background discussion was not a problem.

With respect to a <u>different, formal matter</u>, it is noted that the NOTICE was forwarded by a communication captioned <u>*EX PARTE*</u> REEXAMINATION COMMUNICATION TRANSMITTAL FORM, even though the enclosed NOTICE properly referred to this as an <u>*Inter Partes*</u> request. When this Reexamination Request was originally filed, it was evidently inadvertently identified in PAIR as *Ex Parte*, and then changed shortly thereafter in PAIR to *Inter Partes*. If some further records in PAIR need to be corrected to consistently refer to this request as *Inter Partes*, such action is solicited.

Control # 95/000,219
Req. Docket # G-1165

Responsive to Notice
of 03/05/2007

### Certificate of Service.

It is certified that a copy of this Response has been served in its entirety on the patent owner as provided in 37 CFR 1.33(c).

The name and address of the party served and the date of service are:

THE PROCTER & GAMBLE COMPANY

Intellectual Property Division - Winton Hill Technical Center

Box 161 6110 Center Hill Avenue

Cincinnati, Ohio 45224

Date:  March 8, 2007

By:   Marvin Petry
Registration No.:    22,752

OIPE
MAR 08 2007

Customized PTO/SB/08a+b (09-06)

| Substitute for Form 1449A/PTO | Reexam Control # | 95/000,219 |
|---|---|---|
| **REPLACEMENT INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Patent No. # | 7,169,219 |
| | Confirmation # | 8236 |
| | 1st Request Date | 01/31/07 |
| | Art Unit | 3991 |
| | Examiner | |
| Sheet 1 of 1 | Requestor Docket # | G-1165/MP |

## U.S. PATENT DOCUMENTS

| Exam. Initial* | Document No. Number - Kind | Publ. Date MM-DD-YYYY | Name Patentee or Applicant | Relevance Passages/Figs. |
|---|---|---|---|---|
| | US-Des. 389,067 | 01-13-1998 | Lown | |
| | US-3,082,904 | 03-26-1963 | F.B. Newcomb et al. | |
| | US-3,944,127 | 03-16-1976 | Bruke et al. | |
| | US-4,890,752 | 01-02-1990 | Ota et al. | |
| | US-4,966,780 | 10-30-1990 | Hargraves et al. | |
| | US-5,085,034 | 02-04-1992 | Haas | |
| | US-5,285,954 | 02-15-1994 | Goglio | |
| | US-5,515,994 | 05-14-1996 | Goglio | |
| | US-5,690,244 | 11-25-1997 | Darr | |
| | US-6,733,803 | 05-11-2004 | Vidkjaer | |
| | US-6,763,969 | 07-20-2004 | Melrose et al. | |
| | US-6,837,390 | 01-04-2005 | Lane et al. | |

## FOREIGN PATENT DOCUMENTS

| Exam. Initial* | Country-Number-Kind | Publ. Date MM-DD-YYYY | Name Patentee or Applicant | Relevance Passages/Figs. | Trans- lation |
|---|---|---|---|---|---|
| | | | | | |

## NON PATENT LITERATURE DOCUMENTS

| Exam. Initial* | Include NAME of the author (in CAPS), Title of Article/Item, Date, Page(s), Volume-Issue No., Publisher, City and/or Country where published | Trans- lation |
|---|---|---|
| | Marks' Standard Handbook for Mechanical Engineers (10th Edition). McGraw Hill (1996) [retrieved from online Aug. 18, 2004] Table 6.12.1 URLhttp://www.knovel.com/knovel2/Toc.jsp?SpaceID=162&BookID=346. | |
| | Encyclopedia of Polymer Science and Technology, vol. 6, John Wiley and Sons, 1967. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

* Examiner: Initial if considered, whether or not citation is in conformance with MPEP §609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to the applicant.

Exhibit  2
Page  63

 United States Patent and Trademark Office

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

Bib Data Sheet

CONFIRMATION NO. 8236

| SERIAL NUMBER 95/000,219 | FILING OR 371(c) DATE 03/08/2007 RULE | CLASS 426 | GROUP ART UNIT 3991 | ATTORNEY DOCKET NO. |
|---|---|---|---|---|

**APPLICANTS**

7169418, CINCINNATI, OH;
THE PROCTER AND GAMBLE COMPANY(OWNER), CINCINNATI, OH;
STITES & HARBISON PLLC(3RD PTY REQ), CINCINNATI, OH;
KRAFT FOODS GLOBAL INC(REAL PARTY OF INTEREST), NORTHFIELD, IL;
STITES & HARBISON PLLC, ALEXANDRIA, VA

** CONTINUING DATA ***********************

This application is a REX of 10/155,338 05/24/2002 PAT 7,169,418
which claims benefit of 60/295,666 06/04/2001 ABN

** FOREIGN APPLICATIONS ******************

| Foreign Priority claimed ☐ yes ☐ no | STATE OR COUNTRY OH | SHEETS DRAWING | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|
| 35 USC 119 (a-d) conditions met ☐ yes ☐ no ☐ Met after Allowance | | | | |
| Verified and Acknowledged    Examiner's Signature    Initials | | | | |

**ADDRESS**
27752

**TITLE**
PACKAGING SYSTEM TO PROVIDE FRESH PACKED COFFEE

| FILING FEE RECEIVED | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |

Exhibit ___2___
Page ___64___

| Application Number  | Application/Control N .  95/000,219 | Applicant(s)/Patent under Reexamination  7169418 | |
|---|---|---|---|
| | Examiner  *** | Art Unit  3991 | |

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 95/000,219 | 7169418 |
| | Examiner | Art Unit |
| | *** | 3991 |

| √ | Rejected | | – | (Through num ral) Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|---|
| = | Allowed | | + | Restricted | I | Interference | O | Objected |

| Claim | | Date | Claim | | Date | Claim | | Date |
|---|---|---|---|---|---|---|---|---|
| Final | Original | | Final | Original | | Final | Original | |
| | 1 | | | 51 | | | 101 | |
| | 2 | | | 52 | | | 102 | |
| | 3 | | | 53 | | | 103 | |
| | 4 | | | 54 | | | 104 | |
| | 5 | | | 55 | | | 105 | |
| | 6 | | | 56 | | | 106 | |
| | 7 | | | 57 | | | 107 | |
| | 8 | | | 58 | | | 108 | |
| | 9 | | | 59 | | | 109 | |
| | 10 | | | 60 | | | 110 | |
| | 11 | | | 61 | | | 111 | |
| | 12 | | | 62 | | | 112 | |
| | 13 | | | 63 | | | 113 | |
| | 14 | | | 64 | | | 114 | |
| | 15 | | | 65 | | | 115 | |
| | 16 | | | 66 | | | 116 | |
| | 17 | | | 67 | | | 117 | |
| | 18 | | | 68 | | | 118 | |
| | 19 | | | 69 | | | 119 | |
| | 20 | | | 70 | | | 120 | |
| | 21 | | | 71 | | | 121 | |
| | 22 | | | 72 | | | 122 | |
| | 23 | | | 73 | | | 123 | |
| | 24 | | | 74 | | | 124 | |
| | 25 | | | 75 | | | 125 | |
| | 26 | | | 76 | | | 126 | |
| | 27 | | | 77 | | | 127 | |
| | 28 | | | 78 | | | 128 | |
| | 29 | | | 79 | | | 129 | |
| | 30 | | | 80 | | | 130 | |
| | 31 | | | 81 | | | 131 | |
| | 32 | | | 82 | | | 132 | |
| | 33 | | | 83 | | | 133 | |
| | 34 | | | 84 | | | 134 | |
| | 35 | | | 85 | | | 135 | |
| | 36 | | | 86 | | | 136 | |
| | 37 | | | 87 | | | 137 | |
| | 38 | | | 88 | | | 138 | |
| | 39 | | | 89 | | | 139 | |
| | 40 | | | 90 | | | 140 | |
| | 41 | | | 91 | | | 141 | |
| | 42 | | | 92 | | | 142 | |
| | 43 | | | 93 | | | 143 | |
| | 44 | | | 94 | | | 144 | |
| | 45 | | | 95 | | | 145 | |
| | 46 | | | 96 | | | 146 | |
| | 47 | | | 97 | | | 147 | |
| | 48 | | | 98 | | | 148 | |
| | 49 | | | 99 | | | 149 | |
| | 50 | | | 100 | | | 150 | |

U.S. Patent and Trademark Office

Exhibit  2
Page  66

Part of Paper No.  20070321



| Issue Classification | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 95/000,219 | 7169418 |
| | Examiner | Art Unit | |
| | *** | 3991 | |

## ISSUE CLASSIFICATION

| ORIGINAL | | CROSS REFERENCE(S) | |
|---|---|---|---|
| CLASS | SUBCLASS | CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) |
| 426 | 110 | | |

**INTERNATIONAL CLASSIFICATION**

| | | / |
| | | / |
| | | / |
| | | / |
| | | / |

| (Assistant Examiner)    (Date) | | Total Claims Allowed: | |
|---|---|---|---|
| (Legal Instruments Examiner)    (Date) | (Primary Examiner)        (Date) | O.G. Print Claim(s) | O.G. Print Fig. |

| ☐ Claims renumbered in the same order as presented by applicant | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | | 31 | | 61 | | 91 | | 121 | | 151 | | 181 |
| | 2 | | 32 | | 62 | | 92 | | 122 | | 152 | | 182 |
| | 3 | | 33 | | 63 | | 93 | | 123 | | 153 | | 183 |
| | 4 | | 34 | | 64 | | 94 | | 124 | | 154 | | 184 |
| | 5 | | 35 | | 65 | | 95 | | 125 | | 155 | | 185 |
| | 6 | | 36 | | 66 | | 96 | | 126 | | 156 | | 186 |
| | 7 | | 37 | | 67 | | 97 | | 127 | | 157 | | 187 |
| | 8 | | 38 | | 68 | | 98 | | 128 | | 158 | | 188 |
| | 9 | | 39 | | 69 | | 99 | | 129 | | 159 | | 189 |
| | 10 | | 40 | | 70 | | 100 | | 130 | | 160 | | 190 |
| | 11 | | 41 | | 71 | | 101 | | 131 | | 161 | | 191 |
| | 12 | | 42 | | 72 | | 102 | | 132 | | 162 | | 192 |
| | 13 | | 43 | | 73 | | 103 | | 133 | | 163 | | 193 |
| | 14 | | 44 | | 74 | | 104 | | 134 | | 164 | | 194 |
| | 15 | | 45 | | 75 | | 105 | | 135 | | 165 | | 195 |
| | 16 | | 46 | | 76 | | 106 | | 136 | | 166 | | 196 |
| | 17 | | 47 | | 77 | | 107 | | 137 | | 167 | | 197 |
| | 18 | | 48 | | 78 | | 108 | | 138 | | 168 | | 198 |
| | 19 | | 49 | | 79 | | 109 | | 139 | | 169 | | 199 |
| | 20 | | 50 | | 80 | | 110 | | 140 | | 170 | | 200 |
| | 21 | | 51 | | 81 | | 111 | | 141 | | 171 | | 201 |
| | 22 | | 52 | | 82 | | 112 | | 142 | | 172 | | 202 |
| | 23 | | 53 | | 83 | | 113 | | 143 | | 173 | | 203 |
| | 24 | | 54 | | 84 | | 114 | | 144 | | 174 | | 204 |
| | 25 | | 55 | | 85 | | 115 | | 145 | | 175 | | 205 |
| | 26 | | 56 | | 86 | | 116 | | 146 | | 176 | | 206 |
| | 27 | | 57 | | 87 | | 117 | | 147 | | 177 | | 207 |
| | 28 | | 58 | | 88 | | 118 | | 148 | | 178 | | 208 |
| | 29 | | 59 | | 89 | | 119 | | 149 | | 179 | | 209 |
| | 30 | | 60 | | 90 | | 120 | | 150 | | 180 | | 210 |

U.S. Patent and Trademark Office

Part of Paper No.  20070321

| *Reexamination* | Application/Control No.<br><u>95/000,219</u> | Applicant(s)/Patent Under Reexamination<br>7169418 |
|---|---|---|
| | Certificate Date | Certificate Number |

| Requester | Correspondence Address: | ☐ Patent Owner | ☒ Third Party |
|---|---|---|---|

STITES & HARBISON PLLC
1199 NORTH FAIRFAX STREET
SUITE 900
ALEXANDRIA, VA  22314

| LITIGATION REVIEW ☐ | | |
|---|---|---|
| | (examiner initials) | (date) |
| Case Name | | Director Initials |
| | | |
| | | |
| | | |
| | | |
| | | |

| COPENDING OFFICE PROCEEDINGS | |
|---|---|
| TYPE OF PROCEEDING | NUMBER |
| 1. | |
| 2. | |
| 3. | |
| 4. | |

U.S. Patent and Trademark Office                                      DOC. CODE **RXFILJKT**

Exhibit  2
Page  63



**Search Notes**

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 95/000,219 | 7169418 |
| Examiner | Art Unit | |
| *** | 3991 | |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## SEARCH NOTES (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

## INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

Exhibit _7_
Page _60_



UNITED STATES PATENT AND TRADEMARK OFFICE

PTOL-2076 (8/06)

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

Requester's Name and Address:    **MARVIN PETRY**
**STITES & HARBISON PPL**
**1199 NORTH FAIRFAX STREET, SUITE 900**
**ALEXANDRIA VA 22314**

Control Number: 95/000,219

Patent Number: 7,169,219    Request Receipt Date: 01/31/2007    Date Mailed: 03/05/2007

### NOTICE OF FAILURE TO COMPLY WITH *INTER PARTES* REEXAMINATION REQUEST FILING REQUIREMENTS (37 CFR 1.915(d))

The Central Reexamination Unit (CRU) in the United States Patent and Trademark Office (USPTO) has received a request for *inter partes* reexamination. The request cannot be processed, because the below-identified filing date requirements for an *inter partes* reexamination request have not been satisfied. If a fully compliant response is not received within 30 days of the mailing date of this notice, the request will be treated as a prior art citation under 37 CFR 1.501 or closed from public view, at the Office's option. A **filing date will NOT be** assigned to the request until the deficiencies noted below are corrected (37 CFR 1.919(a)):

The following items required by 37 CFR 1.915 are missing:

☐ 1. The *inter partes* reexamination filing fee under 37 CFR 1.20(c)(2) – see Attached Form PTO-2057.

☐ 2. An identification of the patent by its patent number, and of every claim of the patent for which reexamination is requested.

☐ 3. A citation of the patents and printed publications that are presented to raise a substantial new question of patentability.

☒ 4. A statement pointing out each substantial new question of patentability based on the cited patents & printed publications, and a detailed explanation of the pertinency and manner of applying the patents & printed publications to every claim for which reexamination is requested.

☐ 5. A legible copy of every patent or printed publication (other than U.S. patents or U.S. patent publications) relied upon or referred to in (3) and (4) above, accompanied by an English language translation of all the necessary and pertinent parts of any non-English language document.

☐ 6. A legible copy of the entire patent including the front face, drawings, and specification/claims (in **double** column format) for which reexamination is requested, and a copy of any disclaimer, certificate of correction, or reexamination certificate issued in the patent. All copies must have each page plainly written on only one side of a sheet of paper.

☐ 7. A certification by the third party requester that a copy of the request has been served in its entirety on the patent owner at the address provided for in 37 CFR 1.33(c). The name and address of the party served must be indicated. If service was not possible, a duplicate copy of the request must be supplied to the Office.

☐ 8. A certification by the third party requester that the estoppel provisions of 37 CFR 1.907 do not prohibit the *inter partes* reexamination.

☐ 9. A statement identifying the real party in interest to the extent necessary for a subsequent person filing an *inter partes* reexamination request to determine whether that person is a privy of the real party in interest.

☐ 10. Other item: See Attachment.

☒ Explanation of above item(s): See Attachment.

Any written correspondence in response to this notice must include a submission pursuant to the attached instructions. **The instructions for a detailed explanation for an *inter partes* reexamination request differ from those for an *ex parte* reexamination request.** Any written correspondence in response to this notice should be mailed to the Central Reexamination Unit (CRU), ATTN: "Box *Inter Partes* Reexam" at the USPTO address indicated at the top of this notice. Any "replacement documents" may be facsimile transmitted to the CRU at the FAX number indicated below. A REPLACEMENT STATEMENT AND EXPLANATION UNDER 37 CFR 1.915(b)(3) MAY NOT BE FACSIMILE TRANSMITTED.

---

Patent Reexamination Specialist, Central Reexamination Unit
(571) 272- 1607; FAX No. (571) 273-9900

cc: Patent Owner's Name and Address:    THE PROCTER & GAMBLE COMPANY, INTELLECTUAL PROPERTY DIVISION
WINTON HILL BUSINESS CENTER - BOX 161
6110 CENTER HILL AVENUE
CINCINNATI OH 45224

Exhibit   2
Page   10

## INSTRUCTIONS TO NOTICE OF FAILURE TO COMPLY WITH *INTER PARTES* REEXAMINATION REQUEST FILING REQUIREMENTS (37 CFR 1.915)

### HOW TO REPLY TO THIS NOTICE

Any written correspondence in response to this notice must include either a **replacement document**, or, if item #4 is checked and/or it is otherwise specifically required by the Office, a paper containing a replacement statement and explanation und.r 37 CFR 1.915(b)(3) that either replaces the originally-filed statement and explanation or provides a previously missing statement and explanation. A replacement document either replaces an originally-filed document, or provides a previously missing document, that contains part(s) of the request other than the statement and explanation as set forth in 37 CFR 1.915(b)(3). For example, a replacement to the originally-filed listing of cited patents and printed publications, PTO/SB/08 (formerly designated as PTO-1449) or its equivalent, is a replacement document.

If a paper containing a replacement statement and explanation, or a replacement document (other than a replacement certificate of service), is submitted by a third party requester, it must be accompanied by a certification that a copy of the replacement statement and explanation under 37 CFR 1.915(b)(3), or that a copy of the replacement document, has been served in its entirety on the patent owner at the address provided for in 37 CFR 1.33(c). The name and address of the party served must be indicated. If service was not possible, a duplicate copy of the replacement statement and explanation (or replacement document) must be supplied to the Office.

### REPLACEMENT STATEMENT AND EXPLANATION UNDER 37 CFR 1.915(b)(3) (ITEM #4 IS CHECKED)

The statement and explanation under 37 CFR 1.915(b)(3) (see item #4) must discuss **EVERY patent or printed publication cited in the information disclosure statement** in at least one proposed rejection or statement identifying a <u>substantial new question of patentability</u> (SNQ), AND in a corresponding <u>detailed explanation</u> (see the below discussion). Furthermore, EVERY claim for which reexamination is requested must be discussed in at least one proposed rejection or statement identifying an SNQ and in the corresponding detailed explanation. If item #4 is missing or incomplete, a paper containing a **replacement statement and explanation under 37 CFR 1.915(b)(3) is required.**

A paper containing a replacement statement and explanation under 37 CFR 1.915(b)(3) may NOT be facsimile transmitted. It must be received by first class mail or by U.S. Postal Service (USPS) Express Mail.

If an originally-filed information disclosure statement cites patents or printed publications that are NOT discussed in at least one proposed rejection or statement identifying an SNQ AND in the corresponding detailed explanation in the originally-filed request, then the requester must file either (a) a replacement document, i.e., a replacement PTO/SB/08 (former PTO-1449) or its equivalent, listing ONLY those patents and printed publications that are so discussed, or (b) a paper containing a replacement statement and explanation under 37 CFR 1.915(b)(3). If the first option is chosen, the replacement PTO/SB/08 or its equivalent should include a cover letter expressly withdrawing from the request any previously cited references that are being omitted by the replacement PTO/SB/08 or its equivalent. The requester may, if desired, file both a replacement PTO/SB/08 or its equivalent and a paper containing a replacement statement and explanation, if the replacement statement and explanation discusses EVERY patent or printed publication, cited in the replacement PTO/SB/08 or its equivalent, in at least one proposed rejection or statement identifying an SNQ and in the corresponding detailed explanation.

Requester is NOT required to, and should not, additionally file a replacement copy of any exhibits, references, etc., or other replacement parts of the request (i.e., replacement documents) if a defect requiring a replacement document is not specifically identified by this notice.

### Examples of When a Replacement Statement and Explanation under 37 CFR 1.915(b)(3) Is Required:

1. The originally-filed request fails to discuss EVERY patent or printed publication cited in the originally-filed information disclosure statement in at least one proposed rejection or statement identifying an SNQ and in the corresponding detailed explanation, and the requester does not wish to file a replacement PTO/SB/08 (formerly designated as PTO-1449) or its equivalent listing ONLY those patents and printed publications that are so discussed.

2. The originally-filed request discusses every patent or printed publication cited in the information disclosure statement in at least one proposed rejection or statement identifying an SNQ, but fails to discuss EVERY patent or printed publication cited in the information disclosure statement in a <u>detailed explanation</u> that corresponds to the proposed rejection or statement identifying an SNQ.

3. The originally-filed request fails to discuss EVERY CLAIM for which reexamination is requested in at least one proposed rejection or statement identifying an SNQ, and in the corresponding detailed explanation.

Exhibit ___2___
Page ___71___

**Examples of Proposed Rejections and Statements Identifying a Substantial New Question of Patentability (SNQ)**

Proposed rejections

Claims 1-3 are obvious over reference A in view of reference B.
Claims 4-6 are obvious over reference A in view of references B and C.
Claims 7-10 are obvious over reference Q in view of reference R.

Statements identifying a substantial new question of patentability

A substantial new question of patentability as to claims 1-3 is raised by reference A in view of reference B.
A substantial new question of patentability as to claims 4-6 is raised by reference A in view of references B and C.
A substantial new question of patentability as to claims 7-10 is raised by reference Q in view of reference R.

**A proposed rejection or statement identifying an SNQ must be repeated with any *replacement* detailed explanation that corresponds to the proposed rejection or statement identifying an SNQ, in any paper containing a replacement statement and explanation under 37 CFR 1.915(b)(3).**

**In addition, the requester should include an explanation of *how the SNQ is raised.***

1. Assume that claim 1 of the patent recites, as one of the limitations, widget W. Requester would state that the XYZ reference, cited in the information disclosure statement, contains a teaching of widget W as recited in claim 1, and that this teaching was not present during the prior examination of the patent under reexamination (i.e., the teaching is "new"). Requester would also state that he believes that a reasonable examiner would consider this teaching important in determining whether or not the claims are patentable. For this reason, requester would state that this teaching by the XYZ reference raises a substantial new question of patentability (SNQ) with respect to at least claim 1 of the patent. Similarly, if dependent claim 6 adds widget H, the requester would state that the ABC reference, cited in the information disclosure statement, contains a teaching of widget H as recited in claim 6, that this teaching was not present during the prior examination of the patent, that a reasonable examiner would consider this teaching important in determining whether or not the claims are patentable, and that this teaching raises an SNQ with respect to dependent claim 6 of the patent.

2. Assume that claim 1 of the patent recites, as one of its limitations, limitation W. Assume either that reference XYZ was applied in a rejection during the prior examination of the patent, or that the teachings of reference XYZ are purely cumulative to a reference cited in a rejection during the prior examination of the patent. Assume further that reference ABC teaches that limitation W would have been either inherent given the teachings of reference XYZ, or would have been obvious in view of the combination of XYZ and ABC. Reference ABC was cited in an information disclosure statement but was never discussed or applied in a rejection *in combination with the XYZ reference* during the prior examination of the patent under reexamination. **Requester would state that reference XYZ was present during the prior examination of the patent under reexamination because it was applied in a rejection during the prosecution of the patent, and that reference ABC was cited in an information disclosure statement but never applied in a rejection (or never discussed), in combination with the XYZ reference during the prior examination of the patent under reexamination** Requester would then state (1) that the *combination* of the XYZ reference and the ABC reference, both of which are cited in the information disclosure statement, contains a teaching of limitation W as recited in claim 1, (2) that this teaching provided by the **combination** of the XYZ and ABC references was not presented during the prior examination of the patent under reexamination, (3) that a reasonable examiner would consider this teaching important in determining whether or not the claims are patentable, and (4) that the presentation of this teaching raises a SNQ with respect to claim 1 of the patent.

**Example of a Detailed Explanation**

Assume, for example, that a requester believes that the XYZ reference, alone, anticipates claims 1-5. The requester would expressly propose a rejection of claims 1-5 under 35 USC 102(b) as being anticipated by the XYZ reference. In a claim chart, the requester would then show how each limitation of claims 1-5 is anticipated by the XYZ reference. If the requester believes that the XYZ reference, in view of the ABC reference, renders obvious claims 6-10, the requester would expressly propose a rejection of claims 6-10 under 35 USC 103 as being obvious over the XYZ reference in view of the ABC reference. In a claim chart, the requester would then show which limitations of claims 6-10 are taught by the XYZ reference, and which limitations of claims 6-10 are taught by the ABC reference. The requester should quote each pertinent teaching in the prior art reference, referencing each quote by page, column and line number, and any relevant figure numbers. Finally, for a proposed rejection, the requester must show how these two references are combined, and the teaching in either the XYZ or the ABC references which provides the motivation to combine these references in order to render claims 6-10 obvious.

Exhibit ____2____
Page ____12____

## REPLACEMENT DOCUMENTS

If the   riginally-filed PTO/SB/08 (former PTO-1449) or its equivalent lists patents or printed publications that are NOT discussed in at least one proposed rejection or statement identifying an SNQ AND in the corresponding detailed explanation in the originally-filed request, the requester may file a paper containing a **replacement PTO/SB/08 (former PTO-1449) or its equivalent** listing ONLY those patents and printed publications that are so discussed. The replacement PTO/SB/08 or its equivalent should include a cover letter expressly withdrawing from the request any previously cited references that are now being omitted by the replacement PTO/SB/08 or its equivalent.  Similarly, **if any patent or printed publication discussed in at least one proposed rejection or statement identifying an SNQ AND in the corresponding detailed explanation in the originally-filed request is not listed in the originally-filed PTO/SB/08 (former PTO-1449) or its equivalent, the requester must file a replacement PTO/SB/08 (former PTO-1449) or its equivalent** listing all of the patents and printed publications, including the previously omitted reference(s), and provide copies of the missing references if copies were not provided with the originally-filed request.

If a copy of a patent, printed publication, or an English-language translation of a patent or printed publication, that is cited in the PTO/SB/08 (former PTO-1449) or its equivalent, is illegible, missing, or incomplete (i.e., it does not contain all of the pages indicated in the PTO/SB/08 (former PTO-1449) or its equivalent), a replacement copy of the patent or printed publication is required.

If a copy of any disclaimer, certificate of correction, or reexamination certificate issued in the patent, or a copy of the entire patent for which reexamination is requested as described in item #6, is missing, or if the copy that was received by the Office was illegible or incomplete, a replacement document (i.e., a replacement copy of the disclaimer, certificate of correction, reexamination certificate, or entire patent under reexamination as described in item #6) is required.

If the requester fails to correctly identify the patent number or the claims for which reexamination is requested on the transmittal form for the request (PTO/SB/57, or an equivalent) as described in item #2, and the patent number and the claims for which reexamination is requested are correctly identified in the originally-filed request, a **replacement transmittal form** is required.

If a certificate of service on the patent owner, as described in item #7, is missing, or if the certificate of service received by the Office is inaccurate or incomplete, a replacement certificate of service is required.

Replacement documents may be facsimile transmitted.  A paper containing a replacement statement and explanation may NOT be facsimile transmitted.

Exhibit  2
Page  13

**ATTACHMENT TO PTOL-2076**

Control Number: 95/000,219
Patent Number: 7,169,418
Request Receipt Date: 01/31/2007

**Please read the instructions that accompany this Notice and Attachment.**

The Request for Reexamination filed on 01/31/2007 does not comply with the filing requirement of an *Inter Partes* reexamination proceeding under 37 CFR 1.915(b)(3). A statement pointing out **each** substantial new question of patentability based on the cited patents and printed publications, and detailed explanation of the pertinency and manner of applying the patents and printed publications to every claim for which reexamination is requested.

Specifically, the request does not include a detailed explanation of how each of the references below applies to every claim of U.S. Patent No. 7,169,418 (in this instance Claims 1-55).

**US Patent**
3,708,082 – Platte
5,060,453 – Alberghini et al.
5,261,544 – Weaver

**Non Patent Literature**
Main coffee packaging concern: freshness – Tea & Coffee Trade Journal
Unique venting keeps coffee fresh, Packaging World Magazine – Packaging World Magazine
New container lets you wake up and smell the 'fresher' coffee – Food & Drug Packaging

The Information Disclosure Statement (IDS) accompanying the request for reexamination lists the above references, which are not explained as required by the regulation. In this instance, reexamination of claims 1-55 was requested. The explanation fails to provide a detailed explanation, i.e., it fails to specify where each limitation is taught by the references such as, for example, by referring to page, column, line and/or figure numbers, or by otherwise explaining how each of the references teaches the recited limitations. However, the other references for example 6,763,969 (Melrose) is explained in a manner that complies with 37 CFR 1.915(b)(3).

If these references are to be considered by the examiner during reexamination the request needs to contain a "statement pointing out each substantial new question of patentability based on the cited patents and printed publications, and a detailed explanation of the pertinency and manner of applying the patents and printed publications to every claim." 37 CFR 1.915(b)(3).

Exhibit 2
Page 14

Consequently there is ambiguity of the manner in which to apply the cited art. It is extremely important that the request clearly set forth in detail exactly what the third party requester considers the "substantial new question of patentability" to be MPEP §2616.

In accordance with 37 CFR 1.915(b), as revised via 71 Fed. Reg. 9260, February 23, 2006 (effective March 27, 2006), a filing date for the reexamination request will <u>not</u> be granted **at this time**. Requester may either submit an explanation of the pertinency and manner of applying **each** of the cited prior art documents for **every** claim for which reexamination is requested in accordance with 37 CFR 1.915(b)(3), or withdraw the request for reexamination of any claims for which a detailed explanation is not supplied, or withdraw the citation of any or all of the cited documents with a listing confined to the documents for which a discussion required by 37 CFR 1.915(b)(3) has been provided and the proposed manner of applying the cited documents for **every** claim for which reexamination is requested, for which each proposed combination is explained in detail.

Exhibit 2
Page 15

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

MARVIN PETRY, ESQ.
STITES & HARBISON PLLC
1199 NORTH FAIRFAX STREET
SUITE 900
ALEXANDRIA, VA 22314

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *95/000,219*.

PATENT NO. *7,169,418*.

ART UNIT *3991*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

Exhibit _2_
Page _76_

# Patent Assignment Abstract of Title

**Total Assignments:** 1

**Application #:** 10155338 **Filing Dt:** 05/24/2002    **Patent #:** 7169418    **Issue Dt:** 01/30/2007

**PCT #:** NONE    **Publication #:** US20030010787    **Pub Dt:** 01/16/2003

**Inventors:** David Andrew Dalton, James David Smith, James Lee Bono, Sameer Mungur, Douglas Bruce Zeik, Aisha Barry, Jennifer Ruth Ralston Floyd

**Title:** PACKAGING SYSTEM TO PROVIDE FRESH PACKED COFFEE

**Assignment:** 1

| | | | | |
|---|---|---|---|---|
| **Reel/Frame:** 013217 / 0256 | **Received:** 08/28/2002 | **Recorded:** 08/21/2002 | **Mailed:** 11/04/2002 | **Pages:** 7 |

**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

**Assignors:**
DALTON, DAVID ANDREW    **Exec Dt:** 06/13/2002

SMITH, JAMES DAVID    **Exec Dt:** 06/13/2002

BONO, JAMES LEE    **Exec Dt:** 06/13/2002

MUNGUR, SAMEER    **Exec Dt:** 06/13/2002

ZEIK, DOUGLAS BRUCE    **Exec Dt:** 06/13/2002

BARRY, AISHA    **Exec Dt:** 06/13/2002

FLOYD, JENNIFER RUTH RALSTON    **Exec Dt:** 06/13/2002

**Assignee:** PROCTER & GAMBLE COMPANY, THE
6090 CENTER HILL ROAD
ATTN: CHIEF PATENT COUNSEL
CINCINNATI, OHIO 45224

**Correspondent:** THE PROCTER & GAMBLE COMPANY
PETER D. MEYER
6110 CENTER HILL AVENUE
WINTON HILL TECHNICAL CENTER - BOX 161
CINCINNATI, OH 45224

Search Results as of: 02/02/2007 10:36 AM

Exhibit 2

Page 77

*Reexam*

PTO/SB/58 (04-05)
Approved for use through 04/30/2007. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

(Also referred to as FORM PTO-1465)

# REQUEST FOR *INTER PARTES* REEXAMINATION TRANSMITTAL FORM

Address to:
**Mail Stop *Inter Partes* Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450**

Attorney Docket No.: G-1165

Date: January 31, 2007

1. [x] This is a request for *inter partes* reexamination pursuant to 37 CFR 1.913 of patent number 7,169,418 issued __Jan. 30, 2007__ . The request is made by a third party requester, identified herein below.

2. [x] a. The name and address of the person requesting reexamination is:

   Marvin Petry, Esq. - Stites & Harbison PLLC

   1199 North Fairfax Street, Suite 900

   Alexandria, Virginia 22314

   b. The real party in interest (37 CFR 1.915(b)(8)) is: KRAFT FOODS GLOBAL, INC.
   Three Lakes Drive, Northfield, Illinois 60093

3. [ ] a. A check in the amount of $ _____ is enclosed to cover the reexamination fee, 37 CFR 1.20(c)(2);

   [ ] b. The Director is hereby authorized to charge the fee as set forth in 37 CFR 1.20(c)(2)
   to Deposit Account No. _____ (submit duplicative copy for fee processing); or

   [x] c. Payment by credit card. Form PTO-2038 is attached.

4. [x] Any refund should be made by [ ] check or [ ] credit to Deposit Account No. _____.
   37 CFR 1.26(c). If payment is made by credit card, refund must be made to credit card account.
   The Director is authorized to charge any additional fee due in connection herewith to Deposit Account No. 12-0555.

5. [x] A copy of the patent to be reexamined having a double column format on one side of a separate paper is enclosed. 37 CFR 1.915(b)(5)

6. [ ] CD-ROM or CD-R in duplicate, Computer Program (Appendix) or large table
   [ ] Landscape Table on CD

7. [ ] Nucleotide and/or Amino Acid Sequence Submission
   *If applicable, items a. – c. are required.*

   a. [ ] Computer Readable Form (CRF)
   b. Specification Sequence Listing on:
      i [ ] CD-ROM (2 copies) or CD-R (2 copies); or
     ii [ ] paper
   c. [ ] Statements verifying identity of above copies

8. [ ] A copy of any disclaimer, certificate of correction or reexamination certificate issued in the patent is included.

9. [x] Reexamination of claim(s) 1-55 (all) is requested.

10. [x] A copy of every patent or printed publication relied upon is submitted herewith including a listing thereof on Form PTO/SB/08, PTO-1449, or equivalent.

11. [ ] An English language translation of all necessary and pertinent non-English language patents and/or printed publications is included.

[Page 1 of 2]

This collection of information is required by 37 CFR 1.915. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Mail Stop *Inter Partes* Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Exhibit 2
Page 78

PTO/SB/58 (04-05)
Approved for use through 04/30/2007. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

12. [x] The attached detailed request includes at least the following items:

  a. A statement identifying each substantial new question of patentability based on prior patents and printed publications. 37 CFR 1.915(b)(3)
  b. An identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited art to every claim for which reexamination is requested.  37 CFR 1.915(b)(1) and (3)

13. [x] It is certified that the estoppel provisions of 37 CFR 1.907 do not prohibit this reexamination. 37 CFR 1.915(b)(7)

14. [x] a. It is certified that a copy of this request has been served in its entirety on the patent owner as provided in 37 CFR 1.33(c).
  The name and address of the party served and the date of service are:
  THE PROCTER & GAMBLE COMPANY

  Intellectual Property Division - Winton Hill Technical Center
  6110 Center Hill Avenue
  Cincinnati, Ohio  45224

  Date of Service:   January 31, 2007                          ; or

  [ ] b. A duplicate copy is enclosed since service on patent owner was not possible.

15. Correspondence Address: Direct all communications about the application to:

  [x] The address associated with Customer Number:  | 00881 |

  **OR**

  [ ] Firm or Individual Name
  Address

| City | State | Zip |
| Country | | |
| Telephone | Email | |

16. [ ] The patent is currently the subject of the following concurrent proceeding(s):
  [ ] a. Copending reissue Application No. _____
  [ ] b. Copending reexamination Control No. _____
  [ ] c. Copending Interference No. _____
  [ ] d. Copending litigation styled:

  _____
  _____

WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

*Marvin Petry*
Authorized Signature For Third Party Requester          January 31, 2007
                                                        Date

Marvin Petry                                            22752
Typed/Printed Name                         Registration Number, if applicable

[Page 2 of 2]

Exhibit 2
Page 79

United States Patent and Trademark Office
- Sales Receipt -

02/02/2007 JPREDDIE 00000002 95000219

01 FC:1813                              8800.00 OP

Exhibit ___2___
Page ___80___

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

# REQUEST FOR REEXAMINATION of U.S. Patent No. 7,169,418

<u>Identification of Claims for Which Reexamination is Requested.</u>

In accordance with 35 USC 311 and 37 CFR 1.913, reexamination of (all) claims 1-55 of USP 7,169,418 is requested in view of the following references (primary references are bolded). It will be noted that various secondary references are combinable with the five basic primary combinations of references identified below. Therefore two or more alternate ways of combining the basic combination of references with other secondary references are detailed in some instances.

NEW APPLIED REFERENCES (Not cited in the Prosecution).

| | |
|---|---|
| **Melrose** | USP 6,763,969 |
| **Newcomb** | USP 3,082,904 |
| **Lane** | USP 6,837,390 |
| Goglio | USP 5,515,994 [hereafter referred to as "Goglio", as opposed to "Old Goglio" noted below.] |

OLD APPLIED REFERENCES (Cited in the Prosecution).

| | |
|---|---|
| **Hargraves** | USP 4,966,780 |
| **Vidkjaer** | USP 6,733,803 |
| Goglio | USP 5,285,954 [hereafter "Old Goglio".] |

¡Exhibit 2
Page 81

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

Bruke          USP 3,944,127

Haas           USP 5,085,034

Ota            USP 4,890,752

The Encyclopedia of Polymer Science and Technology, Volume 6, 1967 [hereafter

    "Old Encyclopedia" – as printed from PAIR in the file of USP

    7,169,418]

Marks' Standard Handbook for Mechanical Engineers, 10th Edition, 1996 [hereafter

    "Old Marks' Handbook" – as printed from PAIR in the file of

    USP 7,169,418]


## BACKGROUND REFERENCES

Alberghini     USP 5,060,453 (Not Cited in the Prosecution)

Darr           USP 5,690,244 (Cited in the 133 reference IDS by Applicant)

Lown           USP D389,067 (Not Cited in the Prosecution)

Weaver         USP 5,261,544 (Not Cited in the Prosecution)

Platte         USP 3,708,082 (Not Cited in the Prosecution)

"Main coffee packaging concern: freshness", Tea & Coffee Trade Journal, Author:

Fader, Liz, 8/1/1989. (Not Cited in the Prosecution)

"Unique venting keeps coffee fresh", Packaging World Magazine, October 1996 , p.

10. (Not Cited in the Prosecution)

"New container lets you wake up and smell the 'fresher' coffee", Food & Drug

Packaging, Stagnito Communications, 11/1/1996. (Not Cited in the Prosecution)

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

## a.  Reexamination of:

Claims **1**, 8-10, 14-15, 19, 22-23, 26, 31-32, **33-35**, **37-43**, **44-49**, and **50-55** is requested in view of the combination of Melrose in view of Goglio.

Claims 2-7, 11-13, 20-21, and 36 is requested in view of the combination of Melrose in view of Goglio, and further in view of Old Vidkjaer.

Claims 3-4 is additionally requested in view of the combination of Melrose in view of Goglio, and further in view of Old Bruke.

Claims 9, 11-13, 20-21, and **33-36** is additionally requested in view of the combination of Melrose in view of Goglio, and further in view of Old Haas.

Claims 9, 20-21, and **33-36** is additionally requested in view of the combination of Melrose in view of Goglio, and further in view of Old Encyclopedia.

Claims 16-18 is requested in view of the combination of Melrose in view of Goglio, and further in view of Old Goglio.

Claim 18 is additionally requested in view of the combination of Melrose in view of Goglio, and further in view of Old Goglio and Old Encyclopedia.

Claims 24-25, 27, and 29-30 is requested in view of the combination of Melrose in view of Goglio, and further in view of Old Hargraves.

Claim 28 is requested in view of the combination of Melrose in view of Goglio, and further in view of Old Hargraves and Old Goglio.


## b.  Reexamination of:

Claims 1-3, 8-10, 14-15, 19-23, 26, 31-32, **33-35**, **37-43**, **44-49**, and **50-55** is requested in view of the combination of Newcomb in view of Melrose.

Exhibit _7_
Page _83_

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

Claims 2-7, 11-13, 20-21, and 36 is requested in view of the combination of Newcomb in view of Melrose, and further in view of Old Vidkjaer.

Claims 3-4 is additionally requested in view of the combination of Newcomb in view of Melrose, and further in view of Old Bruke.

Claims 9, 11-13, 20-21, and 33-36 is additionally requested in view of the combination of Newcomb in view of Melrose, and further in view of Old Haas.

Claims 9, 20-21, and 33-36 is additionally requested in view of the combination of Newcomb in view of Melrose, and further in view of Old Encyclopedia.

Claims 16-18 is requested in view of the combination of Newcomb in view of Melrose, and further in view of Old Goglio.

Claim 18 is additionally requested in view of the combination of Newcomb in view of Melrose, and further in view of Old Goglio and Old Encyclopedia.

Claims 24-25, 27, 29 and 30 is requested in view of the combination of Newcomb in view of Melrose, and further in view of Old Hargraves.

Claim 28 is requested in view of the combination of Newcomb in view of Melrose, and further in view of Old Hargraves and Old Goglio.


c. Reexamination of:

Claims 1, 8-10, 14-15, 19-23, 26, 31-32, 33-35, 37-43, 44-49, and 50-55 is requested in view of the combination of Lane in view of Goglio.

Claims 2-7, 11-13, and 36 is requested in view of the combination of Lane in view of Goglio, and further in view of Old Vidkjaer.

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

Claims 3-4 is additionally requested in view of the combination of Lane in view of Goglio, and further in view of Old Bruke.

Claims 9, 11-13, 20-21, and 33-36 is additionally requested in view of the combination of Lane in view of Goglio, and further in view of Old Haas.

Claims 9, 20-21, and 33-36 is additionally requested in view of the combination of Lane in view of Goglio, and further in view of Old Encyclopedia.

Claims 16-18 is requested in view of the combination of Lane in view of Goglio, and further in view of Old Goglio.

Claim 18 is additionally requested in view of the combination of Lane in view of Goglio, and further in view of Old Goglio and Old Encyclopedia.

Claims 24-25, 27 and 29-30 is requested in view of the combination of Lane in view of Goglio, and further in view of Old Hargraves.

Claim 28 is requested in view of the combination of Lane in view of Goglio, and further in view of Old Hargraves and Old Goglio.

d. Reexamination of:

Claims 1, 8-10, 14, 19, 22-27, 30, 33-35, 37-39, 41-43, 44-46, 48-49, and 50-52, 54-55 is requested in view of the combination of Old Hargraves in view of Goglio.

Claims 2-7, 11-13, 20-21, 29, 31-32, and 36 is requested in view of the combination of Old Hargraves in view of Goglio, and further in view of Old Vidkjaer.

Claims 33-36 is additionally requested in view of the combination of Old Hargraves in view of Goglio, and further in view of Old Haas.

Exhibit 2
Page 85

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

Claims 33-36 is additionally requested in view of the combination of Old Hargraves in view of Goglio, and further in view of Old Encyclopedia.

Claims 15, 40, 47, and 53 is requested in view of the combination of Old Hargraves in view of Goglio, and further in view of Melrose.

Claims 16-18 and 28 is requested in view of the combination of Old Hargraves in view of Goglio, and further in view of Old Goglio.

Claims 1, 8, 10, 14-15, 19, 22-27, 30, 37-43, 44-49, and 50-55 is additionally requested in view of the combination of Old Hargraves in view of Goglio, and further in view of Old Ota.

Claims 2, 5-7, 29, and 31-32 is additionally requested in view of the combination of Old Hargraves in view of Goglio, and further in view of Old Ota and Old Vidkjaer.

Claims 3-4 is additionally requested in view of the combination of Old Hargraves in view of Goglio, and further in view of Old Ota and Old Bruke.

Claims 9, 11-13, and 20-21 is additionally requested in view of the combination of Old Hargraves in view of Goglio, and further in view of Old Ota and Old Haas.

Claims 9 and 20-21 is additionally requested in view of the combination of Old Hargraves in view of Goglio, and further in view of Old Ota and Old Encyclopedia.

Claims 16-17 and 28 is additionally requested in view of the combination of Old Hargraves in view of Goglio, and further in view of Old Ota and Old Goglio.

Claim 18 is additionally requested in view of the combination of Old Hargraves in view of Goglio, and further in view of Old Ota, Old Goglio and Old Encyclopedia.

e.  Reexamination of:

Exhibit    2
Page    86