REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

Claims 1-15, 19-21, 26 and 31-32 is requested in view of the combination of Old Vidkjaer in view of Melrose.

Claims 3-4 is additionally requested in view of the combination of Old Vidkjaer in view of Melrose, and further in view of Old Bruke.

Claims 11-13, and 20-21 is additionally requested in view of the combination of Old Vidkjaer in view of Melrose, and further in view of Old Haas.

Claims 20-21 is additionally requested in view of the combination of Old Vidkjaer in view of Melrose, and further in view of Old Encyclopedia.

Claims 16-18 is requested in view of the combination of Old Vidkjaer in view of Melrose, and further in view of Old Goglio.

Claim 18 is additionally requested in view of the combination of Old Vidkjaer in view of Melrose, and further in view of Old Goglio and Old Encyclopedia.

Claims 22-25, 27, 29-30, 33-36, 37-43, 44-49, and 50-55 is requested in view of the combination of Old Vidkjaer in view of Melrose, and further in view of Old Hargraves.

Claim 28 is requested in view of the combination of Old Vidkjaer in view of Melrose, and further in view of Old Hargraves and Old Goglio.

Statement Pointing Out Each Substantial New Question Of Patentability.

Every one of the claims of USP 7,169,418 was allowed based on the addition, to the element "at least one region of deflection" disposed on the container contained in each independent claim, of the limitation that this region of deflection "allows flexion and thereby has less resistance to flexing than the body of said container proximate to said region of deflection."

Exhibit ___2___
Page ___87___

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

As described in more detail below, however, the new Melrose and Lane references each teach at least one region of deflection on the container body that allows flexion and thereby has less resistance to flexing than the body of the container proximate to the region of deflection. Because these teachings provide subject matter of the USP 7,169,418 claims that was not considered during prosecution of USP 7,169,418, the teachings of each of these references raise a substantial new question of patentability.

The old Hargraves and old Vidkjaer references also each teach at least one region of deflection on the container body that allows flexion and thereby has less resistance to flexing than the body of the container proximate to the region of deflection. As described in more detail below, these teachings were overlooked or forgotten during the course of the prosecution of USP 7,169,418. The teachings of the Hargraves and Vidkjaer references are being presented in a new light and a different way compared with their use in the earlier examination and thus raise substantial new questions of patentability and with material new arguments that also raise substantial new questions of patentability.

In the claims as originally filed, the region of deflection element appeared only in dependent claim 21. Original claim 21 recited a "region of deflection disposed" on the container body, but did not include the additional limitation that the region of deflection "allows flexion and thereby has less resistance to flexing than the body of said container proximate to said region of deflection." The examiner rejected original claim 21 as anticipated by Hargraves, correctly observing (at p. 5) that in Hargraves "the body has at least one region of deflection disposed thereon responsive to at least one force internal or external to said container (see p. 5, lines 61-68)." August 24, 2004 Office Action at p. 5.

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

The applicant did not dispute that Hargraves discloses at least one region of deflection disposed on the container body. Instead, the applicant amended the claims that had been rejected as anticipated by Hargraves by adding a new "one-way valve" element and arguing that Hargraves did not teach the newly claimed one-way valve. *See* Dec. 22, 2004 Response at p. 3, line 11. The applicant also added new claims that were distinguished from Hargraves based on the recitation of a handle. *See* March 4, 2005 Supplemental Amendment at p. 11. Dependent claim 21 continued to be the only claim of the then 37 pending claims reciting a "region of deflection."

In response to the amended claims, the examiner acknowledged that Hargraves does not disclose a one-way valve and therefore withdrew the rejections based on Hargraves. *See* June 15, 2005 Office Action at p. 8. The examiner rejected the claims based on other art, however, including rejecting dependent claim 21 as anticipated by Vidkjaer, in part because

> The container of Vidkjaer has regions of deflection on it (see Figure 1, Reference number 3 and Column 4, lines 56-60). Vidkjaer discloses that the ribs on the container are for reinforcement and it is interpreted that they would be responsive to an internal or external force on the container. (*Id.* at p. 3.)

With respect to Hargraves, it should be noted that at this point in the prosecution the region of deflection was recited only in then-pending dependent claim 21, which was not separately argued for patentability. The applicant did not make any arguments for patentability based on the region of deflection in its next response either. Only later in the prosecution did the applicant submit an amendment adding the "region of deflection" to all of the independent claims and arguing for patentability based primarily on the recited region of deflection. At that point, a different examiner was handling the application and did not mention Hargraves. It thus appears that Hargraves' teaching of a region of deflection was later either forgotten or overlooked. In the new light of the primacy of the region of deflection to applicant's arguments

Exhibit ___2___
Page ___88___

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

for patentability, Hargraves' teaching of a region of deflection creates a substantial new question of patentability.

With respect to Vidkjaer, it should be noted that the examiner identified only the ribs indicated by reference number 3 as the regions of deflection reading on the added claim language (evidently because ribs 3 are regions which are deflected). The examiner thus failed to observe that the panels of the Vidkjaer container located between the ribs are "regions of deflection." As described below, the successive examiners in later office actions continued to focus their attention solely on the reinforcement ribs of Vidkjaer, and thus overlooked that the panels of Vidkjaer are regions of deflection that allow flexion and thereby have less resistance to flexing than the proximate ribs. The current focus on the deflection panels presents Vidkjaer in a new light and different way compared with its use in the earlier examination and raises material new arguments, all of which raise substantial new questions of patentability in this request for reexamination.

In response to the June 15, 2005 Office Action, the applicant amended the independent claim that had been rejected as anticipated by Vidkjaer by adding a handle element (from canceled dependent claim 15). The applicant's arguments to overcome the rejection based on Vidkjaer relied solely on the addition of the handle element, and the applicant did not discuss regions of deflection. *See* Oct. 12, 2005 Amendment and Reply at p. 2, line 14. Dependent claim 21 continued to be the only claim reciting a region of deflection.

A new examiner then issued a final rejection of the amended claims, observing, among other things, that Ota teaches a handle disposed on the body of a plastic container. The examiner rejected dependent claim 21 as obvious over Vidkjaer in view of Ota, reciting again that:

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

> [t]he container of Vidkjaer has regions of deflection on it (see Figure 1, Reference
> number 3 and Column 4, lines 56-60). Vidkjaer discloses that the ribs on the
> container are for reinforcement and it is interpreted that they would be responsive
> to an internal or external force on the container. (See Nov. 29, 2005 Final Office
> Action at p.3.)

The examiner thus again focused solely on the ribs of Vidkjaer, and disregarded the panels

between the ribs.

In a Request for Continued Examination, the applicant next amended the claims to add

the region of deflection element to all of the pending independent claims. The applicants'

arguments that Vidkjaer did not disclose a region of deflection – like the examiners' discussions

of Vidkjaer – focused only on the ribs of the Vidkjaer container, and not on the flexible panels

between the ribs. The applicant argued that the claimed regions of deflection "allow flexion

within the body portion of the container such that the body portion can deform uniformly without

catastrophic failure or other defects, such as denting" and distinguished regions of deflection

from ribs by arguing that regions of deflection "are designed to have *less resistance to deflection*

than the regions of the container proximate to the regions of deflection," whereas ribs "are

designed to provide structural stability and further restrict movement of the container to the

regions of deflection." Feb. 28, 2006 Response and Amendment with RCE at p. 11-12.

The examiner then rejected a number of the newly amended claims as obvious over

Vidkjaer in view of Ota "for the reasons set forth in the previous Office Action." April 4, 2006

Office Action at p. 2. In responding to the applicant's arguments about Vidkjaer, the examiner

also focused solely on Vidkjaer's reinforcement ribs, and ignored the panels between the ribs,

stating (at 3):

> Applicant argues that the reinforcement ribs in Vidkjaer cannot be deemed to
> serve as both a reinforcement means and a region of deflection. Applicant states
> that the reinforcement ribs of Vidkjaer cannot both reinforce the container and
> allow flexibility. However, the claim language only requires a "region of

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

deflection" and has no flexibility requirement. As the prior art teaches ribs, which reinforce the container, and these areas, being reinforced, are stronger, it would have been expected that they would deflect forces on the container.

The applicant responded by filing an amendment in which each claim was amended to add the limitation "said region of deflection having less resistance to flexing than the body of said container proximate to said region of deflection." The applicant's arguments focused solely on this new limitation, and the applicant continued to capitalize on the examiner's sole focus on the ribs of the Vidkjaer container and the examiner's failure to notice that the panels are the true regions of deflection:

> In a nutshell, Applicants' position is that none of the cited documents suggests the "region of deflection" employed in the present containers. In response, the Examiner (Office Action, page 3) surmises that the "region of deflection" could encompass reinforcing "ribs", since no flexibility requirement is given. In response to that position, the claims have now been amended to recite that the region of deflection has less resistance to flexing that [sic] does the proximate region of the container, i.e., is more flexible. This, of course, is <u>the exact opposite</u> of a reinforcing rib. (See June 28, 2006 Amendment at 14.)

Another new examiner then allowed the claims without further comment, subject to an examiner's amendment making the final form of the region of deflection element:

> wherein said body comprises at least one region of deflection disposed thereon, and wherein said region of deflection allows flexion and thereby has less resistance to flexing than the body of said container proximate to said region of deflection.

As this review of the prosecution history demonstrates, a region of deflection that allows flexion and thereby has less resistance to flexing than the body of the container proximate to the region of deflection is the sole element of the allowed claims that the office thought was not taught by the prior art. That element *is* taught, however, both in the Melrose and Lane references that the office did not consider and in the Hargraves and Vidkjaer references that are part of the prosecution record, but that the office did not consider in the proper light and with the benefit of

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

the arguments asserted below. Each claim of USP 7,169,418 is obvious over each of those

references in combination with other references as discussed in detail below.


It will be appreciated that **Old Goglio** has been applied below in view of its having been

referenced in Goglio. Actually, Goglio references the container to be used for the invention

disclosed as being, "for example of the type described in Italian patent application MI-

91A001770" (see column 2, lines 25-26). This IT patent application was the priority application

for Old Goglio (as evident from the front page thereof), and Old Goglio has the same disclosure

thereof (as evident from the IT application, which is now IT patent 01248568).



### a. Melrose v. Goglio

Neither Melrose nor Goglio were of record in the file of USP 7,169,418. With respect to

regions of deflection, Melrose teaches "smooth-surfaced flex panels 22 . . . on the [container]

sidewall" that "provide zones of expansion and vacuum absorption" and that are adjacent to and

"merge directly into the side edges of" the "vertically elongate columns 24" that "provide

structural reinforcement zones" (column 4, lines 1-8 and 28-35, see also Figures 1-4). The flex

panels 22 are thus regions of deflection that allow flexion and thereby have less resistance to

flexing than the adjacent structural reinforcement columns 24. Melrose (figures 1-2) also teaches

a packaging system having a container made of plastic (e.g., PET) with an interior volume, a

handle (column 4, lines 64-67 and column 5, lines 25-39), a tensile modulus number between 35

and 650 ksi (Melrose discloses use of PET – column 1, lines 17-18 – which has a tensile

modulus of 358-435 ksi), and a top load capacity in the recited range (inherent). Goglio (figure

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

2) discloses a top closure for a container holding coffee including a one-way valve (column 2, lines 27-34) on a flexible closure (column 2, lines 28-30) attached to a protuberance (column 2, lines 27-31) of the open top. Thus, as it would be obvious to use the container of Melrose for coffee, and as Goglio explicitly teaches use of the described top closure to package ground coffee (column 1, lines 8-11), it would be obvious to use the top closure of Goglio on the package of Melrose and all of the limitations of claim 1 are thus met.

As noted above, once a "region of deflection" with "less resistance to flexing" was claimed as a critical feature in all of the independent claims, the examiner failed to apply or consider any principal reference having all of the above noted features of Melrose. More importantly, the examiner failed to consider any reference having all of the teachings of Goglio in combination with any reference having all of the teachings of Melrose. Therefore, the combined teachings of Melrose and Goglio constitute a prior art container not considered by the examiner, and a substantial new question of patentability is raised by the combination of Melrose in view of Goglio for independent claim 1.

As noted above, this combination of Melrose in view of Goglio also raises a substantial new question of patentability with respect to:

- independent claim 33 which has most (but not all) of the same limitations as independent claim 1, the additional limitations being: i) that roast and ground coffee is contained, which is taught by Goglio, ii) the use of polyolefin for the container, which is also taught in Melrose, and iii) an aroma value of the recited range, which is inherent with such a material.

Exhibit  2
Page  94

REQUEST for Reexamination of 7,169,418          By Dalton et al.
Issued: 01/30/2007                              SN 10/155,338

- independent claim 37, which has most (but not all) of the same limitations as independent

  claim 1, the additional limitation being that coffee is being contained, which is taught by

  Goglio.

- independent claim 44, which has most (but not all) of the same limitations as independent

  claim 1, the additional limitations being:  i) that coffee is being contained, which is taught

  by Goglio and ii) use of one of a group of materials including polyethylene terephthalate

  (PET), which is taught by Melrose.

- independent claim 50, which has most (but not all) of the same limitations as independent

  claim 1, the additional limitations being:  i) that coffee is being contained, which is taught

  by Goglio, and ii) use of one of a group of materials including polyethylene terephthalate

  (PET), which is taught by Melrose.

Thus, for the same reasons as for independent claim 1, a substantial new question of patentability

for the other independent claims 33, 37, 44 and 50 is also raised.


Melrose additionally teaches that the material is blow-molded polyethylene terephthalate

(PET) (column 1, lines 10-18) (claims 8-10); that the handle is integral with the body, and

parallel to the longitudinal (vertical) axis of the container (column 4, lines 64-67 and column 5,

lines 25-39) (claims 14-15); that the region of deflection is responsive to a force (column 2, lines

50-55 and column 4, lines 1-8) (claim 19); that the top load strength/capacity could be of the

recited value (inherent – claim 26); and that a rib parallel to the longitudinal axis and proximate

to a region of deflection in the form of a rectangular panel is provided (elements 22 and 24 in

figures 1 and 2) (claims 31-32).  Goglio teaches ground coffee, which could obviously be roasted

as a design (column 1, lines 8-11) (claims 22-23).  Thus, a substantial new question of

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

patentability is raised for <u>dependent claims 8-10, 14-15, 19, 22-23, 26, and 31-32</u> dependent from independent claim 1.

The respective higher coffee aroma values (claims 34-35) are also likewise inherent in Melrose. Thus, a substantial new question of patentability is raised for <u>dependent claims 34-35</u> dependent from independent claim 33.

Melrose teaches the handle is integral with the body and parallel to the longitudinal (vertical) axis of the container (column 4, lines 64-67 and column 5, lines 25-39) (claims 38-40) and a PET material (column 1, lines 17-18) (claim 41). Goglio teaches the use of coffee (recited positively now – claim 42) which is ground (column 1, lines 8-11) and which could obviously be roasted as a design choice (claim 43). Thus, a substantial new question of patentability is raised for <u>dependent claims 38-43</u> dependent from independent claim 37.

Melrose teaches the handle is integral with the body and parallel to the longitudinal (vertical) axis of the container (column 4, lines 64-67 and column 5, lines 25-39) (claims 45-47). Goglio teaches the use of coffee (recited positively now – claim 48) which is ground (column 1, lines 8-11) and which could obviously be roasted as a design choice (claim 49). Thus, a substantial new question of patentability is raised for <u>dependent claims 45-49</u> dependent from independent claim 44.

Melrose teaches the handle is integral with the body and parallel to the longitudinal (vertical) axis of the container (column 4, lines 64-67 and column 5, lines 25-39) (claims 51-53). Goglio teaches the use of coffee (recited positively now – claim 54) which is ground (column 1, lines 8-11) and which could obviously be roasted as a design choice (claim 55). Thus, a substantial new question of patentability is raised for <u>dependent claims 51-55</u> dependent from independent claim 50.

Exhibit 1
Page 96

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

### a.i.  Melrose v. Goglio + Old Vidkjaer

Old Vidkjaer teaches the use of a foil-polyolefin-barrier layer laminate (column 2, lines 39-49) as a flexible closure which could be used in the prior art container (claims 2-4); and a polyolefin and oxygen barrier multi-layer container which could be used in the prior art container as a design choice (claims 11-13, 36), and which polyolefin would have the tensile modulus values in the range of 90,000-150,000 psi (claims 20-21). Goglio and Old Vidkjaer both inherently teach the valve opening values in claims 5-7. Old Vidkjaer teaches a one-way valve that responds when the pressure of the container reaches 3-7 mbar (column 5, lines 1-4), which means that the valve would also be inherently responsive to pressures of 10 mbar, 20 mbar, and 30 mbar. Goglio teaches use of the disclosed one-way valve in containers filled with ground coffee (column 1, lines 7-11), which would inherently be responsive to the pressures described in claims 5-7. It would have been obvious to one of ordinary skill in the art to use the materials and valve values taught by Old Vidkjaer in combination with the Melrose container with the top closure of Goglio because Old Vidkjaer is also a rigid, gas-impermeable container for food products that produce off gasses. Thus, a substantial new question of patentability is raised for dependent claims 2-7, and 11-13, dependent from independent claim 1; and for dependent claim 36 dependent from independent claim 33.

### a.ii.  Melrose v. Goglio + Old Bruke

Old Bruke teaches a multilayered flexible closure comprising outer layers of polyethylene (which is a polyolefin) and an inner barrier layer of polyvinylidene chloride (column 4, lines 48-65) (claims 3-4). It would have been obvious to one of ordinary skill in the

Exhibit 2
Page 97

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

art to use the foil material disclosed in Old Bruke with the Melrose container with the top closure

of Goglio in order to make an impermeable foil.  Thus, a new question of patentability is raised

for <u>dependent claims 3-4</u>, dependent from independent claim 1.


### a.iii.  Melrose v. Goglio + Old Haas

Old Haas teaches a container made of high density polyethylene (column 1, lines 39-47)

(claim 36), which is a polyolefin (claims 9, 33), and which has a tensile modulus of 155,000 psi

(*see, e.g.,* Old Marks' Handbook, page 17, line 68, column 3) (claims 20-21).  Old Haas further

discloses a multi-layered container material with an internal (to the container) polyolefin layer

made of high density polyethylene coated by an external oxygen-barrier layer (column 1, line 39

through column 2, line 2) (claims 11-13).  It would have been obvious to one of ordinary skill in

the art to use the materials of Old Haas in combination with the Melrose container with the top

closure of Goglio to package ground coffee because Old Haas teaches these materials as a way to

extend the shelf life of an oxygen-sensitive product (column 1, lines 22-31).  Because the

container of Melrose in view of Goglio and further in view of Old Haas meets all the claimed

structural limitations, the overall aroma values recited in claims 33-36 are inherent.  Thus, a

substantial new question of patentability is raised for <u>independent claim 33</u>, and for <u>dependent

claims 9, 11-13 and 20-21</u>, dependent from independent claim 1, and <u>dependent claims 34-36</u>,

dependent from independent claim 33.


### a.iv.  Melrose v. Goglio + Old Encyclopedia

Old Encyclopedia teaches the use of polyolefins for food packaging applications and

applications involving blow molding (page 328, table 20 and page 323) (claims 9, 33, 36); and

18         Exhibit  2
                                                                        Page  98

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

specifically the use of high density polyethylene, which has a tensile modulus of 60,000-150,000 psi (page 305 and page 328, table 20) (claims 20-21, 36). It would have been obvious to one of ordinary skill in the art to use the high density polyethylene material of Old Encyclopedia in combination with the Melrose container with the top closure of Goglio to package ground coffee because high density polyethylene is a widely used, inexpensive and chemically resistant material and an ordinarily-skilled artisan would have referred to teachings of known plastics in the art such as those in Old Encyclopedia. Because the container of Melrose in view of Goglio and further in view of Old Encyclopedia meets all the structural claimed limitations, the overall aroma values recited in claims 33-36 are inherent. Thus, a substantial new question of patentability is raised for independent claim 33, and for dependent claims 9 and 20-21, dependent from independent claim 1, and dependent claims 34-36, dependent from independent claim 33.

a.v.  Melrose v. Goglio + Old Goglio

Old Goglio teaches an overcap (lid 6, figures 8-11), for use with the flexible closure of Goglio, having a rib with a height greater than the maximum displacement of the dome, a dome, and a skirt made of PET material (claims 16-18). It would have been obvious to use Old Goglio's overcap in conjunction with Goglio's closure in light of Goglio's specifying such use. Thus, a substantial new question of patentability is raised for dependent claims 16-18 dependent from independent claim 1.

a.vi.  Melrose v. Goglio + Old Goglio + Old Encyclopedia

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

Old Encyclopedia teaches the use of polyolefins including high density polyethylene for food packaging applications and applications involving blow molding (page 328, table 20 and pages 305, 323) (claim 18). It would have been obvious to one of ordinary skill in the art to use the high density polyethylene material of Old Encyclopedia in the overcap of Old Goglio in combination with the Melrose container with the top closure of Goglio to package ground coffee because high density polyethylene is a widely used, inexpensive and chemically resistant material and an ordinarily-skilled artisan would have referred to teachings of known plastics in the art such as those in Old Encyclopedia. Thus, a substantial new question of patentability is raised for dependent claim 18, dependent from independent claim 1.

### a.vii. Melrose v. Goglio + Old Hargraves

Old Hargraves teaches the flushing of a coffee container with an inert gas, including the inert gasses nitrogen and carbon dioxide, and then sealing the container (column 17, lines 59-63) (claims 24-25, 27), which could be used with the prior art container as a design choice. Goglio inherently teaches the valve opening value, as this would be a design choice (claim 29). Melrose teaches an integral handle (column 4, lines 64-67 and column 5, lines 25-39) (claim 30). Thus, a substantial new question of patentability is raised for dependent claims 24-25, 27 and 29-30 dependent from independent claim 1.

### a.viii. Melrose v. Goglio + Old Hargraves + Old Goglio

Old Goglio teaches an overcap (lid 6, figures 8-11), for use with the flexible closure of Goglio, having a rib, dome, and skirt (claim 28). Thus, a substantial new question of patentability is raised for dependent claim 28 dependent from independent claim 1.

Exhibit _2_
Page _100_

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

### b. Newcomb v. Melrose

Neither Newcomb nor Melrose were of record in the file of USP 7,169,418. Newcomb (figures 1-3) teaches a packaging system for ground coffee (column 1, lines 13-18) which could be made of plastic (column 3, lines 15-17) and which includes a container 2 with an interior volume and open top, a protuberance including lip 4 at the top end, a closure 10 which could be laminated paper aluminum foil stock (column 3, lines 16-17), a tensile modulus number in the recited range (inherent as the plastic chosen in a design choice), and a top load capacity in the recited range (inherent and a design choice).

With respect to regions of deflection, Melrose, as noted above, teaches "smooth-surfaced flex panels 22 . . . on the [container] sidewall" that "provide zones of expansion and vacuum absorption" and that are adjacent to and "merge directly into the side edges of" the "vertically elongate columns 24" that "provide structural reinforcement zones" (column 4, lines 1-8 and 28-35, see also Figures 1-4). The flex panels 22 are thus regions of deflection that allow flexion and thereby have less resistance to flexing than the adjacent structural reinforcement columns 24. Melrose (figures 1-2) also teaches a packaging system having a container made of plastic (e.g., PET) with an interior volume, a handle (column 4, lines 64-67 and column 5, lines 25-39), a tensile modulus number between 35 and 650 ksi (Melrose discloses use of PET – column 1, lines 17-18 – which has a tensile modulus of 358-435 ksi), and a top load capacity in the recited range (inherent). Thus, as it would be obvious to include in the Newcomb container a region of deflection to accommodate the pressure changes as well known to be desired in the container art to prevent buckling or the like and a handle for ease of handling particularly for a larger

Exhibit  2
Page  101

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

container both as taught by Melrose, such a prior art container would meet all of the limitations of claim 1.

As noted above, once a "region of deflection with less resistance to flexing" was claimed as a critical feature in all of the independent claims, the examiner failed to apply or consider any principal reference for containing coffee or the like to which it would be obvious to add a region of deflection. More importantly, the examiner failed to consider any reference having all of the teachings of Melrose in combination with any reference having all of the teachings of Newcomb, particularly for being adapted to have a region of deflection and for the use of a handle therewith. Therefore, because the combined teachings of Newcomb and Melrose constitute a prior art container not considered by the examiner, a substantial new question of patentability is raised by the combination of Newcomb in view of Melrose for <u>independent claim 1</u>.

As noted above, this combination of Newcomb in view of Melrose also raises the same issue with respect to:

- <u>independent claim 33</u> which has most (but not all) of the same limitations as independent claim 1, the additional limitations being that: i) roast and ground coffee is contained, with ground coffee taught by Newcomb and roasting being a design choice, ii) the use of polyolefin for the container which is also specifically taught in Melrose by the container being made of PET (or other plastics which would be a design choice, see Old Encyclopedia), and iii) an aroma value of the recited range, which is inherent with the design chosen plastic material of the container.

Exhibit _2_
Page _102_

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

- independent claim 37, which has most (but not all) of the same limitations as independent claim 1, the additional limitation being that coffee is being contained, which is taught in Newcomb.

- independent claim 44, which has most (but not all) of the same limitations as independent claim 1, the additional limitations being that: i) coffee is being contained, which is taught in Newcomb, and ii) PET as one material of the container, which is specifically taught by Melrose.

- independent claim 50, which has most (but not all) of the same limitations as independent claim 1, the additional limitations being that: i) coffee is being contained, , which is taught in Newcomb, and ii) PET as one material of the container, which is specifically taught by Melrose.

Thus, for the same reasons as for independent claim 1, a substantial new question of patentability for the remaining independent claims is also raised.

As noted above, Newcomb teaches a flexible closure of paper/aluminum foil stock (column 3, lines 16-17) (claims 2-3); the containing of ground coffee which could obviously be roasted as a design choice (claims 22-23); and a top load strength which inherently or as a design choice would be of the recited value (claim 26). Melrose additionally teaches that the material is blow-molded (Title, and column 1, lines 10-18) (claims 8-10); that the handle is integral and parallel to the longitudinal (vertical) axis (column 4, lines 64-67 and column 5, lines 25-39) (claims 14-15); that the region of deflection is responsive to a force (column 2, lines 50-55 and column 4, lines 1-8) (claim 19); that the material PET which could also be PE would inherently have the designated modulus values (claims 20-21); and that a rib parallel to the longitudinal axis

Exhibit __2__
Page __103__

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

and proximate to a region of deflection in the form of a rectangular panel is provided (elements 22 and 24 in figures 1 and 2) (claims 31-32). Thus, a substantial new question of patentability is raised for dependent claims 2-3, 8-10, 14-15, 19-23, 26, 31-32 dependent from independent claim 1.

The respective higher coffee aroma values (claims 34-35) are also inherent in Melrose. Thus, a substantial new question of patentability is raised for dependent claims 34-35 dependent from independent claim 33.

Melrose teaches the handle is integral with the body and parallel to the longitudinal (vertical) axis of the container (column 4, lines 64-67 and column 5, lines 25-39) (claims 38-40) and a PET material (column 1, lines 17-18) (claim 41). Newcomb teaches the use of coffee (column 1, lines 13-18) (recited positively now – claim 42) which is ground and which could obviously be roasted as a design choice (claim 43). Thus, a substantial new question of patentability is raised for dependent claims 38-43 dependent from independent claim 37.

Melrose teaches the handle is integral with the body and parallel to the longitudinal (vertical) axis of the container (column 4, lines 64-67 and column 5, lines 25-39) (claims 45-47). Newcomb teaches the use of coffee (column 1, lines 13-18) (recited positively now – claim 48) which is ground and which could obviously be roasted as a design choice (claim 49). Thus, a substantial new question of patentability is raised for dependent claims 45-49 dependent from independent claim 44.

Melrose teaches the handle is integral with the body and parallel to the longitudinal (vertical) axis of the container (column 4, lines 64-67 and column 5, lines 25-39) (claims 51-53). Newcomb teaches the use of coffee (column 1, lines 13-18) (recited positively now – claim 54) which is ground and which could obviously be roasted as a design choice (claim 55). Thus, a

Exhibit 2
Page 104

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

substantial new question of patentability is raised for <u>dependent claims 51-55</u> dependent from independent claim 50.

### b.i.  Newcomb v. Melrose + Old Vidkjaer

Old Vidkjaer teaches the use of a foil-polyolefin-barrier layer laminate (column 2, lines 39-49) as a flexible closure which could be used in the prior art container (claims 2-4); and a polyolefin and oxygen barrier multi-layer container which could be used in the prior art container as a design choice (claims 11-13, 36) and which would have tensile modulus numbers in the recited ranges of claims 20-21.  Newcomb (as well as Vidkjaer) inherently teaches the respective valve opening values, as these would be mere design choices (claims 5-7).  It would have been obvious to one of ordinary skill in the art to use the materials, top closure and valve values taught by Old Vidkjaer in combination with the Newcomb container because Old Vidkjaer is also a rigid, gas-impermeable container for food products that produce off gasses similar to that of Newcomb.  Thus, a substantial new question of patentability is raised for <u>dependent claims 2-7, 11-13, and 20-21,</u> dependent from independent claim 1; and for <u>dependent claim 36</u> dependent from independent claim 33.

### b.ii.  Newcomb v. Melrose + Old Bruke

Old Bruke teaches a multilayered flexible closure comprising outer layers of polyethylene (which is a polyolefin) and an inner barrier layer of polyvinylidene chloride (column 4, lines 48-65) (claims 3-4).  It would have been obvious to one of ordinary skill in the art to use the foil material disclosed in Old Bruke with the Newcomb container made of a plastic in order to make an impermeable foil in lieu of the old and cumbersome top closure of

Exhibit ___2___
Page ___105___

Newcomb. Thus, a new question of patentability is raised for <u>dependent claims 3-4</u>, dependent from independent claim 1.

### b.iii.  Newcomb v. Melrose+ Old Haas

Old Haas teaches a container made of high density polyethylene (column 1, lines 39-47) (claim 36), which is a polyolefin (claims 9, 33), and which has a tensile modulus of 155,000 psi (*see, e.g.,* Old Marks' Handbook , page 17, line 68, column 3) (claims 20-21).  Old Haas further discloses a multi-layered container material with an internal (to the container) polyolefin layer made of high density polyethylene coated by an external oxygen-barrier layer (column 1, line 39 through column 2, line 2) (claims 11-13).  It would have been obvious to one of ordinary skill in the art to use the materials of Old Haas with the Newcomb container including the top closure to package ground coffee because Old Haas teaches these materials as a way to extend the shelf life of an oxygen-sensitive product (column 1, lines 22-31).  Because the container of Newcomb in view of Melrose and further in view of Old Haas meets all the claimed structural limitations, the overall aroma values recited in claims 33-36 are inherent.  Thus, a substantial new question of patentability is raised for <u>independent claim 33</u>, and for <u>dependent claims 9, 11-13 and 20-21</u>, dependent from independent claim 1, and <u>dependent claims 34-36</u>, dependent from independent claim 33.

### b.iv.  Newcomb v. Melrose + Old Encyclopedia

Old Encyclopedia teaches the use of polyolefins for food packaging applications and applications involving blow molding (page 328, table 20 and page 323) (claims 9, 33, 36); and specifically the use of high density polyethylene, which has a tensile modulus of 60,000-150,000

Exhibit  2
Page  106

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

psi (page 305 and page 328, table 20) (claims 20-21, 36). It would have been obvious to one of ordinary skill in the art to use the high density polyethylene material of Old Encyclopedia in combination with the Newcomb container and top closure thereof to package the ground coffee because high density polyethylene is a widely used, inexpensive and chemically resistant material and an ordinarily-skilled artisan would have referred to teachings of known plastics in the art such as those in Old Encyclopedia. Because the container of Newcomb in view of Melrose and further in view of Old Encyclopedia meets all the structural claimed limitations, the overall aroma values recited in claims 33-36 are inherent. Thus, a substantial new question of patentability is raised for independent claim 33, and for dependent claims 9 and 20-21, dependent from independent claim 1, and dependent claims 34-36, dependent from independent claim 33.

### b.v. Newcomb v. Melrose + Old Goglio

Old Goglio teaches an overcap (lid 6, figures 8-11), for use after a flexible closure is removed, and thus could be used after the flexible closure of a plastic Newcomb container is removed by a design choice and in view of the common use of overcaps in the coffee art. This overcap has a rib with a height greater than the maximum displacement of the dome (especially upwards, as there would be a one-way valve to keep the upwards movement to a small amount), a dome, and a skirt made of PET material (claims 16-18). Thus, a substantial new question of patentability is raised for dependent claims 16-18 dependent from independent claim 1.

### b.vi. Newcomb v. Melrose + Old Goglio + Old Encyclopedia

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

Old Encyclopedia teaches the use of polyolefins including high density polyethylene for food packaging applications and applications involving blow molding (page 328, table 20 and pages 305, 323) (claim 18). It would have been obvious to one of ordinary skill in the art to use the high density polyethylene material of Old Encyclopedia in the overcap of Old Goglio in combination with the Newcomb container and the top closure thereof to package the ground coffee because high density polyethylene is a widely used, inexpensive and chemically resistant material and an ordinarily-skilled artisan would have referred to teachings of known plastics in the art such as those in Old Encyclopedia. Thus, a substantial new question of patentability is raised for dependent claim 18, dependent from independent claim 1.

### b.vii  Newcomb v. Melrose + Old Hargraves

Old Hargraves teaches the flushing of a coffee container with an inert gas, including the inert gasses nitrogen and carbon dioxide, and then sealing the container (column 17, lines 59-63) (claims 24-25, 27), which could be used with the prior art container as a design choice. Newcomb (and Goglio) inherently teaches the valve opening value, as this would be a design choice (claim 29). Melrose teaches an integral handle (column 4, lines 64-67 and column 5, lines 25-39) (claim 30), and such would be an obvious expedient for the Newcomb container if it were made larger to hold more coffee. Thus, a substantial new question of patentability is raised for dependent claims 24-25, 27, 29 and 30 dependent from independent claim 1.

### b.viii  Newcomb v. Melrose + Old Hargraves + Old Goglio

Old Goglio teaches an overcap (lid 6, figures 8-11), for use with the flexible closure of Goglio, having a rib with a height greater than the maximum displacement of the dome, a dome,

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

and a skirt made of PET material (claim 28). It would have been obvious to use Old Goglio's overcap in conjunction with Goglio's closure in light of Goglio's specifying such use. Thus, a substantial new question of patentability is raised for <u>dependent claim 28</u> dependent from independent claim 1.

### c. Lane v. Goglio

Neither Lane nor Goglio were of record in the file of USP 7,169,418. With respect to regions of deflection, Lane teaches "front and rear panels 24 and 26" that "controllably accommodate . . . pressure reduction by being capable of pulling inward, under the influence of the reduced pressure" and that adjoin "more rigid column portions 30" (column 5, line 52 through column 6, line 4). The panels 24 and 26 are thus regions of deflection that allow flexion and thereby have less resistance to flexing than the adjacent more rigid column portions 30. Lane (figures 1-2) also teaches a packaging system having a container made of PET or other materials with an interior volume, a handle (column 4, lines 21-29), a tensile modulus between 35 and 650 ksi (Lane discloses use of PET (column 3, lines 38-41), which has a tensile modulus of 358-435 ksi), and a top load capacity in the recited range (inherent – see column 6, lines 6-11). Goglio (figure 2) discloses a top closure for a container holding coffee including a one-way valve (column 2, lines 27-34) on a flexible closure (column 2, lines 28-30) attached to a protuberance (column 2, lines 27-31) of the open top. Thus, as it would be obvious to use the container of Lane for coffee, and as Goglio explicitly teaches use of the described top closure to package ground coffee (column 1, lines 8-11), it would be obvious to use the top closure of Goglio on the package of Lane and all of the limitations of claim 1 are thus met.

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

As noted above, once a "region of deflection" with "less resistance to flexing" was claimed as a critical feature in all of the independent claims, the examiner failed to apply or consider any principal reference having all of the above noted features of Lane. More importantly, the examiner failed to consider any reference having all of the teachings of Goglio in combination with any reference having all of the teachings of Lane. Therefore, the combined teachings of Lane and Goglio constitute a prior art container not considered by the examiner, and a substantial new question of patentability is raised by the combination of Lane in view of Goglio for <u>independent claim 1</u>.

As noted above, this combination of Lane in view of Goglio also raises a substantial new question of patentability with respect to:

- <u>independent claim 33</u> which has most (but not all) of the same limitations as independent claim 1, the additional limitations being that: i) roast and ground coffee is contained, which is taught by Goglio, ii) the use of polyolefin for the container, which is also taught in Lane, and iii) an aroma value of the recited range, which is inherent with such a material.

- <u>independent claim 37,</u> which has most (but not all) of the same limitations as independent claim 1, the additional limitation being that coffee is being contained, which is taught by Goglio.

- <u>independent claim 44,</u> which has most (but not all) of the same limitations as independent claim 1, the additional limitations being: i) that coffee is being contained, which is taught by Goglio, and ii) use of one of a group of materials including polyethylene terephthalate (PET), which is taught by Lane.

Exhibit  2
Page  110

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

- independent claim 50, which has most (but not all) of the same limitations as independent

  claim 1, the additional limitations being:  i) that coffee is being contained, which is taught

  by Goglio, and ii) use of one of a group of materials including polyethylene terephthalate

  (PET), which is taught by Lane.

Thus, for the same reasons as for independent claim 1, a substantial new question of patentability

for the remaining independent claims is also raised.


Lane additionally teaches use of blow-molded materials including polyethylene

terephthalate (PET) (column 3, lines 27-41) (claims 8-10); that the handle is integral with the

body and parallel to the longitudinal (vertical) axis of the container (column 4, lines 21-29 and

element 28 in Figure 2) (claims 14-15); that the region of deflection is responsive to a force

(column 5, line 52 through column 6, line 6) (claim 19); that the material PET which could also

be other plastics would inherently have the designated modulus values (claims 20-21); the

recited top load strength/capacity (inherent – claim 26); and that a rib parallel to the longitudinal

axis and proximate to a region of deflection in the form of a rectangular panel is provided

(elements 30, 24 and 26 in Figures 1-3 and column 6, lines 1-11) (claims 31-32).  Goglio teaches

ground coffee, which could obviously be roasted as a design choice (column 1, lines 8-11)

(claims 22-23).  Thus, a substantial new question of patentability is raised for dependent claims

8-10, 14-15, 19-23, 26, and 31-32 dependent from independent claim 1.

The respective higher coffee aroma values (claims 34-35) are also inherent in Lane.

Thus, a substantial new question of patentability is raised for dependent claims 34-35 dependent

from independent claim 33.

Exhibit  2
Page  111

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

Lane teaches the handle is integral with the body and parallel to the longitudinal (vertical) axis of the container (column 4, lines 21-29 and element 28 in Figure 2) (claims 38-40) and a PET material (column 3, lines 38-41) (claim 41). Goglio teaches the use of coffee (recited positively now – claim 42) which is ground (column 1, lines 8-11) and which could obviously be roasted as a design choice (claim 43). Thus, a substantial new question of patentability is raised for dependent claims 38-43 dependent from independent claim 37.

Lane teaches the handle is integral with the body and parallel to the longitudinal (vertical) axis of the container (column 4, lines 21-29 and element 28 in Figure 2) (claims 45-47). Goglio teaches the use of coffee (recited positively now – claim 48) which is ground (column 1, lines 8-11) and which could obviously be roasted as a design choice (claim 49). Thus, a substantial new question of patentability is raised for dependent claims 45-49 dependent from independent claim 44.

Lane teaches the handle is integral with the body and parallel to the longitudinal (vertical) axis of the container (column 4, lines 21-29 and element 28 in Figure 2) (claims 51-53). Goglio teaches the use of coffee (recited positively now – claim 54) which is ground (column 1, lines 8-11) and which could obviously be roasted as a design choice(claim 55). Thus, a substantial new question of patentability is raised for dependent claims 51-55 dependent from independent claim 50.

c.i. Lane v. Goglio + Old Vidkjaer

Old Vidkjaer teaches the use of a foil-polyolefin-barrier layer laminate (column 2, lines 39-49) as a flexible closure which could be used in the prior art Lane container (claims 2-4); and a polyolefin and oxygen barrier multi-layer container which could be used in the prior art Lane

Exhibit  2
Page  112

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

container (claims 11-13, 36).  Goglio and Old Vidkjaer both inherently teach the valve opening

values in claims 5-7.  Old Vidkjaer teaches a one-way valve that responds when the pressure of

the container reaches 3-7 mbar (column 5, lines 1-4), which means that the valve would also be

inherently responsive to pressures of 10 mbar, 20 mbar, and 30 mbar.  Goglio teaches use of the

disclosed one-way valve in containers filled with ground coffee (column 1, lines 7-11), which

would inherently be responsive to the pressures described in claims 5-7.  It would have been

obvious to one of ordinary skill in the art to use the materials and valve values taught by Old

Vidkjaer in combination with the Lane container with the top closure of Goglio because Old

Vidkjaer is also a rigid, gas-impermeable container for food products that produce off gasses.

Thus, a substantial new question of patentability is raised for <u>dependent claims 2-7, and 11-13,</u>

dependent from independent claim 1; and for <u>dependent claim 36</u> dependent from independent

claim 33.


### c.ii.  Lane v. Goglio + Old Bruke

Old Bruke teaches a multilayered flexible closure comprising outer layers of

polyethylene (which is a polyolefin) and an inner barrier layer of polyvinylidene chloride

(column 4, lines 48-65) (claims 3-4).  It would have been obvious to one of ordinary skill in the

art to use the foil material disclosed in Old Bruke with the Lane container with the top closure of

Goglio in order to make an impermeable foil.  Thus, a new question of patentability is raised for

<u>dependent claims 3-4,</u> dependent from independent claim 1.

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

### c.iii.  Lane v. Goglio + Old Haas

Old Haas teaches a container made of high density polyethylene (column 1, lines 39-47)
(claim 36), which is a polyolefin (claims 9, 33), and which has a tensile modulus of 155,000 psi
(*see, e.g.*, Old Mark's Handbook , page 17, line 68, column 3) (claims 20-21).  Old Haas further
discloses a multi-layered container material with an internal (to the container) polyolefin layer
made of high density polyethylene coated by an external oxygen-barrier layer (column 1, line 39
through column 2, line 2) (claims 11-13).  It would have been obvious to one of ordinary skill in
the art to use the materials of Old Haas in combination with the Lane container with the top
closure of Goglio to package ground coffee because Old Haas teaches these materials as a way to
extend the shelf life of an oxygen-sensitive product (column 1, lines 22-31).  Because the
container of Lane in view of Goglio and further in view of Old Haas meets all the claimed
structural limitations, the overall aroma values recited in claims 33-36 are inherent.  Thus, a
substantial new question of patentability is raised for <u>independent claim 33</u>, and for <u>dependent
claims 9, 11-13 and 20-21</u>, dependent from independent claim 1, and <u>dependent claims 34-36</u>,
dependent from independent claim 33.

### c.iv.  Lane v. Goglio + Old Encyclopedia

Old Encyclopedia teaches the use of polyolefins for food packaging applications and
applications involving blow molding (page 328, table 20 and page 323) (claims 9, 33); and
specifically the use of high density polyethylene, which has a tensile modulus of 60,000-150,000
psi (page 305 and page 328, table 20) (claims 20-21, 36).  It would have been obvious to one of
ordinary skill in the art to use the high density polyethylene material of Old Encyclopedia in
combination with the Lane container with the top closure of Goglio to package ground coffee

Exhibit ⟋
Page  114

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

because high density polyethylene is a widely used, inexpensive and chemically resistant material and an ordinarily-skilled artisan would have referred to teachings of known plastics in the art such as those in Old Encyclopedia. Because the container of Lane in view of Goglio and further in view of Old Encyclopedia meets all the structural claimed limitations, the overall aroma values recited in claims 33-36 are inherent. Thus, a substantial new question of patentability is raised for <u>independent claim 33</u>, and for <u>dependent claims 9 and 20-21</u>, dependent from independent claim 1, and <u>dependent claims 34-36</u>, dependent from independent claim 33.

### c.v.  Lane v. Goglio + Old Goglio

Old Goglio teaches an overcap (lid 6, figures 8-11), for use with the flexible closure of Goglio, having a rib with a height greater than the maximum displacement of the dome, a dome, and a skirt and made of PET material (claims 16-18). It would have been obvious to use Old Goglio's overcap in conjunction with Goglio's closure in light of Goglio specifying such use. Thus, a substantial new question of patentability is raised for <u>dependent claims 16-18</u>, dependent from independent claim 1.

### c.vi.  Lane v. Goglio + Old Goglio + Old Encyclopedia

Old Encyclopedia teaches the use of polyolefins including high density polyethylene for food packaging applications and applications involving blow molding (page 328, table 20 and pages 305, 323) (claim 18). It would have been obvious to one of ordinary skill in the art to use the high density polyethylene material of Old Encyclopedia in the overcap of Old Goglio in combination with the Lane container with the top closure of Goglio to package ground coffee

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

because high density polyethylene is a widely used, inexpensive and chemically resistant material and an ordinarily-skilled artisan would have referred to teachings of known plastics in the art such as those in Old Encyclopedia. Thus, a substantial new question of patentability is raised for <u>dependent claim 18</u>, dependent from independent claim 1.


### c.vii. Lane v. Goglio + Old Hargraves

Old Hargraves teaches the flushing of a coffee container with an inert gas, including the inert gasses nitrogen and carbon dioxide, and then sealing the container (column 17, lines 59-63) (claims 24-25, 27), which could be used with the prior art container as a design choice. Goglio inherently teaches the valve opening value, as this would be a design choice (claim 29). Lane has an integral handle (column 4, lines 21-29 and element 28 in Figure 2) (claim 30). Thus, a substantial new question of patentability is raised for <u>dependent claims 24-25, 27 and 29-30</u>, dependent from independent claim 1.


### c.viii. Lane v. Goglio + Old Hargraves + Old Goglio

Old Goglio teaches an overcap (lid 6, figures 8-11), for use with the flexible closure of Goglio, having a rib, dome, and skirt (claim 28). Thus, a substantial new question of patentability is raised for <u>dependent claim 28</u>, dependent from independent claim 1.


### d. Hargraves v. Goglio

Hargraves was of record in the file USP 7,169,418 – though as noted above, its teaching of a region of deflection having less resistance to flexing than the body proximate to the region

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

of deflection was not considered after that element was added to all of the independent claims.

Goglio was not of record in the file of USP 7,169,418. Hargraves (figures 1-2) teaches a

packaging system for roast and ground coffee (column 1, lines 9-18), having a container made of

PET (column 16, lines 45-46) or other materials, with an interior volume, a region of deflection

(column 2, lines 33-39 and element 339 in Figures 1 and 4, which allows flexion and has less

resistance to flexing than proximate elements 334), a handle (column 16, lines 51-53), a tensile

modulus number between 35 and 650 ksi (Hargraves discloses use of PET, which has a tensile

modulus in the claimed range), and a top load capacity in the recited range (inherent – see

column 15, lines 29-30). Goglio (figure 2) discloses a top closure for a container holding coffee

including a one-way valve (element 4, column 2, lines 27-34) on a flexible closure (element 2,

column 2, lines 28-30) attached to a protuberance (column 2, lines 27-31) of the open top. Thus,

as the container of Hargraves is used for coffee, it would be obvious to use a top closure like that

of Goglio in combination with Hargraves especially if a larger container with a scoopable top

opening was desired and all of the limitations of claim 1 are thus met.

As noted above, once a "region of deflection" with "less resistance to flexing" was

claimed as a critical feature in all of the independent claims, the examiner failed to apply or

consider any principal reference having all of the above noted features of Hargraves. More

importantly, the examiner failed to consider any reference having all of the teachings of Goglio

in combination with any reference having all of the teachings of Hargraves. Therefore, the

combined teachings of Hargraves and Goglio constitute a prior art container not considered by

the examiner, and a substantial new question of patentability is raised by the combination of

Hargraves in view of Goglio for underlined independent claim 1.

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

As noted above, this combination of Hargraves in view of Goglio also raises a substantial new question of patentability with respect to:

- independent claim 33 which has most (but not all) of the same limitations as independent claim 1, the additional limitations being that: i) roast and ground coffee is contained, which is taught by Hargraves, ii) the use of polyolefin for the container, which is also taught in Hargraves, and iii) an aroma value of the recited range which is inherent with such a material and the aroma retention thereof is noted in Hargraves.

- independent claim 37, which has most (but not all) of the same limitations as independent claim 1, the additional limitation being that coffee is being contained which is disclosed in Hargraves and Goglio.

- independent claim 44, which has most (but not all) of the same limitations as independent claim 1, the additional limitations being: i) that coffee is being contained, which is taught by Hargraves and Goglio, and ii) use of one of a group of materials including polyethylene terephthalate (PET), which is taught by Hargraves.

- independent claim 50, which has most (but not all) of the same limitations as independent claim 1, the additional limitations being: i) that coffee is being contained, which is taught by Goglio, and ii) use of one of a group of materials including polyethylene terephthalate (PET), which is taught by Hargraves.

Thus, for the same reasons as for independent claim 1, a substantial new question of patentability for the remaining independent claims is also raised.

Hargraves additionally teaches use of blow-molded polyethylene terephthalate (PET) (column 16, lines 45-46) (claims 8-10); that the handle is integral (claim 14); that the region of

Exhibit  2
Page  118

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

deflection is responsive to a force (column 2, lines 33-37) (claim 19); that the coffee contained is roast and ground (column 5, lines 53-55) (claims 22-23); that the coffee is flushed with an inert gas such as nitrogen prior to sealing (column 17, lines 59-63) (claims 24-25 and 27); the recited top load strength/capacity (inherent – claim 26); and that the handle (bead 304) is integral (claim 30). Thus, a substantial new question of patentability is raised for <u>dependent claims 8-10, 14, 19, 22-27, and 30</u>, dependent from independent claim 1.

The respective higher coffee aroma values (claims 34-35) are also inherent in Hargraves. Thus, a substantial new question of patentability is raised for <u>dependent claims 34-35</u>, dependent from independent claim 33.

Hargraves teaches the handle is integral (claims 38-39) and use of polyethylene terephthalate (PET) (column 16, lines 45-46) (claim 41). Goglio teaches the use of coffee (recited positively now – claim 42) which is ground (column 1, lines 8-11) and which could obviously be roasted as a design choice (claim 43). Thus, a substantial new question of patentability is raised for <u>dependent claims 38-39 and 41-43</u>, dependent from independent claim 37.

Hargraves teaches the handle is integral (claims 45-46) and the use of roast and ground coffee (column 5, lines 53-57) (claims 48-49). Thus, a substantial new question of patentability is raised for <u>dependent claims 45-46 and 48-49</u>, dependent from independent claim 44.

Hargraves teaches the handle is integral (claims 51-52) and the use of roast and ground coffee (column 5, lines 53-57) (claims 54-55). Thus, a substantial new question of patentability is raised for <u>dependent claims 51-52 and 54-55</u>, dependent from independent claim 50.

Exhibit  2
Page  119

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

d.i.  Hargraves v. Goglio + Old Vidkjaer

Old Vidkjaer teaches the use of a foil-polyolefin-barrier layer laminate (column 2, lines 39-49) as a flexible closure which could be used in the prior art container (claims 2-4); and a polyolefin and oxygen barrier multi-layer container which could be used in the prior art container (claims 11-13, 36), and which polyolefin would have the tensile modulus values in the range of 90,000-150,000 psi (claims 20-21).  Goglio and Old Vidkjaer both inherently teach the valve opening values in claims 5-7 and 29.  Old Vidkjaer teaches a one-way valve that responds when the pressure of the container reaches 3-7 mbar (column 5, lines 1-4), which means that the valve would also be inherently responsive to pressures of 10 mbar, 20 mbar, and 30 mbar.  Goglio teaches use of the disclosed one-way valve in containers filled with ground coffee (column 1, lines 7-11), which would inherently be responsive to the pressures described in claims 5-7 and 29.  Old Vidkjaer teaches a rib parallel to the longitudinal axis and proximate to a region of deflection in the form of a rectangular panel (Figure 1, structural elements 3 and the adjacent rectangular panels) (claims 31-32).  It would have been obvious to one of ordinary skill in the art to use the materials and valve values taught by Old Vidkjaer in combination with the Melrose container with the top closure of Goglio because Old Vidkjaer is also a rigid, gas-impermeable container for food products that produce off gasses.  Thus, a substantial new question of patentability is raised for <u>dependent claims 2-7, 11-13, 20-21, 29 and 31-32</u>, dependent from independent claim 1; and for <u>dependent claim 36</u>, dependent from independent claim 33.

d.ii.  Hargraves v. Goglio + Old Haas

Old Haas teaches a container made of high density polyethylene (column 1, lines 39-47) (claim 36), which is a polyolefin (claim 33).  It would have been obvious to one of ordinary skill

Exhibit _____2_____
Page _____120_____

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

in the art to use the materials of Old Haas in combination with the Hargraves container with the

top closure of Goglio to package ground coffee because Old Haas teaches these materials as a

way to extend the shelf life of an oxygen-sensitive product (column 1, lines 22-31). Because the

container of Hargraves in view of Goglio and further in view of Old Haas meets all the claimed

structural limitations, the overall aroma values recited in claims 33-36 are inherent. Thus, a

substantial new question of patentability is raised for <u>independent claim 33</u>, and for <u>dependent</u>

<u>claims 34-36</u>, dependent from independent claim 33.


### d.iii.  Hargraves v. Goglio + Old Encyclopedia

Old Encyclopedia teaches the use of polyolefins for food packaging applications and

applications involving blow molding (page 328, table 20 and page 323) (claims 33) and

specifically the use of high density polyethylene (claim 36). It would have been obvious to one

of ordinary skill in the art to use the high density polyethylene material of Old Encyclopedia in

combination with the Hargraves container with the top closure of Goglio to package ground

coffee because high density polyethylene is a widely used, inexpensive and chemically resistant

material and an ordinarily-skilled artisan would have referred to teachings of known plastics in

the art such as those in Old Encyclopedia. Because the container of Hargraves in view of Goglio

and further in view of Old Encyclopedia meets all the structural claimed limitations, the overall

aroma values recited in claims 33-36 are inherent. Thus, a substantial new question of

patentability is raised for <u>independent claim 33</u>, and for <u>dependent claims 34-36</u>, dependent from

independent claim 33.

Exhibit ___7___
Page ___121___

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

### d.iv.  Hargraves v. Goglio + Melrose

Melrose teaches a handle parallel to the longitudinal (vertical) axis of the container (claims 15, 40, 47, 53) which could be used with the container of Hargraves especially if the Hargraves container is made larger to hold more.  Thus, a substantial new question of patentability is raised for:  <u>dependent claim 15</u>, dependent from independent claim 1; <u>dependent claim 40</u>, dependent from independent claim 33; <u>dependent claim 47</u>, dependent from independent claim 37; and <u>dependent claim 53</u>, dependent from independent claim 50.

### d.v.  Hargraves v. Goglio + Old Goglio

Old Goglio teaches an overcap (lid 6, figures 8-11), for use with the flexible closure of Goglio, having a rib with a height greater than the maximum displacement of the dome, a dome, and a skirt and made of PET material (claims 16-18, 28).  It would have been obvious to use Old Goglio's overcap in conjunction with Goglio's closure in light of Goglio specifying such use.  Thus, a substantial new question of patentability is raised for <u>dependent claims 16-18 and 28</u> dependent from independent claim 1.

### d.vi.  Hargraves v. Goglio + Old Ota

Old Ota teaches a plastic container with a handle disposed on the body integral with the body and substantially parallel to the longitudinal (vertical) axis of the container (Figures 1-5, column 2, lines 35-56 and column 3, lines 13-16 and 29-38) (claims **1**, 8, 10, 14-15, 19, 22-27, 30, **37-43**, **44-49**, **50-55**).  It would have been obvious to one of ordinary skill in the art to put a handle as taught by Ota on the container disclosed by Hargraves since both are directed to containers for food and since the handle of Ota aids in holding the container without deforming

Exhibit ____2____
Page ____122____

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

the container (see Ota, column 1, lines 36-68 and column 2, lines 1-2). Thus, a substantial new question of patentability is raised for: independent claims 1, 37, 44 and 50, and for dependent claims 8, 10, 14-15, 19, 22-27, and 30, dependent from independent claim 1, dependent claims 38-43, dependent from independent claim 37, dependent claims 45-49, dependent from independent claim 44, and dependent claims 51-55, dependent from independent claim 50.

### d.vii. Hargraves v. Goglio + Old Ota + Old Vidkjaer

Old Vidkjaer teaches the use of a foil-polyolefin-barrier layer laminate (column 2, lines 39-49) as a flexible closure (claim 2), and a rib parallel to the longitudinal axis and proximate to a region of deflection in the form of a rectangular panel (Figure 1, structural elements 3 and the adjacent rectangular panels) (claims 31-32). Goglio and Old Vidkjaer both inherently teach the valve opening values in claims 5-7 and 29. Old Vidkjaer teaches a one-way valve that responds when the pressure of the container reaches 3-7 mbar (column 5, lines 1-4), which means that the valve would also be inherently responsive to pressures of 10 mbar, 20 mbar, and 30 mbar. Goglio teaches use of the disclosed one-way valve in containers filled with ground coffee (column 1, lines 7-11), which would inherently be responsive to the pressures described in claims 5-7 and 29. It would have been obvious to one of ordinary skill in the art to use the materials and valve values taught by Old Vidkjaer in combination with the Hargraves container with the top closure of Goglio because Old Vidkjaer is also a rigid, gas-impermeable container for food products that produce off gasses. Thus, a substantial new question of patentability is raised for dependent claims 2, 5-7, 29 and 31-32, dependent from independent claim 1.

### d.viii. Hargraves v. Goglio + Old Ota + Old Bruke

Exhibit  2
Page  123

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

Old Bruke teaches a multilayered flexible closure comprising outer layers of

polyethylene (which is a polyolefin) and an inner barrier layer of polyvinylidene chloride

(column 4, lines 48-65) (claims 3-4). It would have been obvious to one of ordinary skill in the

art to use the foil material disclosed in Old Bruke with the Hargraves container with the top

closure of Goglio in order to make an impermeable foil. Thus, a new question of patentability is

raised for <u>dependent claims 3-4</u>, dependent from independent claim 1.


### d.ix.  Hargraves v. Goglio + Old Ota + Old Haas

Old Haas teaches a container made of high density polyethylene (column 1, lines 39-47),

which is a polyolefin (claim 9), and which has a tensile modulus of 155,000 psi (*see, e.g.,* Old

Mark's Handbook , page 17, line 68, column 3) (claims 20-21). Old Haas further discloses a

multi-layered container material with an internal (to the container) polyolefin layer made of high

density polyethylene coated by an external oxygen-barrier layer (column 1, line 39 through

column 2, line 2) (claims 11-13). It would have been obvious to one of ordinary skill in the art to

use the materials of Old Haas in combination with the Hargraves container with the top closure

of Goglio to package ground coffee because Old Haas teaches these materials as a way to extend

the shelf life of an oxygen-sensitive product (column 1, lines 22-31). Thus, a substantial new

question of patentability is raised for <u>dependent claims 9, 11-13 and 20-21</u>, dependent from

independent claim 1.


### d.x.  Hargraves v. Goglio + Old Ota + Old Encyclopedia

Old Encyclopedia teaches the use of polyolefins for food packaging applications and

applications involving blow molding (page 328, table 20 and page 323) (claim 9); and

Exhibit 2
Page 124

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

specifically the use of high density polyethylene, which has a tensile modulus of 60,000-150,000 psi (page 305 and page 328, table 20) (claims 20-21). It would have been obvious to one of ordinary skill in the art to use the high density polyethylene material of Old Encyclopedia in combination with the Hargraves container with the top closure of Goglio to package ground coffee because high density polyethylene is a widely used, inexpensive and chemically resistant material and an ordinarily-skilled artisan would have referred to teachings of known plastics in the art such as those in Old Encyclopedia. Thus, a substantial new question of patentability is raised for dependent claims 9 and 20-21, dependent from independent claim 1.


### d.xi. Hargraves v. Goglio + Old Ota + Old Goglio

Old Goglio teaches an overcap (lid 6, figures 8-11), for use with the flexible closure of Goglio, having a rib with a height greater than the maximum displacement of the dome, a dome, and a skirt (claims 16-17, 28). It would have been obvious to use Old Goglio's overcap in conjunction with Goglio's closure in light of Goglio specifying such use. Thus, a substantial new question of patentability is raised for dependent claims 16-17 and 28, dependent from independent claim 1.


### d.xii. Hargraves v. Goglio + Old Ota + Old Goglio + Old Encyclopedia

Old Encyclopedia teaches the use of polyolefins including high density polyethylene for food packaging applications and applications involving blow molding (page 328, table 20 and pages 305, 323) (claim 18). It would have been obvious to one of ordinary skill in the art to use the high density polyethylene material of Old Encyclopedia in the overcap of Old Goglio in combination with the Hargraves container with the top closure of Goglio to package ground

Exhibit 2
Page 125

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

coffee because high density polyethylene is a widely used, inexpensive and chemically resistant material and an ordinarily-skilled artisan would have referred to teachings of known plastics in the art such as those in Old Encyclopedia. Thus, a substantial new question of patentability is raised for <u>dependent claim 18</u>, dependent from independent claim 1.

### e.  Vidkjaer v. Melrose

Vidkjaer was of record in the file USP 7,169,418 -- though as noted above, the examiner considered only whether the support ribs (element 3) of Old Vidkjaer are regions of deflection, and failed to notice that the panels between and adjacent to the support ribs are regions of deflection that allow flexion and have less resistance to flexing than the proximate ribs. Melrose was not of record in the file of USP 7,169,418.

With respect to regions of deflection, the panels located between the support ribs of the Old Vidkjaer container are regions of deflection that allow flexion and have less resistance to flexing than the ribs, which are the part of the body of the container proximate to the panels. Old Vidkjaer describes the ribs (3) as "reinforcement ribs (3), permitting therefore to reduce further the thickness of the used material." (column 4, lines 58-60). One of ordinary skill in the art would understand that these ribs reinforce the structure by having more resistance to flexing than the proximate panels, and that the panels are therefore regions of deflection. Indeed, other prior art specifically taught that panels adjacent to ribs allow flexion to accommodate pressure changes. Old Darr, USP 5,690,244, taught a cylindrical container as follows:

> The side wall of the container has at least three vertically spaced horizontal ribs of an annular shape extending around the extent thereof and also has at least twelve vertical ribs spaced circumferentially and extending between the horizontal ribs

      Exhibit ___2___
Page ___126___

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

thereof to cooperate therewith to <u>define at least twelve generally rectangular
panels</u> spaced around the container between each adjacent pair of horizontal ribs,
and the <u>rectangular panels being capable of flexing inwardly</u> to accommodate for
shrinkage upon cooling after hot filling of the container.  [See column 1, line 62
to column 2, line **4** – emphasis added.]

That such regions of deflection are well known in the art is further evidenced by

Alberghini, USP 5,060453:

> The paneling of a sealed container due to a cooling of the product within the
> container often makes the container appear misshapened, . . . [column 1, lines 48-
> 50]

> To diminish this consumer resistance to paneled containers, and to provide
> enhanced side wall symmetry so as to permit stacking, some containers have been
> designed to incorporate special features called <u>vacuum deflection panels</u> intended
> to be displaced inwardly in response to product shrinkage and cooling.  [Column
> 1, line 66 to column 2, line 3, emphasis added]

> Generally, the side structure has consisted of inwardly indented panels <u>adapted to
> flex still further inwardly</u> into the container to offset the decrease in volume due
> to the cooling of the liquid product as well as the cooling of the gas within the
> head space.  [Column 2, lines 22-27, emphasis added]

Vidkjaer (figures 1-4) teaches a packaging system for dough or other products which give

off gas and which is made of PET or any of various other plastics and laminates (column 2, lines

33-38); and which includes a container 2 with an interior volume and open top, rectangular

regions of deflection (between reinforcement ribs 3), a protuberance or flange 6 at the open top

end, a foil laminate flexible closure 7 (column 2, lines 40-49), a tensile modulus number in the

recited range (inherent), a top load capacity in the recited range (inherent), and a one-way valve

8 in the flexible closure.  Melrose, as noted above has a handle (column 4, lines 64-67 and

column 5, lines 25-39).  Thus, as it would be obvious to include a handle as taught by Melrose on

the Vidkjaer container, especially if the container were made larger and more vertical to hold

more coffee, all of the limitations of claim 1 are met.

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

As noted above, the examiner failed to consider whether Old Vidkjaer's panels are regions of deflection. Additionally, the examiner failed to consider any reference having all of the teachings of Vidkjaer in combination with any reference having all of the teachings of Melorse, particularly for being adapted to have a region of deflection and for the use of a handle therewith. Therefore, because the combined teachings of Vidkjaer and Melrose constitute a prior art container not considered by the examiner, a substantial new question of patentability is raised by the combination of Vidkjaer in view of Melrose for <u>independent claim 1</u>.

As noted above, Vidkjaer teaches a foil-polyolefin-barrier layer laminate flexible closure (column 2, lines 39-49) (claims 2-4); the respective valve opening values recited in claims 5-7 (Vidkjaer teaches a one-way valve that responds when the pressure of the container reaches 3-7 mbar (column 5, lines 1-4)); blow-moldable materials, including polypropylene, which can be multi-layered (column 2, lines 32-38) (claims 8-13); a region of deflection (inherently) responsive to a force (claim 19); the material PET which could also be PE would inherently have the designated modulus values (claims 20-21); a top load strength of the recited value (inherent – claim 26); and a rib parallel to the longitudinal axis and proximate to a region of deflection in the form of a rectangular panel (Figure 1, structural elements 3 and the adjacent rectangular panels) (claims 31-32). Melrose additionally teaches a handle integral with the body and parallel to the longitudinal (vertical) axis of the container (column 4, lines 64-67 and column 5, lines 25-39) (claims 14-15). Thus, a substantial new question of patentability is raised for <u>dependent claims 2-15, 19-21, 26 and 31-32</u> dependent from independent claim 1.

<u>e.i.  Vidkjaer v. Melrose + Old Bruke</u>

Exhibit 2
Page 128

REQUEST for Reexamination of 7,169,418
Issued: 01/30/2007

By Dalton et al.
SN 10/155,338

Old Bruke teaches a multilayered flexible closure comprising outer layers of polyethylene (which is a polyolefin) and an inner barrier layer of polyvinylidene chloride (column 4, lines 48-65) (claims 3-4). It would have been obvious to one of ordinary skill in the art to use the foil material disclosed in Old Bruke with the Vidkjaer container in order to make an impermeable foil. Thus, a new question of patentability is raised for <u>dependent claims 3-4</u>, dependent from independent claim 1.

### e.ii. Vidkjaer v. Melrose + Old Haas

Old Haas teaches a container made of high density polyethylene, which has a tensile modulus of 155,000 psi (*see, e.g.,* Old Mark's Handbook , page 17, line 68, column 3) (claims 20-21). Old Haas further discloses a multi-layered container material with an internal (to the container) polyolefin layer made of high density polyethylene coated by an external oxygen-barrier layer (column 1, line 39 through column 2, line 2) (claims 11-13). It would have been obvious to one of ordinary skill in the art to use the materials of Old Haas in combination with the Vidkjaer and Melrose containers to package ground coffee because Old Haas teaches these materials as a way to extend the shelf life of an oxygen-sensitive product (column 1, lines 22-31). Thus, a substantial new question of patentability is raised for <u>dependent claims 11-13 and 20-21</u>, dependent from independent claim 1.

### e.iii. Vidkjaer v. Melrose + Old Encyclopedia

Old Encyclopedia teaches the use of high density polyethylene, which has a tensile modulus of 60,000-150,000 psi (page 305 and page 328, table 20), for food packaging applications and applications involving blow molding (page 328, table 20 and page 323) (claims

Exhibit 2
Page 128