William C. Rooklidge (SBN 134483)
Ben M. Davidson (SBN 181464)
Gregory S. Cordrey (SBN 190144)
Jesse D. Mulholland (SBN 222393)
HOWREY LLP
2020 Main Street
Irvine, California 92614
949-721-6900
949-721-6910
E-mail: rooklidgew@howrey.com
E-mail: davidsonb@howrey.com
E-mail: cordreyg@howrey.com
E-mail: mulhollandj@howrey.com

Mark D. Wegener (*pro hac vice* application pending)
HOWREY LLP
1299 Pennsylvania Ave, NW
Washington, DC 20004
Telephone: 202-783-0800
Facsimile: 202-383-6610
E-mail: wegenerm@howrey.com

Attorneys for Plaintiff
The Procter & Gamble Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>KRAFT FOODS GLOBAL, INC.,<br><br>Defendant. | Case No.: C07-04413 PJH<br><br>**Honorable Phyllis J. Hamilton**<br><br>**DECLARATION OF GREG HUNTINGTON IN SUPPORT OF THE PROCTER & GAMBLE COMPANY'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date: October 24, 2007<br>Time: 9:00 a.m.<br>Court: Courtroom 3, 17th Floor |

DECLARATION OF GREG HUNTINGTON IN
SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. C07-04413 PJH

I, Greg Huntington, hereby declare:

1. I have been an employee of The Procter and Gamble Company ("P&G") since June 1984. Except as stated herein, the matters stated below are of my personal knowledge. If called as a witness, I could and would testify competently thereto.

2. I graduated in June 1984 from University of Cincinnati with a bachelors degree in chemical engineering. I am Associate Director of Research & Development for P&G's coffee category and have been since October 2006. My responsibilities include helping to develop and lead new product and package initiatives, manage R&D resources for developing those projects, and envisioning new opportunities for future development of the business and R&D organization. I also oversee the current business market activity, including monitoring consumer comments, monitoring competitors' products, and staying aware of relevant trends that impact the category. As Associate Director of R&D, I am familiar with P&G's resource allocation for the project to develop the "AromaSeal" plastic container technology that is described in U.S. Patent No. 7,169,418 ("the '418 Patent").

3. P&G invested approximately five years of effort and about $5 million in research & development costs to develop the AromaSeal container technology. In summer of 2003, P&G began converting its entire line of metal-can roast and ground coffee production to its new plastic canister design. This effort took several months to implement and cost P&G at least $30 million. P&G advertised and continues to advertise the advantages of the AromaSeal canister, focusing on the improved aroma and freshness offered by the combination of features including a peel-off seal, flavor-protecting air valve, and tight-fitting lid. P&G's ads also highlighted the easy-to-grip handle of the new Folgers plastic container.

4. In late June 2007, one of my employees responsible for competitive product monitoring made me aware that Kraft was selling roast and ground coffee in a 39-ounce plastic canister. The plastic canister had an integral handle, one-way valve, flexible seal, snap-on overcap and other features described in P&G's patent. The exact timing of Kraft's introduction of the product is unclear. When

DECLARATION OF GREG HUNTINGTON                      - 1 -
IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION
CASE NO. C07-04413 PJH

we found the Kraft's new plastic container on store shelves, my group was not aware of any announcements Kraft had made regarding the container.

5.    P&G's introduction of its AromaSeal canister was recognized by the industry as a revolution in coffee packaging design. The technology received several honors and awards from the professional packaging community and from an important consumer advocacy group—the Arthritis Foundation—because of its superior ergonomic design. Dupont awarded P&G the Dupont Award for Innovation in Packaging. Food and Drug Packaging magazine named P&G's design the "Package of the Year." The Institute of Packaging Professionals gave P&G its "Ameristar Award" and recognized that P&G's technology was "as dramatic a move" in the industry as when "glass was replaced by plastic 20 years ago." True and correct copies of these awards are attached to this declaration as Exhibits 1-4.

6.    I have been involved in packaging design for other consumer products throughout my career at P&G beginning in 1984. I have never seen the level of professional recognition that the AromaSeal canister received in any other product area. The fact that the recognition was received for coffee—a very mature product category—makes that recognition even more impressive. When a product, here roast and ground coffee, has been on the market for a very long time, innovators have had ample time to make incremental improvements to that product. Making a dramatic change to a product that many have come to regard as a commodity makes P&G's innovation especially significant. By introducing a similar version of P&G's plastic canister, Kraft is taking advantage of an opportunity created by P&G that is unlikely to be repeated in the near future. It is hard to predict when or whether P&G or anyone else in this market will achieve another breakthrough technological improvement to roast and ground coffee.

7.    As Associate Director of R&D, I have supervised consumer research to determine how consumers perceive the AromaSeal canister. That research shows that the AromaSeal canister provides strong delivery of important features which include its ease of handling, ease of reclosing, and the confidence it assures the consumer that the coffee is going to be kept fresh throughout its use. By offering consumers a plastic canister that has many of the same advantages as the AromaSeal

DECLARATION OF GREG HUNTINGTON IN       - 2 -
SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. C07-04413 PJH

1  canister, Kraft will erode areas of superiority that P&G has created using its patented technology
2  among consumers over the past four years.
3       8.    The AromaSeal container also received considerable publicity in the news. One writer
4  recognized that a significant benefit of the AromaSeal container is its ability to repeatedly serve
5  consumers by storing food and other items long after it has served its purpose in storing coffee. The
6  article was entitled "AGAIN AND AGAIN" and was published by New Products Magazine in August
7  2004. It used the Folgers AromaSeal container as an example of a re-usable package that can
8  "establish a lasting memory of brands in households." Kraft's introduction of its 39-ounce container
9  for Maxwell House coffee will compete with Folgers' AromaSeal container in serving to reinforce
10 Kraft's and P&G's respective brands. An excerpt of the article is attached as attached as Exhibit 5 to
11 this declaration.
12     I declare under penalty of perjury under the laws of the United States of America that the
13 foregoing is true and correct.
14     Executed this 13th day of September, 2007, at Cincinnati, Ohio.

*Greg Huntington* (signature)

DECLARATION OF GREG HUNTINGTON IN    - 3 -
SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. C07-04413 PJH