William C. Rooklidge (SBN 134483)
Ben M. Davidson (SBN 181464)
Gregory S. Cordrey (SBN 190144)
Jesse D. Mulholland (SBN 222393)
HOWREY LLP
2020 Main Street
Irvine, California 92614
949-721-6900
949-721-6910
E-mail: rooklidgew@howrey.com
E-mail: davidsonb@howrey.com
E-mail: cordreyg@howrey.com
E-mail: mulhollandj@howrey.com

Mark D. Wegener (*pro hac vice* application pending)
HOWREY LLP
1299 Pennsylvania Ave, NW
Washington, DC 20004
Telephone: 202-783-0800
Facsimile: 202-383-6610
E-mail: wegenerm@howrey.com

Attorneys for Plaintiff
The Procter & Gamble Company

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY,<br>Plaintiff,<br>v.<br>KRAFT FOODS GLOBAL, INC.,<br>Defendant. | Case No.: C07-04413 PJH<br>**Honorable Phyllis J. Hamilton**<br>**DECLARATION OF TODD ROE IN SUPPORT OF THE PROCTER & GAMBLE COMPANY'S MOTION FOR A PRELIMINARY INJUNCTION**<br>**Date: October 24, 2007**<br>**Time: 9:00 a.m.**<br>**Court: Courtroom 3, 17th Floor** |

I, Todd Roe, hereby declare:

1. I have been an employee of The Procter and Gamble Company ("P&G") since August, 1998. Except as stated herein, the matters stated below are of my personal knowledge. If called as a witness, I could and would testify competently thereto.

2. I graduated from Miami University in Oxford, Ohio in 1998 with a bachelors degree in marketing and finance. I started work at P&G in 1998 as associate finance manager for Jif peanut butter. In the summer of 2000, I began working in P&G's Consumer and Market Knowledge ("CMK") Division. CMK is the market-research or consumer insights arm of P&G. In about March 2003, I was a Manager in the CMK group for P&G's coffee division. I was promoted to Senior Manager and took over responsibility for managing the rest of the group in July, 2005. I stayed in that role until August 2007. Along with others in my group, I was responsible for consumer research for the coffee division during the time that P&G introduced consumers to its 39-ounce plastic container for Folgers ground, roasted coffee. My training and expertise is in performing and analyzing consumer research, and applying insights gained from consumer research to drive business decisions. Part of my expertise in P&G's coffee business is to predict sales volume based on introductions of new products. My current assignment in CMK is in the corporate function, which oversees the overall capability and development of P&G's consumer research organization.

3. Starting in late 2003, P&G switched its entire line of roast, ground coffee production to its new plastic container design. P&G advertised its revolutionary container design, focusing on the improved aroma and freshness offered by the combination of features including a peel-off seal, flavor-protecting air valve, and tight-fitting lid. P&G's ads also highlighted the easy-to-grip handle of the new Folgers plastic container. P&G marketed the overall technology under its "AromaSeal" trademark.

4. Consumers reacted as P&G's extensive research had predicted. They preferred P&G's plastic containers over traditional metal coffee cans, including those sold by Kraft. P&G was able to achieve significant increases in market share, largely by increasing the percentage of time that consumers bought Folgers over Maxwell House and other brands of ground, roasted coffee.

5. If Kraft continues to sell ground, roasted coffee in its plastic container, it will significantly damage the superior position that P&G has earned in the market and its relationship with consumers. By introducing the plastic Folgers container, P&G increased its sales by about one million statistical cases of coffee per year. A statistical case is a measurement of coffee sold by a defined volume that allows P&G to track coffee sales regardless of the actual size of the containers that are sold. With its own plastic container for ground, roasted coffee, Kraft is now in position to regain all or part of the increased market share that P&G was able to win since 2003.

6. One of the valuable components of the Folgers brand is the packaging of the AromaSeal technology. This technology differentiates Folgers from Maxwell House and other competing brands. Several recent articles about Kraft's recent introduction of its plastic container and this lawsuit have recognized why packaging is so important in the coffee business. For example, an August 29, 2007 article in the Chicago Tribune, attached as Exhibit 1, explained, "[p]ackaging is critically important in commodity-type products like coffee, orange juice and sugar -- products that are very similar . . . . A successful packaging innovation can help boost sales." An August 31, 2007 article, from the industry-publication Packaging Digest, attached as Exhibit 2, explained:

> In a mature market, packaging can have major impact in sprucing up an older brand's image, helping to drive sales. That's exactly what happened with Folgers four years ago.

Kraft's use of a similar plastic container offering the advantages of the Folgers plastic container will take away packaging as a valuable, differentiating component of the Folgers' brand.

7. If Kraft continues to compete with P&G using its new plastic container, it will also erode consumer loyalty toward the Folgers brand. A certain percentage of coffee consumers are considered "switchers" because they are not exclusively loyal to any one brand of coffee and can be persuaded to buy a different brand of ground roast coffee from one shopping trip to the next. After introducing its Folgers plastic containers, P&G gave consumers an extra differentiated reason to choose Folgers brand coffee. By continuing to sell products that have the same advantages as P&G's product, Kraft will diminish P&G's ability to use its plastic container technology as a tie-breaker with

consumers who are "switchers." Kraft also will diminish P&G's ability to encourage switchers to become loyal Folgers users. At the same time, by using a new plastic container that many consumers will be tempted to try, Kraft will draw some consumers away from P&G and will increase its own customer loyalty toward Maxwell House coffee.

8. Another area in which P&G would feel long-term effects from Kraft's use of P&G's plastic container technology is the loss of consumer goodwill. Ground, roast coffee is not a field that generates many new inventions. For generations, coffee has been delivered to the American consumer using standard metal cans that are difficult to open, heavy, and awkward to hold with one hand. By delivering its lightweight plastic container with an easy-to-hold handle, P&G eliminated these problems and provided many advantages relating to coffee aroma and freshness and the ease of using the plastic container. All these innovations create goodwill among coffee consumers, who appreciate that P&G is the innovative company that is bringing them a container no one else provides, and that is superior to the old metal cans used by Kraft and other competitors. By competing with P&G using its own version of P&G's plastic container, Kraft will chip away at the consumer goodwill that P&G has built.

9. There will be at least one other long-term effect on P&G from Kraft's use of its plastic container, even if Kraft eventually stops using the container. By launching Maxwell House in its new plastic container, Kraft is going to encourage consumers to buy its ground, roasted coffee. Some consumers who will be encouraged to buy Maxwell House may have never purchased Maxwell House before or are not loyal to the Maxwell House brand. Some of these consumers will develop a preference for Maxwell House and make it their coffee of choice indefinitely, long after Kraft stops selling coffee in its plastic container.

//

//

//

//

//

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13 day of September, 2007, at Cincinnati, OH

Todd Roe