William C. Rooklidge (SBN 134483)
Ben M. Davidson (SBN 181464)
Gregory S. Cordrey (SBN 190144)
Jesse D. Mulholland (SBN 222393)
HOWREY LLP
2020 Main Street
Irvine, California 92614
949-721-6900
949-721-6910
E-mail: rooklidgew@howrey.com
E-mail: davidsonb@howrey.com
E-mail: cordreyg@howrey.com
E-mail: mulhollandj@howrey.com

Mark D. Wegener (*pro hac vice* application pending)
HOWREY LLP
1299 Pennsylvania Ave, NW
Washington, DC 20004
Telephone: 202-783-0800
Facsimile: 202-383-6610
E-mail: wegenerm@howrey.com

Attorneys for Plaintiff
The Procter & Gamble Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> KRAFT FOODS GLOBAL, INC., <br><br> Defendant. | Case No.: C07-04413 PJH <br><br> **Honorable Phyllis J. Hamilton** <br><br> **DECLARATION OF EDWARD BELLO IN SUPPORT OF THE PROCTER & GAMBLE COMPANY'S MOTION FOR A PRELIMINARY INJUNCTION** <br><br> Date: October 24, 2007 <br> Time: 9:00 a.m. <br> Court: Courtroom 3, 17th Floor |

DECLARATION OF EDWARD BELLO IN
SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. C07-04413 PJH

I, Edward Bello, hereby declare:

1. I am The Procter & Gamble Company's Brand Manager for Folgers Coffee in North America and have been since 2005. Except as stated herein, the matters stated below are of my personal knowledge. If called as a witness, I could and would testify competently thereto.

2. I joined P&G in May 1995, shortly after receiving a Masters of Business Administration in Finance and Accounting from the University of Texas. My first role at P&G was to work for two years as a plant accounting manager for Folgers Coffee. I then became a financial analyst for Millstone Coffee, a gourmet coffee brand sold by P&G. Subsequently, I worked for two years as a global product supply finance manager for P&G's snacks business. I then became assistant brand manager for Millstone coffee, and, later, brand manager for Coffee New Business Development from 2002-2004. From 2004 to 2005, I was Global Brand Manager for New Business Development for P&G's Crest Brand. I have been Brand Manager for North America Folgers Coffee from 2005 to the present.

3. My responsibilities as Brand Manager for Folgers include profitably increasing sales volume and dollar sales of Folgeres in the United States and Canada. I supervise all advertising and marketing for Folgers' current and new products. I also collaborate cross functionally to help lead new product development and overall business planning.

4. P&G gained significant market share when it introduced its new plastic container technology in 2003 under its AromaSeal trademark. Consumers appreciated the features of AromaSeal, including that it maintains the aroma and freshness of coffee longer than traditional metal cans. It also is more convenient to open and handle due to its grip and easy-peel foil seal. To respond to P&G's superior technology, Kraft engaged in a negative advertising campaign against the plastic container. Kraft said in advertisements to consumers that coffee can remain fresh only if stored in traditional metal cans. In one of its widely-played radio advertisements, Kraft warned consumers that it did not believe plastic containers were appropriate or suitable for keeping coffee fresh:

DECLARATION OF EDWARD BELLO IN
SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. C07-04413 PJH

- 1 -

> Have you seen that new plastic coffee container? Did you know it actually absorbs aroma from the coffee? At Maxwell House, we think the aroma should stay where it belongs: in the coffee, not the container! Our steel can won't absorb OUR rich coffee aroma and, unlike plastic, it's a perfect barrier against coffee's worst enemies, moisture and oxygen. So, choose Maxell House with the fresh seal can and make every day good to the last drop.

5.  Kraft also criticized P&G's innovative plastic container technology in comments to the media and the press. In a July 30, 2003 Reuters article, a Kraft spokesperson claimed that coffee should be stored in traditional metal cans with the statement: "We believe our steel can provides the best protection against the 3 enemies of coffee—oxygen, light and moisture." A true and correct copy of the article is attached to this declaration as Exhibit 1. This negative advertising had the potential to make a powerful impact on consumers, not just because coffee is a food product that must be packaged and stored safely, but also because consumers are especially concerned with the freshness of coffee when deciding which brand of coffee to choose.

6.  I am aware of Kraft's recent introduction of plastic containers offering the same or similar advantages to the patented container that P&G began selling in 2003 under its "AromaSeal" trademark, including what Kraft is calling its "Flavor-Lock" lid. If Kraft is allowed to sell its Maxwell House product in its new plastic containers, it will take significant market share away from P&G. Consumers will be interested in switching to or trying Maxwell House's new container for many of the same reasons that they liked P&G's container when it was first introduced.

7.  Kraft also will hurt the profitability of P&G's products by eroding the price that P&G charges to recoup the massive investment that it made to develop its plastic container technology, put the technology into production, and market the technology to consumers. Kraft currently sells its ground, roast coffee in its new plastic containers for the same prices that it charges to sell coffee in metal cans. This price erosion that Kraft is creating will have long-term pricing consequences for P&G, even if Kraft eventually is forced to stop using the plastic container technology used in P&G's AromaSeal containers.

DECLARATION OF EDWARD BELLO IN
SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. C07-04413 PJH

- 2 -

8. The loss of market share to P&G from Kraft's sales of a product having similar features will force P&G to incur marketing and promotional costs in order to maintain market share. These measures are likely to be unsuccessful, however, because Kraft is about to achieve parity with P&G on an issue that is very important to consumers—the aroma and freshness of coffee. Because it is offering a plastic container providing similar features to AromaSeal technology, Maxwell House will damage the core equity that P&G has built among consumers for its Folgers brand of ground, roast coffee. The AromaSeal canister has established Folgers as a superior coffee because its plastic container, cap, and other features seal the aroma and flavor of the coffee for a long time and prevent the coffee from becoming stale. Kraft's usurping of the freshness equity that P&G has built through the AromaSeal canister will erode P&G's market share for years to come.

9. The eventual loss of market share to Kraft will have other repercussions for P&G's business. For example, P&G promotes specialty products such as Folgers Gourmet Selections and Dunkin Donuts coffee by placing samples of these coffees under clear plastic covers placed on top of the plastic containers. A true and correct photograph of these containers is shown below:



10. Promoting specialty products on top of P&G's AromaSeal containers has been a very successful program for P&G. It has resulted in substantially increased sales of the higher-profit, gourmet coffees that we have promoted using the AromaSeal canister. P&G has been planning to increase its promotion of specialty items using AromaSeal containers through retailers such as Walmart. If P&G loses market share because of Kraft's sales of a competing product using plastic container it will have fewer consumers to whom it can introduce its specialty products, and will lose

DECLARATION OF EDWARD BELLO IN
SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. C07-04413 PJH

- 3 -

sales that it otherwise would have made of those products. In addition, retailers who will sell fewer AromaSeal containers will have a lower return on their investment in selling these containers. They will be less likely to promote P&G's specialty products using the AromaSeal container.

11. Losing the competitive advantage that P&G has gained over Kraft through its plastic-container technology also will have other impacts on P&G's business. Due to the AromaSeal innovation and the associated market share, P&G has earned a perception among consumers and retailers that it is an innovative company with technology that is superior to its competitors. Kraft's introduction of a plastic container will diminish that perception among both consumers and retailers. Combined with P&G's likely loss of market share to Kraft, the Maxwell House plastic container is going to hurt the strong relationship that P&G has with its retailers. As a result, our capability to help partner with retailers to meet and surpass the expectations of their shoppers will be diminished.

12. P&G spent millions of dollars and devoted years of research and development effort to develop its new plastic container technology. After investing in this substantial effort at great risk to its business, P&G faced the very real possibility that Kraft's negative advertising campaign would work. Kraft tried to persuade consumers not to buy ground, roasted coffee stored in plastic containers. Now that the technology has succeeded, and P&G has successfully built the market, Kraft is itself using P&G's technology without having had to incur the risks, money, or opportunity cost of bringing the technology to consumers. In so doing, Kraft does more than take away sales and revenue from P&G. It is effectively forcing P&G to subsidize a major improvement to its principal competitor's product and how its competitor will be perceived by consumers. Kraft is using P&G's investment of time, money, and effort to boost its own market position and brand equity at P&G's expense.

//
//
//
//
//
//
//
//
//

DECLARATION OF EDWARD BELLO IN  - 4 -
SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. C07-04413 PJH

1
2       I declare under penalty of perjury under the laws of the United States of America that the
3   foregoing is true and correct.
4       Executed this 13th day of September, 2007, at Cincinnati, OH.

*[Signature]*

Edward Bello

DECLARATION OF EDWARD BELLO IN
SUPPORT OF MOTION FOR A PRELIMINARY   - 5 -
INJUNCTION
CASE NO. C07-04413 PJH