1  William C. Rooklidge (SBN 134483)
   Ben M. Davidson (SBN 181464)
2  Gregory S. Cordrey (SBN 190144)
   Jesse D. Mulholland (SBN 222393)
3  HOWREY LLP
   2020 Main Street
4  Irvine, California 92614
   949-721-6900
5  949-721-6910
   E-mail: rooklidgew@howrey.com
6  E-mail: davidsonb@howrey.com
   E-mail: cordreyg@howrey.com
7  E-mail: mulhollandj@howrey.com

8  Mark D. Wegener (*pro hac vice* application pending)
   HOWREY LLP
9  1299 Pennsylvania Ave, NW
   Washington, DC 20004
10 Telephone: 202-783-0800
   Facsimile: 202-383-6610
11 E-mail: wegenerm@howrey.com

12 Attorneys for Plaintiff
   The Procter & Gamble Company

13

14              UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16                 SAN FRANCISCO DIVISION

17

18 THE PROCTER & GAMBLE COMPANY,     )   Case No.: C07-04413 PJH
                                      )
19              Plaintiff,            )
                                      )
   v.                                 )   **Honorable Phyllis J. Hamilton**
20                                    )
   KRAFT FOODS GLOBAL, INC.,          )   **DECLARATION OF RUDY SCHMELLER**
21                                    )   **IN SUPPORT OF THE PROCTER &**
              Defendant.              )   **GAMBLE COMPANY'S MOTION FOR A**
22                                    )   **PRELIMINARY INJUNCTION**
                                      )
23                                    )   **Date:   October 24, 2007**
                                      )   **Time:   9:00 a.m.**
24                                    )   **Court: Courtroom 3, 17th Floor**
25

26

27

REY LLP
28 **DECLARATION OF RUDY SCHMELLER IN**
   **SUPPORT OF MOTION FOR A**
   **PRELIMINARY INJUNCTION**
   **CASE NO. C07-04413 PJH**

1    I, Rudy Schmeller, hereby declare:

2    1.    I am the Senior Category Account Executive for Folgers coffee in the United States.

3  Except as stated herein, the matters stated below are of my personal knowledge. If called as a witness,

4  I could and would testify competently thereto.

5    2.    I joined The Procter & Gamble Company ("P&G") twelve years ago. I have been

6  responsible as account executive for Folgers coffee for the last two years. Before that, I had similar

7  roles at P&G for its family-care products. I have also held a variety of other sales positions and

8  analytical roles supporting P&G's sales of consumer products. In one position, I was part of a team of

9  P&G employees supporting Walmart, one of P&G's biggest customers. I earned an MBA from the

10  University of Texas in 1995. I have an undergraduate degree from Princeton University.

11    3.    P&G's launch of its AromaSeal plastic container starting in 2003 allowed P&G to gain

12  about 3 to 4 percentage points of market dollar share of ground coffee. That is a significant win and a

13  key change in market position for P&G in the highly-competitive market for in-store bought ground,

14  roast coffee. The innovative design of the plastic AromaSeal container offered consumers improved

15  aroma and freshness and an easy-to use handle, as well as other advantages over metal coffee cans.

16  Kraft's recent launch of a plastic container offering similar features and advantages is going to hurt

17  P&G in a number of ways. Most obviously, Kraft can potentially recapture all of the market share that

18  it lost to P&G when P&G introduced its plastic container. Kraft is very likely to increase its market

19  share for the same reason that P&G gained market share by introducing its AromaSeal plastic

20  container—the benefits that the plastic container provides in preventing coffee from becoming stale

21  when it is stored at home. Many consumers also will try Maxwell House simply because it is being

22  offered in a new plastic container that is similar to Folgers' plastic container. When they need to buy

23  coffee again—typically after several weeks—many consumers will repeat their purchase of Maxwell

24  House. For example, a consumer who bought Maxwell House in its new plastic package may become

25  used to the taste of this coffee or perceive that someone in his or her household has become used to the

26  taste. It will be difficult in many cases to get such consumers to switch back to Folgers, especially as

27

REY LLP

28  **DECLARATION OF RUDY SCHMELLER IN**        - 1 -
**SUPPORT OF MOTION FOR A PRELIMINARY**
**INJUNCTION**
**CASE NO. C07-04413 PJH**

1   they continue to buy Maxwell House in its new plastic container and become more and more

2   accustomed to that brand of coffee. After some time, even if Kraft stops selling coffee in the plastic

3   containers that it currently uses, it would be difficult to make consumers who switched over to

4   Maxwell House switch back to Folgers brand coffee.

5       4.     After a company loses market share and its leadership position in a competitive

6   environment, there is no guarantee that it will be able to regain its position. Trying to regain market

7   position is much more difficult and much more expensive than trying to maintain it. In addition, it

8   would be extremely difficult to quantify the secondary effects of P&G's lost market share on P&G's

9   business. That is because these secondary effects include qualitative factors including P&G's

10  influence among retailers because of its current position as the market leader. P&G has earned a

11  leadership position among retailers because their customers—coffee consumers—prefer Folgers'

12  innovative plastic packaging over metal cans. P&G has earned the role of "captaincy" among many

13  retailers in the coffee category. Captaincy is a concept that allows manufacturers to partner with

14  retailers to build a plan to best meet shopper needs. The plan, called a planogram, determines the

15  products that should be offered on shelves and in what quantities and in what locations. Retailers rely

16  on the resources and expertise of manufacturers to help develop these shelf-space plans. For P&G, the

17  ability to closely partner with a customer, by filling the role of category captain in the planning of shelf

18  space, is a significant advantage because it gives us the ability to 1) understand the customer's key

19  concerns; 2) interact directly with customer decision makers to develop a sales plan and provide the

20  manufacturer's point of view on what consumers are likely to buy and how the customer can grow its

21  business; and 3) provide the best possible service to meet the customers' concerns and strengthen

22  customer relations.

23      5.     Kraft's sales of a product in a new plastic container with similar advantages to P&G's

24  container will erode P&G's leadership position with retailers. Even before Kraft gains market share

25  from P&G, some retailers will predict that consumers will want to try Kraft's product because it is

26  new. In anticipation of that, retailers will stock more Maxwell House and may give more and better

27  shelf space to the product than it currently receives in comparison to Folgers.

REY LLP

28  **DECLARATION OF RUDY SCHMELLER IN**          - 2 -
    **SUPPORT OF MOTION FOR A PRELIMINARY**
    **INJUNCTION**
    **CASE NO. C07-04413 PJH**

1    6.    Many retailers also will see Kraft as an innovator because it is using plastic-container

2    technology previously offered only by P&G.  Marketing done by Kraft to promote the new container

3    will lead others to believe that Kraft has a more innovative product.  Just in the last few days, Kraft has

4    started advertising the plastic container on its website by saying that its "new Flavor-Lock lid seals in

5    your coffee at the peak of freshness, giving you more reasons to say 'good to the last drop.'"  *See*

6    http://www.kraftfoods.com/kf/FoodandFamily/productnew.

7    7.    If P&G loses its advantageous market position and its status among consumers as the

8    innovative leader in this field, it will lose much if not all of the influence and captaincy that it has

9    earned among retailers.  This will disadvantage P&G in the fight for shelf space, as well as its efforts

10    to persuade retailers to buy Folgers products rather than Maxwell House.  P&G will have to spend

11    substantial resources offering promotions to retailers and otherwise marketing its products to slow

12    down the pace at which it will lose market share to Kraft.

13    8.    Another impact from Kraft's sales of coffee in its "Flavor-Lock" plastic containers in

14    competition with P&G's AromaSeal coffee will be to erode the retail price of P&G's coffee.  Before

15    P&G introduced its innovative technology, Folgers' retail price strategy was to achieve near average

16    retail-price parity versus Maxwell House.  After introducing AromaSeal in 2003, P&G found that

17    consumers, on average, were willing to pay about 25 to 40 cents more for Folgers than for the

18    equivalent size Maxwell House 39 ounce container.  While P&G never changed its list cost as a direct

19    result of our technology, we were able to significantly reduce the amount of funds used to encourage

20    retailers to support our brand in the market.  This enabled us in part to recoup the substantial capital

21    investment and risk that were involved in developing a new technology and then switching our entire

22    product line to that new technology.  Currently, the retail price of Kraft's Maxwell House coffee is the

23    same whether it is sold in metal cans or plastic containers.  Kraft's use of the plastic container

24    technology that P&G developed will make it difficult for P&G to sell its product at a price that is

25    required to recoup the substantial investment of time, money, and risk that P&G had to incur to create

26    and market this technology.

27

REY LLP    28    DECLARATION OF RUDY SCHMELLER IN        - 3 -
SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION
CASE NO. C07-04413 PJH

1       I declare under penalty of perjury under the laws of the United States of America that the

2  foregoing is true and correct.

3  Executed this _13_ day of September, 2007, at _Cincinnati, OH_

4

5

6

7

8                                                  Rudy Schmeller

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  **DECLARATION OF RUDY SCHMELLER IN**      - 4 -
    **SUPPORT OF MOTION FOR A PRELIMINARY**
    **INJUNCTION**
    **CASE NO. C07-04413 PJH**

REY LLP