1  William C. Rooklidge (SBN 134483)
   Ben M. Davidson (SBN 181464)
2  Gregory S. Cordrey (SBN 190144)
   Jesse D. Mulholland (SBN 222393)
3  HOWREY LLP
   2020 Main Street
4  Irvine, California 92614
   949-721-6900
5  949-721-6910
   E-mail: rooklidgew@howrey.com
6  E-mail: davidsonb@howrey.com
   E-mail: cordreyg@howrey.com
7  E-mail: mulhollandj@howrey.com

8  Mark D. Wegener (*pro hac vice* application pending)
   HOWREY LLP
9  1299 Pennsylvania Ave, NW
   Washington, DC 20004
10 Telephone: 202-783-0800
   Facsimile: 202-383-6610
11 E-mail: wegenerm@howrey.com

12 Attorneys for Plaintiff
   The Procter & Gamble Company
13

14                 UNITED STATES DISTRICT COURT

15                NORTHERN DISTRICT OF CALIFORNIA

16                     SAN FRANCISCO DIVISION

17

18 THE PROCTER & GAMBLE COMPANY,        )   Case No.: C07-04413 PJH
                                         )
19          Plaintiff,                   )
   v.                                    )   Honorable Phyllis J. Hamilton
20                                       )
   KRAFT FOODS GLOBAL, INC.,             )   DECLARATION OF DAVID A. DALTON
21                                       )   IN SUPPORT OF THE PROCTER &
            Defendant.                   )   GAMBLE COMPANY'S MOTION FOR A
22                                       )   PRELIMINARY INJUNCTION
                                         )
23                                       )   Date:  October 24, 2007
                                         )   Time:  9:00 a.m.
24                                       )   Court: Courtroom 3, 17th Floor
                                         )
25

26

27

28 Case No. C07-04413 PJH
   Decl. of David A. Dalton In Support of Mtn. For Prel.
   Injunction

DM_US:20673979_1

## DECLARATION OF DAVID A. DALTON

I David A. Dalton, hereby declare:

1. I have been an employee of The Procter and Gamble Company ("P&G") since June of 1992. Except as stated herein, the matters stated below are of my personal knowledge. If called as a witness, I could and would testify competently thereto.

2. My title at P&G is Principle Engineer. My responsibilities include structural and aesthetic package design and development.

3. In connection with my responsibilities at P&G, from about August 1999 until 2001 and then again for most of 2003 I was directly involved in the design and development of P&G's plastic container for holding roast, ground coffee. Although I was not directly working on the P&G plastic coffee container from sometime in 2001 until 2003, I continued to be indirectly involved with the design and development efforts.

4. I am a named inventor on P&G's patents U.S. Patent Nos. 7,169,418 and 7,169,419 related to a packaging system to provide fresh packed coffee.

5. As early as in 1997, P&G began looking at packaging forms as an alternative to the traditional metal can, including using plastic coffee containers. In 1999, a team of P&G engineers conducted consumer focus groups to identify features that consumers desired for their coffee containers. P&G found that consumers preferred several features that the conventional metal cans lacked, including easy-to-hold, easy-to-store, an easy-to-open (eliminate the need for a can opener), and keeps your coffee fresh long after opening the container. This led to features such as incorporating a handle into the container, sealing the container with a laminated foil, using certain plastic materials to keep the container lightweight and provide design flexibility to promote coffee freshness, and the development of a Tupperware-style lid.

6. Fresh ground, roast coffee gives off substantial amounts of oils and gases, including carbon dioxide gas. Although these oils and gases create a pleasant aroma, the emitted gases generate high pressures inside the containers.

Case No. C07-04413 PJH
Decl. of David A. Dalton In Support of Mtn. For Prel. Injunction

DM US:20673979 1

2

7. To deal with this problem, coffee manufacturers have historically tried to eliminate the emitted gases by storing the ground coffee in bins before packing it into containers. In addition, for decades, manufacturers packed coffee in vacuum-packed metal cans. Although these metal cans are sturdy and can withstand high pressures, they have a number of disadvantages, including that they tend to be heavy, difficult and unwieldy for consumers to use, cannot be easily opened without a tool (e.g., a can opener), cannot easily be molded into various shapes, and are subject to permanent deformation, or denting.

8. Designing an improved container required P&G's engineers to solve a number of technical problems. For example, while plastics offered a more lightweight way to store coffee, they also were not as strong as metal cans and the emitted gases could cause the plastic coffee containers to deform under pressure. Changes in altitude during shipping also can cause the plastic coffee containers to deform. This problem is illustrated in the picture below (container bottom and handles are deformed—pushed outward). Another problem was that plastic coffee containers are not inherently as strong as metal containers and must be designed to withstand the weight of the containers stacked above them (i.e., as in a pallet) during shipping. Yet another problem was that the high pressure caused by the emitted gases inside the container could unseal the flexible seal placed on the coffee container.

**Pressure Load Issues**




9. To solve the problems posed by the use of plastic containers, P&G's engineers utilized and developed a number of different technologies into an innovative new design:

- P&G engineers utilized a plastic container using a multi-layered plastic structure, coupled with structural design elements to: (1) provide an internal layer to absorb coffee odors and

Case No. C07-04413 PJH
Decl. of David A. Dalton In Support of Mtn. For Prel. Injunction

DM_US:20673979_1

3

oils so that the container itself would give consumers a pleasant coffee aroma; (2) provide a middle, barrier layer to block outside gases (chiefly oxygen) from entering the container and making the coffee smell bad or becoming stale; and (3) to provide rigid support to the container.

- P&G engineers designed the container to have flexible regions called "regions of deflection." These regions of deflection control how the container deforms in response to internal or external pressures to help prevent it from becoming dented or otherwise distorted.

- P&G's engineers built a ridge on top of the container at its opening to attach an easy-to-peel flexible foil seal to keep the coffee fresh before it was sold.

- To prevent the emitted coffee gases from damaging the container, P&G's engineers placed a one-way valve on the seal to allow the emitted gases to escape without letting air back into the container.

- P&G engineers made the wide-mouth container easier to hold than traditional metal containers by forming a handle into the container.

- P&G also developed a flexible "overcap" on top of the container with an airtight seal reminiscent of Tupperware.

///

///

///

Case No. C07-04413 PJH
Decl. of David A. Dalton In Support of Mtn. For Prel.
Injunction

DM US:20673979 1

4

1  I declare under penalty of perjury under the laws of the United States of America that the foregoing is
2  true and correct.
3    Executed this 11th day of September, 2007, at Cincinnati, Ohio.

_____
David A. Dalton

Case No. C07-04413 PJH
Decl. of David A. Dalton In Support of Mtn. For Prel. Injunction

5

DM_US:20673979_1