# EXHIBIT 2

## To The Declaration of Claude M. Stern

quinn emanuel

The Procter and Gamble Company v. Kraft Foods Global, Inc.,
Case No. C-07-4413-PJH (N.D. Cal. 2007)

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Claude M. Stern (Bar No. 96737)
  claudestern@quinnemanuel.com
  Evette D. Pennypacker (Bar No. 203515)
  evettepennypacker@quinnemanuel.com
  Michael D. Powell (Bar No. 202850)
  mikepowell@quinnemanuel.com
  Randy Garteiser (Bar No. 231821)
  randygarteiser@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065-2139
Telephone:   (650) 801-5000
Facsimile:   (650) 801-5100

Attorneys for Kraft Foods Global, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>KRAFT FOODS GLOBAL, INC.,<br><br>Defendant. | CASE NO. C 07-04413 PJH<br><br>KRAFT FOODS GLOBAL, INC. FIRST SET OF REQUEST FOR ADMISSIONS TO PLAINTIFF |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Kraft Foods Global, Inc., by and through its undersigned attorneys, hereby requests that plaintiff Procter & Gamble Company in the above-captioned action respond to the following interrogatories within ten (10) days of service hereof.

**DEFINITIONS AND INSTRUCTIONS**

As used in this first set of requests for interrogatories, the following terms shall have the meanings indicated below:

1.    "Kraft" shall mean Kraft Foods Global, Inc., defendant in the above-captioned action.

2. "P&G," "PLAINTIFF," "YOU," or "YOUR" shall mean The Procter & Gamble Company, plaintiff in the above-captioned action and its subsidiaries, including Folgers Coffee Company, and their officers, directors, employees, agents, successors, assigns, attorneys or persons or entities acting for or on behalf of The Procter & Gamble Company or Folgers Coffee Company.

3. "DOCUMENT" has the same meaning as the term is defined in Fed. R. Civ. P. 34(a) and as the term "writing" is defined in Fed. R. Evid. 1001, and shall include within its meaning any and all papers, videotapes or video recordings, photographs, films, recordings, memoranda, books, records, accounts, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications of any nature, recordings of conversations either in writing or by means of any mechanical or electrical recording device, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs and any differing versions of the foregoing whether denominated formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including handwritten notations or other written or printed matter of any nature, from the original. The foregoing specifically includes information stored in any form, including electronic form, on a computer or in a computer database or otherwise, including electronic mail.

4. The terms "COMMUNICATION" or "COMMUNICATIONS" shall mean, without limitation, ANY transmission, conveyance or exchange of a word, statement, fact, thing, idea, DOCUMENT, instruction, information, demand or question by ANY medium, whether by written, oral or other means, including but not limited to electronic communications and electronic mail ("E-mail").

5. "PERSON" refers to ANY individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.

6. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each request all responses that might otherwise be construed to be outside the scope.

7. "Any" shall include "all" and "all" shall include "any."

8. "Including" shall mean including but not by way of limitation.

9. The use of any pronoun herein shall include the masculine, the feminine and the neuter.

10. The use of any singular construction shall include the plural, and the use of the plural shall include the singular.

11. The terms "REFLECT," "RELATE," "REFER," "REFLECTING," "RELATING," or "REFERRING" shall mean relating to referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

12. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

13. The "'418 patent" or "ASSERTED PATENT" shall mean U.S. Patent No. 7,169,418.

14. "ACCUSED PRODUCT" shall mean Kraft's thirty-nine ("39") ounce plastic coffee container as identified in P&G's complaint in paragraph 7.

**Instructions**

1. Each response must consist of an answer or an objection to the particular request for admission.

2. Each answer must consist of one of the following: an admission, a denial, or a statement detailing why the answering party is unable to admit or deny.

3. If any portion of a request for admission is true, the responding party must admit that portion.

4. A denial of any or all portion of a request for admission must be specific. A denial must fairly meet the substance of the requested admission.

5. These Requests for Admission seek responses as of the date of service hereof. However, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these Requests for Admission shall be deemed to be continuing so as to require further and supplemental response by P&G in the event P&G or any person acting on its behalf obtains or discovers additional information that may modify P&G's responses hereto, between the time of initial response and the time of hearing or trial as to the portion being denied.

6. Should you deem any information called for by any of the following Requests for Admission to be privileged and/or subject to the work product doctrine, specify the matter you claim to be privileged and/or subject to the work product doctrine and state all of the grounds and facts upon which a claim rests, and on which you will rely to assert such a claim in order to provide the factual basis to determine whether such information is, in fact, privileged and/or subject to the work product doctrine.

7. These Requests for Admission are submitted for the purpose of determining the issues in dispute and are not to be taken as waiving any object which may be made at trial to the introduction of evidence on subjects covered by these Requests for Admission or as an admission of the relevance or materiality at trial of any matters covered by these Requests for Admission.

**REQUEST FOR ADMISSIONS**

**REQUEST FOR ADMISSION NO. 1:**

Describe in detail the coffee "aroma value" tests YOU performed in connection with the conception, research, development, and reduction to practice of the purported inventions disclosed in ASSERTED PATENT, including the names of the persons that performed the testing, the number and names of the participants of the test, the names of people that did not pass the "scratch and sniff" prescreening test identified at col. 15:54-61 of the '418 patent, the date the test

4

was conducted, and the physical characteristics of the polyolefinic container tested and described in the '418 patent.

**REQUEST FOR ADMISSION NO. 2:**

Admit that as of the date of YOUR response to this request P&G has not reported to its shareholders or U.S. Securities And Exchange Commission a loss of more than $250 million in revenue due to sales of the ACCUSED PRODUCT.

**REQUEST FOR ADMISSION NO. 3:**

Admit that as of the date of YOUR response to this request P&G has not reported to its shareholders or U.S. Securities And Exchange Commission a of loss of more than $250 million in profits due to sales of the ACCUSED PRODUCT.

**REQUEST FOR ADMISSION NO. 4:**

Admit that as of the date of YOUR response to this request P&G has not reported to its shareholders or U.S. Securities And Exchange Commission a loss of more than $250 million in revenue due to sales of the ACCUSED PRODUCT.

**REQUEST FOR ADMISSION NO. 5:**

Admit that as of the date of YOUR response to this request P&G has not reported to its shareholders or U.S. Securities And Exchange Commission a loss of more than $250 million in revenue due to sales of the ACCUSED PRODUCT.

**REQUEST FOR ADMISSION NO. 6:**

Admit that as of the date of YOUR response to this request P&G has not reported to its shareholders or U.S. Securities And Exchange Commission a loss of more than $250 million in goodwill due to sales of the ACCUSED PRODUCT.

**REQUEST FOR ADMISSION NO. 7:**

Admit that as of the date of YOUR response to this request P&G has not reported to its shareholders or U.S. Securities And Exchange Commission a loss of more than $250 million in tarnished reputation due to sales of the ACCUSED PRODUCT.

**REQUEST FOR ADMISSION NO. 8:**

Admit that as of the date of YOUR response to this request P&G will not report by April 30, 2008 to its shareholders or U.S. Securities And Exchange Commission a loss of more than $250 million in revenue due to sales of the ACCUSED PRODUCT.

**REQUEST FOR ADMISSION NO. 9:**

Admit that as of the date of YOUR response to this request P&G will not report by April 30, 2008 to its shareholders or U.S. Securities And Exchange Commission a of loss of more than $250 million in profits due to sales of the ACCUSED PRODUCT.

**REQUEST FOR ADMISSION NO. 10:**

Admit that as of the date of YOUR response to this request P&G will not report by April 30, 2008 to its shareholders or U.S. Securities And Exchange Commission a loss of more than $250 million in revenue due to sales of the ACCUSED PRODUCT.

**REQUEST FOR ADMISSION NO. 11:**

Admit that as of the date of YOUR response to this request P&G will not report by April 30, 2008 to its shareholders or U.S. Securities And Exchange Commission a loss of more than $250 million in revenue due to sales of the ACCUSED PRODUCT.

**REQUEST FOR ADMISSION NO. 12:**

Admit that as of the date of YOUR response to this request P&G will not report by April 30, 2008 to its shareholders or U.S. Securities And Exchange Commission a loss of more than $250 million in goodwill due to sales of the ACCUSED PRODUCT.

///

///

**REQUEST FOR ADMISSION NO. 13:**

Admit that as of the date of YOUR response to this request P&G will not report by April 30, 2008 to its shareholders or U.S. Securities And Exchange Commission a loss of more than $250 million in tarnished reputation due to sales of the ACCUSED PRODUCT.

DATED: September ___, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By_____
Claude M. Stern
Evette D. Pennypacker
Michael D. Powell
Randy Garteiser
Attorneys for Kraft Foods Global, Inc.