QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Claude M. Stern (Bar No. 96737)
    claudestern@quinnemanuel.com
  Evette D. Pennypacker (Bar No. 203515)
    evettepennypacker@quinnemanuel.com
  Mike D. Powell (Bar No. 202850)
    mikepowell@quinnemanuel.com

555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

Attorneys for Defendant
KRAFT FOODS GLOBAL, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY, a Delaware corporation,<br><br>                Plaintiff,<br><br>    vs.<br><br>KRAFT FOODS GLOBAL, INC, a Delaware Corporation,<br><br>                Defendant. | CASE NO. C 07-4413 PJH<br><br>**NOTICE OF MOTION AND MOTION FOR STAY, OR, IN THE ALTERNATIVE MOTION TO EXPEDITE DISCOVERY AND TO CONTINUE PRELIMINARY INJUNCTION MOTION HEARING DATE**<br><br>Date:  September 26, 2007<br>Time:  9:00 a.m.<br>Place:  Courtroom 3, 17th Floor |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 26 and Civil Local Rules 6-1, 6-3, and 7-10, and 65-1 on Wednesday, September 26, 2007 at 9:00 a.m. in the U.S. District Court for the Northern District of California, located at 450 Golden Gate Avenue, Courtroom 3, 17th Floor, San Francisco, California 94102, Defendant Kraft Foods Global, Inc. ("Kraft"), will move this Court for an order to stay the present litigation pending the outcome of a currently pending *inter partes* reexamination proceeding involving the patent at issue in this lawsuit or, in the alternative, to continue the hearing date on the Procter & Gamble Company's

1

1  ("P&G") motion for preliminary injunction by 7 weeks to allow Kraft sufficient time to take

2  limited expedited discovery.

3        In this lawsuit, P&G claims that Kraft infringes U.S. Patent Number 7,169,418, entitled

4  "Packaging System to Provide Fresh Packed Coffee." That same patent is currently the subject of

5  an *inter partes* reexamination proceeding before the Patent and Trademark Office. It is proper for

6  this Court to stay the present litigation pending the outcome of the *inter partes* reexamination

7  proceeding that involves the very same patent asserted against Kraft in this case. Among other

8  things, the *inter partes* reexamination may dispose of all or some of the asserted claims and

9  otherwise narrow the issues the Court must determine. A stay of this litigation pending resolution

10 of the *inter partes* reexamination will therefore conserve judicial resources, avoid potentially

11 conflicting decisions, and otherwise promote the efficient resolution of the parties' dispute.

12        If the Court declines to stay these proceedings pending the outcome of the reexamination,

13 Kraft requests, in the alternative, that the Court issue an order continuing the hearing on P&G's

14 motion for preliminary injunction by 7 weeks to December 19, 2007 in order to allow Kraft to take

15 limited expedited discovery concerning the issues raised, and evidence presented, by P&G's

16 motion. Such a continuance and limited discovery are appropriately allowed in this case, where

17 Kraft faces the possibility of taking its 39 ounce Maxwell House brand coffee off the market — an

18 approximately $250 million loss to Kraft (without even considering lost customers or other

19 collateral effects of removing its product from the market) — in the event its use of the plastic

20 container is enjoined.

21        This motion for a stay of this lawsuit, or, in the alternative to continue the hearing date on

22 P&G's motion for preliminary injunction, is supported by the accompanying Memorandum of

23 Points and Authorities, the Complaint filed in this action, and the Declaration of Claude M. Stern,

24 and accompanying exhibits, each filed contemporaneously with this motion.

25 DATED:  September ___, 2007          QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
26

27

                                        By_____
28

NOTICE OF MOTION AND MOTION TO STAY OR FOR EXPEDITED DISCOVERY AND TO CONTINUE
HEARING DATE
Case No. C 07-4413 PJH

*quinn emanuel*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

quinn emanuel

—————————————————————
Claude M. Stern
Attorneys for Defendant Kraft Foods Global, Inc.

NOTICE OF MOTION AND MOTION TO STAY OR FOR EXPEDITED DISCOVERY AND TO CONTINUE
HEARING DATE
Case No. C 07-4413 PJH

# TABLE OF CONTENTS

**Page**

PRELIMINARY AND FACTUAL STATEMENT ............................................................... 1

I.  A STAY SHOULD BE GRANTED ................................................................................. 2

    A.  This Court Has Discretion to Grant Kraft's Motion to Stay .................................... 2

    B.  A Stay of All Proceedings Is Warranted in this Case ............................................. 4

        1.  A Stay Will Likely Render the Case Moot or Simplify the Issues ................ 4

        2.  No Discovery Has Been Served, and No Trial Date Has Been Set ................ 6

        3.  A Stay Would Not Prejudice Procter & Gamble ......................................... 7

II. IF THIS COURT DECLINES TO GRANT A STAY, THIS COURT SHOULD
    GRANT KRAFT'S ALTERNATIVE REQUEST TO TAKE EXPEDITED
    DISCOVERY AND CONTINUE THE HEARING DATE ON P&G'S
    PRELIMINARY INJUNCTION MOTION ...................................................................... 10

CONCLUSION ...................................................................................................................... 14

quinn emanuel

NOTICE OF MOTION AND MOTION TO STAY OR FOR EXPEDITED DISCOVERY AND TO CONTINUE
HEARING DATE
Case No. C 07-4413 PJH

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

## **Cases**

4

5    *ASCII Corp. v. STD Entm't USA, Inc.,*
     844 F. Supp. 1378 (N.D. Cal. 1994).................................................................. 1, 2, 3

6    *Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
     239 F.3d 1343 (Fed. Cir. 2001)............................................................................. 2

7

8    *American Life Ins. Co. v. Stewart,*
     300 U.S. 203 (1937) ............................................................................................. 2

9    *Brown v. Shimano American Corp., No. CIV 88-6565 WJR,*
     1991 WL. 133586 (C.D. Cal. 1991)...................................................................... 3

10

11   *Commodity Futures Trading Com'n v. International Financial Services,*
     2002 WL. 1801723 (S.D.N.Y. 2002) .................................................................... 4

12   *Ethicon, Inc. v. Quigg,*
     849 F.2d 1422 (Fed. Cir. 1998)............................................................................. 2

13

14   *FTC v. 1268957 Ontario, Inc.,*
     2001 WL. 34135319 (N.D.Ga. 2001).................................................................... 5

15   *Gould v. Control Laser Corp.,*
     705 F.2d 1340 (Fed. Cir. 1983).......................................................................... 2, 3

16

17   *Grayling Indus., Inc. v. GPAC, Inc.,*
     1991 WL. 236196 (N.D. Ga. March 25, 1991) ..................................................... 3

18   *Guthy-Renker,*
     48 U.S.P.Q. 2d at 1061 ......................................................................................... 1

19

20   *Intel Corp. v. ULSI System Technology,*
     995 F.2d 1566 (Fed. Cir. 1993)............................................................................. 1

21   *KLA-Tencor Corp. v. Nanometrics, Inc.,*
     No. C-05-03116 .................................................................................................... 2

22

23   *KSR v. Teleflex,*
     127 S. Ct. 1727 (April 30, 2007)..................................................................... 1, 2, 4

24   *Medichem, S.A. v. Rolabo, S.L.,*
     353 F.3d 928 (Fed.Cir. 2003)................................................................................ 3

25

26   *Middleton, Inc., v. Minn. Mining and Manufacture Co.,*
     No. 4:03-cv-40493 (S.D. IOWA Aug. 24, 2004).................................................. 4

27   *Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.,*
     No. C-06-2252....................................................................................................... 3

28

-ii-

*quinn emanuel*

*Pass & Seymour, Inc. v. Hubbell Inc.*,
   2007 WL. 2172648 (N.D.N.Y. 2007)............................................................3, 4

*Patlex Corp. v. Mossinghoff*,
   758 F.2d 594 (Fed.Cir. 1985).........................................................................3

*Perricone v. Unimed Nutritional Services, Inc.*,
   2002 WL. 31075868 (D. Conn. 2002)......................................................2, 3, 4

*Phillips v. AWH*,
   415 F.3d 1303 (Fed. Cir 2005).........................................................................1

*RDS Group Ltd. v. Davison*,
   No. 02-8168, 2003 LEXIS 1337 (E.D.Pa. Jan. 17, 2003) .................................4

*Reebok International, Ltd. v. J. Baker, Inc.*,
   32 F.3d 1552 (Fed. Cir. 1994).........................................................................1

*Ricoh Co., Ltd. v. Aeroflex Inc.*,
   2006 WL. 3708069 (N.D. Cal. 2006)................................................................1

*Semitool, Inc. v. Tokyo Electron America, Inc.*,
   208 F.R.D. 273 (N.D. Cal. 2002)......................................................................4

*TKR Cable Co. v. Cable City Corp.*,
   1996 U.S. Dist. LEXIS 11941 (D.N.J. 1996) ...................................................4

*Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*,
   33 U.S.P.Q. 2d 2022 (N.D. Cal. 1995).............................................................2

*Visto Corp. v. Sproqit Technologies, Inc.*,
   413 F. Supp. 2d 1073 (N.D.Cal. 2006)..............................................................1

**Statutes**

35 U.S.C. §§ 134, 315 ......................................................................................4

35 U.S.C. 315(c) ..............................................................................................1

35 U.S.C. §318 (West 2007)..............................................................................4

Federal Rule of Civil Procedure 26............................................................1, 4, 6

Fed. R. Civ. Proc. 26(f) .....................................................................................4

Rule 30(a)     ....................................................................................................4

Rules 6-1, 6-3 ...................................................................................................1

Rules 33 ...........................................................................................................4

**Miscellaneous**

NOTICE OF MOTION AND MOTION TO STAY OR FOR EXPEDITED DISCOVERY AND TO CONTINUE
HEARING DATE
Case No. C 07-4413 PJH

1  8 Wright & Miller, *Federal Practice and Procedure* § 2104.........................................................4

2  *Moore's Federal Practice 3d* § 26.121.........................................................................................4

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

quinn emanuel

NOTICE OF MOTION AND MOTION TO STAY OR FOR EXPEDITED DISCOVERY AND TO CONTINUE
HEARING DATE
Case No. C 07-4413 PJH

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary and Factual Statement

Defendant Kraft Food Global, Inc., ("Kraft") respectfully requests that the Court issue and order staying all proceedings in this case (including the Procter & Gamble Company's ("P&G") motion for preliminary injunction) pending resolution of the *inter partes* reexamination of the only asserted patent in this case, U.S. Patent No. 7,169,418 ("'418 patent"). This is precisely the type of case where a stay is appropriate, since no discovery has been conducted, the only patent in suit is currently in reexamination proceedings before the United States Patent and Trademark Office ("PTO"), and P&G will not be able to demonstrate undue prejudice pending a stay.

Alternatively, if no stay is put into place, Kraft requests that the Court continue the hearing on P&G's motion for preliminary injunction by 60 days to allow Kraft to conduct expedited discovery concerning issues raised by P&G's preliminary injunction motion.

Stated simply, this lawsuit involves P&G's claim that Kraft's plastic packaging for its Maxwell House® brand coffee infringes the '418 patent. P&G filed this suit about 3 weeks ago, on or about August 27, 2007. P&G filed a motion for preliminary injunction last week on September 14, 2007. In its preliminary injunction motion, P&G seeks to enjoin Kraft from, among other things, selling coffee in plastic containers. P&G's preliminary injunction motion, and its initiation of this lawsuit, are premature, since Kraft filed with the PTO a petition for *inter partes* reexamination of all 55 claims of the '418 patent on March 8, 2007. In the petition, Kraft asserted that all claims of the '418 patent are invalid as being either anticipated or obvious in light of the prior art. Kraft's reexamination petition was filed before the United States Supreme Court issued its landmark decision in *KSR v. Teleflex*, 127 S.Ct. 1727 (April 30, 2007), which substantially broadened the basis for invalidating patent claims under Section 103 of the Patent Act.

The PTO issued an Action Closing Prosecution ("ACP") on June 7, 2007, which confirmed the 55 reexamined claims. The ACP did not even mention, much less reflect an analysis of the '418 patent, under the new obviousness standards of *KSR v. Teleflex*. Indeed, according to all

-1-

1    public information, as of June 7, 2007, the PTO had not yet determined whether or to what extent

2    the *KSR* decision would impact its pending *inter partes* or *ex parte* reexaminations.

3        Kraft has a right to appeal that confirmation to the Board of Patent Appeals and

4    Interference ("BPAI"), which right Kraft intends to exercise as soon as the statutory period allows

5    it to do so.  Thus, the reexamination of the '418 patent is not complete, P&G's initiation of this

6    lawsuit and motion for preliminary injunction are premature, and a stay of this litigation pending

7    the completion of the reexamination proceeding is warranted.

8        Allowing the BPAI to render its decision on the '418 reexamination will very likely

9    narrow the issues necessary for the parties to conduct discovery on and brief to this Court and may

10    even obviate the need for this litigation entirely.  Thus, a stay would conserve judicial resources,

11    avoid potentially conflicting decisions, and otherwise promote the efficient resolution of the

12    parties' dispute.  Moreover, P&G will not be harmed by entry of a stay.  No discovery has been

13    served or otherwise conducted, no claim construction has taken place, and substantial questions of

14    invalidity and non-infringement exist with respect to the '418 patent that would preclude entry of a

15    preliminary injunction.  In light of the facts here, a stay is warranted, and Kraft's motion should be

16    granted.

17    **I.**      **A STAY SHOULD BE GRANTED**

18        **A.**      **This Court Has Discretion to Grant Kraft's Motion to Stay**

19        The decision to stay ongoing litigation falls within the sound discretion of the District

20    Court, and this Court has authority to order a stay pending the outcome of the reexamination

21    proceedings.  *See American Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937); *Gould v. Control*

22    *Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-

23    27 (Fed. Cir. 1998); *KLA-Tencor Corp. v. Nanometrics, Inc.,* No. C-05-03116 JSW, 2006 WL

24    708661, at *2 (N.D. Cal. Mar. 16, 2006).  In fact, District Courts follow a "liberal policy in favor

25    of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissue

26    proceedings."  *ASCII Corp. v. STD Entm't USA, Inc.,* 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

27    This liberal policy follows from "[t]he legislative history surrounding the establishment of the

28

quinn emanuel

1    reexamination proceeding[,] [which] evinces congressional approval of district courts liberally

2    granting stays." *Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*, No. C-06-2252 SBA,

3    2007 WL 627920, at *1 (N.D. Cal. Feb. 26, 2007) (citation omitted); *see also ASCII*, 844 F. Supp.

4    at 1380 ("Congress enacted the [USPTO] reexamination procedure to provide an inexpensive,

5    expedient means of determining patent validity which, if available and practical, should be

6    deferred to by the courts."). For this reason, courts are generally inclined to stay litigation even

7    pending a decision by the PTO on whether to order reexamination on the patent-in-suit. *See e.g.,*

8    *Brown v. Shimano American Corp.*, No. CIV 88-6565 WJR, 1991 WL 133586, (C.D. Cal. 1991);

9    *Grayling Indus., Inc. v. GPAC, Inc.*, 1991 WL 236196 at *3 (N.D. Ga. March 25, 1991).

10        Although a court is not obligated to stay an infringement case based upon a parallel

11   reexamination, it may opt to do so in order to avoid inconsistent results, narrow the issues, obtain

12   guidance from the PTO, or simply to avoid the needless waste of judicial resources. *See Gould v.*

13   *Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed.Cir. 1983) ("One purpose of the reexamination

14   procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that

15   issue by providing the district court with the expert view of the USPTO (when a claim survives the

16   reexamination proceeding)."); *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed.Cir. 1985)

17   (explaining that PTO reexaminations can "settle validity disputes more quickly and less

18   expensively than the often protracted litigation involved in such cases," can aid the trial court in

19   making informed validity decisions, and will ultimately reinforce investor confidence in the patent

20   system by creating a broader opportunity for the PTO to review doubtful patents); *Medichem, S.A.*

21   *v. Rolabo, S.L.*, 353 F.3d 928, 936 (Fed.Cir. 2003) (recognizing the district court's power to stay

22   proceedings in a patent interference dispute pending the BPAI's ruling as doing so "may permit the

23   district court to avoid a needless duplication of efforts").

24        A stay is particularly compelling for cases in the initial stages of litigation or in which

25   there has been little discovery, which is precisely the case here. *See, e.g., KLA-Tencor*, 2006 WL

26   708661, at *2 (fact that "discovery ha[d] just begun" favored stay pending reexamination). Most

27   relevant here, Courts routinely grant stays pending reexamination of the patent in suit even where

28

quinn emanuel

1  the plaintiff's preliminary injunction motion is pending *See, e.g., Pass & Seymour, Inc. v. Hubbell*

2  *Inc.*, 2007 WL 2172648 (N.D.N.Y. 2007); *Perricone v. Unimed Nutritional Services, Inc.*, 2002

3  WL 31075868 (D. Conn. 2002).   Indeed, even where the plaintiff claims that the case can be

4  resolved on summary judgment, the Courts are inclined to grant a stay pending reexamination.

5  *See, e.g., Middleton, Inc., v. Minn. Mining and Manufacture Co.*, No. 4:03-cv-40493 (S.D. IOWA

6  Aug. 24, 2004).

7              **B.       A Stay of All Proceedings Is Warranted in this Case**

8              In determining whether to grant a stay pending reexamination courts consider: (1) whether

9  a stay will simplify the issues in question and trial of the case; (2) whether discovery is complete

10  and whether a trial date has been set; and (3) whether a stay would unduly prejudice or present a

11  clear tactical disadvantage to the non-moving party.  *See Nanometrics*, 2007 WL 627920, at *2.

12  For *inter partes* reexaminations, the Patent Act *presumes* that the court case should be stayed,

13  unless "the court...determines that a stay would not serve the interests of justice.  35 U.S.C. §318

14  (West 2007).   Here, each of the factors is met, and the interests of justice would plainly be served

15  by granting a stay.

16              **1.       A Stay Will Likely Render the Case Moot or Simplify the Issues.**

17              Kraft's request for reexamination was granted by the PTO and remains pending before that

18  government agency.  Declaration of Claude M. Stern ("Stern Decl."), ¶6.  While the PTO issued

19  an "Action Closing Prosecution" on June 7, 2007, Kraft will file an appeal, pursuant to 35 U.S.C.

20  §§ 134, 315, once the PTO issues the Right to Appeal Notice.  *Id.*  Indeed, given the fact that the

21  PTO's decision seems to be devoid of any analysis under the new *KSR v .Teleflex* standard, Kraft

22  is confident that its appeal will successfully require the BPAI to view this case through the lens of

23  *KSR v. Teleflex*.  Allowing the reexamination proceeding to run its course before moving forward

24  with the present litigation will simplify the issues for the Court to consider and may even render

25  the entire litigation moot.

26              Plainly, if Kraft is successful on its appeal of the PTO's decision confirming '418 patent

27  claims 1-55, the patent will be rendered invalid as obvious in light of the prior art, and this case

28

quinn emanuel

-4-
NOTICE OF MOTION AND MOTION TO STAY OR FOR EXPEDITED DISCOVERY AND TO CONTINUE
HEARING DATE
Case No. C 07-4413 PJH

1    will end, thereby preserving this Court's judicial resources.  However, even if Kraft is only

2    partially successful or unsuccessful on its appeal (of course, it does not believe it will be), it will

3    be more efficient for the Court and the parties to allow the reexamination to be completely

4    resolved before moving forward in the present litigation.  *Inter partes* reexaminations, like the one

5    Kraft filed with the PTO for the '418 patent here, have special rules that estop the petitioner from

6    arguing the grounds of the reexamination petition in the district court.  *See* 35 U.S.C. 315(c) ("A

7    third-party requester whose request for an *inter partes* reexamination...is estopped from asserting

8    at a later time, in any civil action...the invalidity of any claim *finally* determined to be valid and

9    patentable on any ground which the third-party requester raised or could have raised during the

10    *inter partes* reexamination proceedings.") (emphasis added).  In other words, if Kraft is not

11    successful on its reexamination, it will be precluded from citing as invalidating the very same

12    prior art it cited to the PTO again to this Court.  Thus, the issues for discovery, *Markman*, motion

13    practice and trial will all be narrowed by allowing the reexamination to completely resolve before

14    embarking on this litigation.[1]  *See Nanometrics*, 2007 WL 627920, at *3. ("Waiting for the

15    outcome of the re-examination could eliminate the need for trial if the claims are cancelled or, if

16    the claims survive, facilitate the trial by providing the Court with the opinion of the USPTO and

17    clarifying the scope of the claims."); *KLA-Tencor*, 2006 WL 708661, at *4 (granting stay because

18    it would "simplify the issues and streamline the trial, therefore reducing the burden on, and

19    preserving the resources of both the parties and the Court").

20         In addition, waiting for the reexamination to completely resolve will also avoid the

21    possibility of inconsistent decisions from the PTO and this Court.  *Ricoh Co., Ltd. v. Aeroflex Inc.*,

22    2006 WL 3708069, *5 (N.D. Cal. 2006) (granting stay in part because of the "possib[ility] that this

23    Court and the PTO could reach inconsistent conclusions regarding the same patent").

24

25

---

26    [1]  Staying the case at this early juncture also might encourage settlement of the case without
further Court intervention, as an appellate decision by the BPAI might facilitate further
27    negotiations among the parties.  *See ASCII*, 844 F. Supp. at 1380.

28

NOTICE OF MOTION AND MOTION TO STAY OR FOR EXPEDITED DISCOVERY AND TO CONTINUE
HEARING DATE
Case No. C 07-4413 PJH

quinn emanuel

**2.      No Discovery Has Been Served, and No Trial Date Has Been Set.**

The absence of any discovery in this case also favors a stay.  *See, e.g., Nanometrics*, 2007 WL 627920, at *2 (granting stay where "[d]iscovery ha[d] commenced, but it ha[d] not proceeded" significantly); *KLA-Tencor*, 2006 WL 708661, at *2 (granting stay where "discovery ha[d] just begun"); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 33 U.S.P.Q. 2d 2022, 2023 (N.D. Cal. 1995) (same); *ASCII*, 844 F. Supp. at 1381 (same).  Here, no written discovery has been served and no depositions have been noticed by either party.  Stern Decl. ¶4.  If the Court declines to grant Kraft's requested stay, Kraft has requested that the Court issue an order continuing the hearing date on P&G's preliminary injunction motion to allow Kraft sufficient time to take limited expedited discovery.  P&G has agreed to allow Kraft to take such limited, expedited discovery.  *Id.* at ¶9.  However, that agreement was reached today, and as of the filing of this motion, no discovery has yet been served on P&G.  Thus, as of the filing of the present motion, P&G has not commenced any discovery nor incurred any expenses therefrom.  Furthermore, the parties have not exchanged any proposed claim construction terms or supporting materials under the Patent Local Rules.  *Id.* at ¶4.  Finally, no *Markman* hearing date has been set, and no trial date has been set.  *Id.*  Accordingly, the second factor favors granting Kraft's request for a stay.

Moreover, granting a stay will allow the Court to defer the enormous energies it must expend in considering the pending motion for preliminary injunction.  P&G essentially seeks a shut-down order against Kraft's Maxwell House plastic packaging, a remedy for P&G that will cause Kraft massive irreparable injury.  But to even consider granting an injunction based on a claim of patent infringement, this Court must first engage in an appropriate claim construction analysis.  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).  Obviously, this Court could not make an interim decision about infringement unless and until it has engaged in this analysis.

Remarkably, here, P&G's preliminary injunction motion asks that this Court ignore this obligation, and instead move forward without any claim construction *at all*.  P&G asserts in a

-6-

NOTICE OF MOTION AND MOTION TO STAY OR FOR EXPEDITED DISCOVERY AND TO CONTINUE HEARING DATE
Case No. C 07-4413 PJH

1  footnote, in derogation of every principle of claim construction identified by the Federal Circuit in

2  *Phillips v. AWH*, 415 F.3d 1303, 1312-19 (Fed. Cir 2005), that this Court should consider granting

3  the requested injunction without going through a claim construction analysis. *See* Docket Item

4  No. 15, at 8 fn 6. (Indeed, P&G has not even attached the patent in suit's file history to its motion,

5  and has not offered a single declaration construing the terms of the patent.)

6      Granting the stay here would preserve this Court's and the parties' resources generally,

7  including those associated with a claim construction.

8              **3.    A Stay Would Not Prejudice Procter & Gamble.**

9      P&G also will not be harmed from a stay. *See Guthy-Renker*, 48 U.S.P.Q.2d at 1061.

10  Importantly, the fact that P&G has moved for a preliminary injunction does not negate the

11  propriety of a stay here. "The Federal Circuit has cautioned that 'a preliminary injunction is a

12  drastic and extraordinary remedy that is not to be routinely granted.'" *Visto Corp. v. Sproqit*

13  *Technologies, Inc.*, 413 F.Supp.2d 1073, 1077 (N.D.Cal. 2006), *quoting Intel Corp. v. ULSI*

14  *System Technology*, 995 F.2d 1566, 1568 (Fed. Cir. 1993). "The burden is always on the movant

15  to show entitlement to a preliminary injunction." *Visto*, 413 F.Supp.2d at 1077, *quoting Reebok*

16  *International, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1555 (Fed. Cir. 1994). If Kraft raises a

17  substantial question concerning either infringement or validity that P&G cannot prove lacks

18  substantial merit, a preliminary injunction should not issue. *Visto*, 413 F.Supp.2d at 1077.

19      Kraft believes it has compelling invalidity and non-infringement arguments that preclude

20  P&G from obtaining a preliminary injunction in this case. Kraft will present evidence that each

21  and every element of the asserted claims were present in the art before June 4, 2001 — not just in

22  the prior art patent and printed publication art before the PTO on reexamination, but also product

23  packaging art that has never been presented to (and is not properly considered in reexam by) the

24  PTO. Stern Decl. ¶5. Kraft also has substantial non-infringement arguments. *Id.*

25      Furthermore, P&G has not met and will not be able to meet its <u>*evidentiary*</u> burden to show

26  irreparable harm if an injunction does not issue. Having had months to prepare its suit and

27  preliminary injunction motion (and obtaining ten declarations in the process, 9 of which came

28
                                                    -7-

quinn emanuel

from P&G employees throughout the P&G organization), the Court must assume that P&G's preliminary injunction motion consist of the very best evidence that P&G can muster to show irreparable injury from Kraft's alleged infringement. But not a single one of P&G's supporting declarations points to any evidence -- no expert economist report, no detailed, quantitative economic or market analysis - - which even remotely suggests, much less proves, that Kraft's continued sale of its Maxwell House® brand coffee in plastic containers has caused, or is likely to actually cause, P&G any actual, material injury. To the contrary, when one views P&G's Huntington, Gemeiner, Roe and Bello declarations, one cannot find any actual proof of real or tangible injury to P&G. Instead, the most that P&G can do is cite to global market statistics and speculate that Kraft's sales of its coffee in plastic containers means that Kraft is "poised" to cause P&G injury. (See, e.g., Gemeiner Decl., at para. 13). P&G can only speculate about the "potential" for lost sales and market share due to Kraft's sales of coffee in its 39 ounce plastic Maxwell House containers. If P&G could prove any alleged financial or other injury, such losses are all compensable through money damages.

      And, the harm to Kraft in the event an injunction issues is much greater than the harm P&G alleges it will suffer in the event an injunction does not issue. In its moving papers, P&G argues that Kraft need only switch back to its tin cans if it is enjoined. P&G's argument ignores the enormous costs Kraft will incur if it is forced to make such a switch. Kraft estimates that it would take no less than 25 weeks — or half a year — to switch to a tin can package. Stern Decl. ¶5. This loss of time on the market will only strengthen P&G's already long-standing lead position in the market and inflict great and likely irreparable harm against Kraft. Indeed, Kraft stands to immediately lose at least $250 million if an injunction issues, and this figure fails to account for the loss of customers (even putting goodwill aside for the moment) Kraft will certainly suffer in the event it is forced to remove its 39 ounce Maxwell House coffee product from the market. *Id.* Kraft will suffer these consequences of an injunction even though the validity of the '418 patent still hangs in the balance before the PTO. In contrast, no where does P&G even remotely suggest that it has or will suffer damages approaching those that Kraft would incur from

NOTICE OF MOTION AND MOTION TO STAY OR FOR EXPEDITED DISCOVERY AND TO CONTINUE HEARING DATE
Case No. C 07-4413 PJH

quinn emanuel

1   issuance of the injunction.  P&G can recoup its alleged losses through a damages award after the

2   PTO completes its analysis of the '418 patent's validity and P&G proves its infringement case

3   against Kraft.  Indeed, nowhere in its moving papers does P&G allege that it will suffer the type of

4   damages Kraft will suffer if an injunction issues.  Rather, P&G's preliminary injunction motion

5   papers merely cite to the *possibility* that Kraft will take market share or erode P&G's price.

6          Other facts similarly support entering a stay in this case.  This is a case involving plastic

7   packaging for coffee.  The technology is neither new, nor short lived.  *See Perricone*, 2002 WL

8   31075868 (D.Conn. 2002).  P&G stands to lose little if a stay is granted in this case.  Other than

9   filing a complaint and a preliminary injunction motion, P&G has not spent any significant time or

10  resources on discovery, motion practice or other activities related to this lawsuit.  *See KLA-*

11  *Tencor*, 2006 WL 708661, at *3 ("Granting a stay does not cause the nonmoving party undue

12  prejudice when that party has not invested substantial expense and time in the litigation.");

13  *Nanometrics*, 2007 WL 627920, at *2 (noting that "the early stage of litigation weighs in favor of

14  a stay").

15         Courts have granted stays in the context of nearly identical facts.  In *Perricone*, 2002 WL

16  31075868, the court reasoned that the harm alleged by plaintiff, including loss of customers and

17  sales as well as erosion of market position, did not amount to undue prejudice.  The court further

18  explained:

19
20          However, in light of the plaintiff's motion for preliminary injunction, a stay
            may continue to deprive the plaintiff, during the pendency of the
            reexamination, of the right to exclude others from making, using, offering to
21          sell, or selling the patented invention. The Court finds, however, that the harm
            indicated by the plaintiff-the loss of customers and sales of the plaintiff's
22          product and the erosion of the plaintiff's position in the market-while serious,
            does not amount to undue prejudice. . .  Additionally, profits lost by the
23          plaintiff by the continued sales of the defendant's product can be compensated
            by damages. Finally, the patented invention at issue does not appear to be a
24          short-lived technology, such as electronics or software, such that a stay of this
            case will permit the defendant to infringe upon the patented invention for the
25          life of that invention.  *Id.*
26
27
28
                                                      -9-

quinn emanuel

The court in *Pass & Seymour,* 2007 WL 2172648 reached the same conclusion. Namely, that the expertise of the PTO, the early stage of the proceedings, and the ability for the plaintiff to seek recovery through money damages all evidenced the propriety of granting a stay, even though plaintiff moved for preliminary injunction.

Both *Perricone* and *Pass & Seymour* govern here. Kraft filed its petition for reexam directly after the '418 patent issued. Kraft intends to file its appeal as soon as the PTO issues the Notice of Right to Appeal. Kraft is interested in having these issues resolved as quickly as possible to remove the cloud of P&G's infringement allegations from over its head. However, a process to determine whether or not the '418 patent is even valid has already begun in earnest and is not yet complete. Allowing that process to completely resolve to conserve judicial resources, avoid inconsistent results and narrow the issues in the case makes sense — particularly when the only activity that has taken place thus far in the case is the filing of a complaint and a preliminary injunction motion, and all of the harm P&G alleges is compensable through money damages.

**II.  IF THIS COURT DECLINES TO GRANT A STAY, THIS COURT SHOULD GRANT KRAFT'S ALTERNATIVE REQUEST TO TAKE EXPEDITED DISCOVERY AND CONTINUE THE HEARING DATE ON P&G'S PRELIMINARY INJUNCTION MOTION**

The Federal Rules generally provide that a party may not initiate discovery before the parties have met and conferred pursuant to Rule 26(f). *See* Fed. R. Civ. Proc. 26(f). However, Federal Rule of Civil Procedure 26(d) provides that the Court may authorize earlier discovery "for the convenience of parties and witnesses and in the interests of justice." Further, under Rule 30(a) the Court can grant plaintiff leave to take a deposition prior to the Rule 26(f) meeting of the parties, and Rules 33 and 34(b) expressly provide that a Court may allow a shorter time than normal for answering interrogatories and producing documents.

A court may grant requests to take discovery prior to the parties' meeting under Rule 26(f) where the requesting party demonstrates good cause. *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* "It should be noted that courts have recognized that good cause is

-10-

NOTICE OF MOTION AND MOTION TO STAY OR FOR EXPEDITED DISCOVERY AND TO CONTINUE HEARING DATE
Case No. C 07-4413 PJH

1    frequently found in cases involving claims of infringement and unfair competition." *Id.* And,

2    expedited discovery will be granted more generally where, as here, the plaintiff seeks injunctive

3    relief. *See, e.g., RDS Group Ltd. v. Davison,* No. 02-8168, 2003 LEXIS 1337 (E.D.Pa. Jan. 17,

4    2003) (granting expedited discovery for pending preliminary injunction hearing); *TKR Cable Co.*

5    *v. Cable City Corp.*, 1996 U.S. Dist. LEXIS 11941, at *27-34 (D.N.J. 1996) (confirming

6    previously ordered expedited discovery in conjunction with preliminary injunctive relief); 6

7    *Moore's Federal Practice 3d* § 26.121, at pp. 26-296 to 26-298 ("expedited discovery is

8    particularly appropriate when a plaintiff seeks injunctive relief"); 8 Wright & Miller, *Federal*

9    *Practice and Procedure* § 2104, at p. 51 (1999) (expedited discovery should be granted when

10   circumstances exist "that would be likely to prejudice the party if he were compelled to wait the

11   required time"); *see also Commodity Futures Trading Com'n v. International Financial Services*,

12   2002 WL 1801723 (S.D.N.Y. 2002); (ordering expedited depositions and document production

13   from third parties); *FTC v. 1268957 Ontario, Inc.*, 2001 WL 34135319 (N.D.Ga. 2001) (ordering

14   expedited depositions of third parties on 24 hours notice).

15         Absent a stay of the proceedings pending reexamination, there is good cause to issue an

16   order allowing Kraft to take expedited discovery and continuing the hearing on P&G's motion for

17   preliminary injunction.  Kraft estimates at this time that it stands to immediately lose at least $250

18   million if P&G's preliminary injunction motion is successful and Kraft is enjoined from selling its

19   Maxwell House® brand coffee in its plastic containers.  Stern Decl. ¶5.  This figure does not

20   account for customers Kraft will likely permanently lose as a result of keeping its product off the

21   shelves, the harm such an injunction would impose upon Kraft's relationships with distributors

22   and retailers and other business partners, or other collateral damages resulting from the injunction

23   P&G seeks.  *Id.*  Although Kraft strongly believes that there are substantial questions as to both

24   the validity of the '418 patent and Kraft's lack of infringement thereof, Kraft should be given

25   sufficient opportunity to take discovery on issues of invalidity, unenforceability, non-

26   infringement, and the irreparable harm P&G alleges it will suffer if an injunction does not issue

27   given the sweeping relief P&G seeks.

28

NOTICE OF MOTION AND MOTION TO STAY OR FOR EXPEDITED DISCOVERY AND TO CONTINUE
HEARING DATE
Case No. C 07-4413 PJH

quinn emanuel

1    Under the current schedule, Kraft's opposition to P&G's preliminary injunction motion is

2  due on October 3, 2007 and the hearing on P&G's motion for preliminary injunction is scheduled

3  for October 24, 2007.  Stern Decl. ¶4.  Earlier today, Kraft's counsel contacted P&G to see

4  whether P&G would agree to stay this proceeding or allow a motion to stay to be heard on

5  shortened time, continue the hearing date on P&G's motion for preliminary injunction by about 7

6  weeks, and allow Kraft to take limited expedited discovery in connection with preparing its

7  opposition to P&G's preliminary injunction motion.  Stern Decl. ¶9.  P&G objected to staying this

8  proceeding, objected to having Kraft's Motion to Stay being heard on shortened time, and refused

9  to continue the hearing date on P&G's preliminary injunction motion (and associated briefing

10  schedule).  *Id.*  P&G did agree in principle to allow Kraft to take discovery from P&G, but insisted

11  that Kraft must complete such discovery by the current deadline for Kraft's opposition to P&G's

12  motion for preliminary injunction, which, again, is October 3, 2007.  *Id.*  Under the current

13  schedule, and as a practical matter, P&G is not in a position to give to Kraft all the discovery that

14  Kraft will be seeking, and Kraft is not in a position to complete such discovery (including taking

15  all necessary depositions), while at the same time collecting information and analyzing and

16  otherwise responding to P&G's preliminary injunction motion all in a period of just over 2 weeks.

17  *Id.*

18    The expedited discovery Kraft seeks is limited and specifically tailored to the materials

19  P&G submitted with its preliminary injunction motion.  As an example only, P&G grounds its

20  claims of infringement on certain "tests" it conducted on Kraft's packaging.  Stern Decl. ¶8.

21  Remarkably, although P&G boldly posits the results of these test, it has not included with its

22  motion the tests' documentation or materials.   By the same token, although P&G claims

23  conclusorily that it has information that Kraft's packaging "is poised" to cause injury to P&G, it

24  has provided no documentation or economic analyses supporting this conclusion.  Given what is at

25  stake in this motion, Kraft is entitled to obtain the foundation of this speculative testimony (if any)

26  and to test its credibility and veracity.

27

28

NOTICE OF MOTION AND MOTION TO STAY OR FOR EXPEDITED DISCOVERY AND TO CONTINUE
HEARING DATE
Case No. C 07-4413 PJH

1    The specific discovery sought is attached as Exhibits 1 through 5 to the Declaration of

2  Claude M. Stern, accompanying the present motion, and includes:

3         •    Approximately 33 document requests to P&G concerning the issues raised

4              in the P&G preliminary injunction motion, returnable ten days from the date

5              of service;

6         •    Approximately 12 Requests for Admission to P&G concerning the issues

7              raised in the P&G preliminary injunction motion, returnable ten days from

8              the date of service;

9         •    Deposition of P&G pursuant to Federal Rule of Civil Procedure 30(b)(6);

10        •    Depositions of witnesses who submitted declarations in support of P&G's

11             preliminary injunction motion;

12        •    Half day depositions of the named '418 patent inventors;

13        •    Depositions of the attorneys who prosecuted the application that matured

14             into the '418 patent; and

15        •    Discovery from certain third parties who have evidence relevant to Kraft's

16             invalidity defense.

17    Kraft seeks the above-described discovery specifically to respond to P&G's preliminary

18  injunction motion.  Although Kraft intends to limit its discovery solely to the issues raised in the

19  papers submitted by P&G, in doing so, Kraft in no way waives its ability to take more fulsome

20  discovery of P&G and/or the above-identified witnesses and third parties at a later time in the

21  litigation.  Kraft's goal in seeking discovery at this stage of the litigation is merely to test and

22  gather information regarding P&G's claims of irreparable harm and infringement allegations and

23  to more fully develop its invalidity arguments.

24    P&G agrees that Kraft can take this discovery, however, P&G will not continue the

25  hearing date on its preliminary injunction motion to allow Kraft to do so.  In other words, P&G

26  expects Kraft to take discovery, collect evidence, prepare witness statements, and draft its

27  opposition memorandum to respond to P&G's preliminary injunction motion all in just over 2

28

-13-

1  weeks.  Stern Decl. ¶8.  This amount of time is insufficient to allow Kraft to properly take

2  discovery and prepare its case -- particularly given what is at stake for Kraft's business if it does

3  not successfully oppose P&G's motion.  *Id.*

4       Kraft estimates that it will take approximately 7 weeks to complete the discovery it seeks.

5  Thus, Kraft requests that the Court reset the hearing date for the P&G's preliminary injunction

6  motion from October 24, 2007 to December 19, 2007.

7                                   <u>**Conclusion**</u>

8       For all of the foregoing reasons, Kraft respectfully requests that its application for an order

9  shortening time and motion for stay be granted.  Alternatively, if the Court declines to grant

10  Kraft's request for a stay, Kraft respectfully requests that the Court enter an order allowing it to

11  take limited expedited discovery in concerning matters raised by P&G's preliminary injunction

12  motion and continuing the hearing on P&G's motion for preliminary injunction to December 19,

13  2007.

14

15  DATED:  September  19, 2007            QUINN EMANUEL URQUHART OLIVER &
                                          HEDGES, LLP
16

17                                        By  /s/
18                                            Claude M. Stern
                                             Attorneys for Defendant Kraft Global Foods, Inc.
19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO STAY OR FOR EXPEDITED DISCOVERY AND TO CONTINUE
HEARING DATE
Case No. C 07-4413 PJH

quinn emanuel