# EXHIBIT "1"

Westlaw.

Practising Law Institute
Patents, Copyrights, Trademarks, and Literary Property Course Handbook Series
PLI Order No. 13599
August, 2007

Parallel Patent Litigation and Reexamination Proceedings 2007: Keeping Your Case on Track

*9 PATENT REEXAMINATION FUNDAMENTALS

Steven E. Lipman
Darby & Darby P.C.

Copyright (c) 2007 Practising Law Institute; Steven E. Lipman

### *11 BIOGRAPHICAL INFORMATION

Prior to entering private practice, **STEVEN E. LIPMAN**, who is a partner in the New York office of Darby & Darby, P.C., spent 11 years with the United States Patent and Trademark Office in various legal capacities in the Office of the Commissioner, the Office of the Assistant Commissioner for Patents, the Office of the Solicitor, and the Office of Legislation and International Affairs. His last position was as an *inter partes* and protest attorney with the Office of the Assistant Commissioner for Patents, dealing primarily with matters of inequitable and fraudulent conduct by patent applicants and their attorneys. During his tenure with the PTO, Mr. Lipman served also as a primary patent examiner in several mechanical and electrical engineering technologies.

Mr. Lipman has appeared before the Court of Appeals for the Federal Circuit; has served as counsel for the PTO in Federal District Court litigation, as well as for numerous private clients in patent, trademark, copyright, international trade, and other litigations before the United States Federal District Courts and the International Trade Commission (where he was involved in more than a dozen Section 337 investigations); and has acted as an expert trial witness on patent matters.

Mr. Lipman is involved in many civic and bar association activities. He is a Founding Member and former President of the International Trade Commission Trial Lawyers Association, and a former Chairman of the Patent Law Committee of the D.C. Bar Section on Patents, Trademarks and Copyrights. Mr. Lipman also has spoken and authored numerous articles on intellectual property and attorney conduct matters.

Through his speeches before such bar groups as the ABA, the AIPLA, and the ITCTLA, and his many articles on the subject, Mr. Lipman has attempted to pass on some of his practical knowledge to his fellow lawyers.

Mr. Lipman earned his J.D. in 1974 from The Catholic University of America, and his Engineering B.S. from Rutgers University. He is admitted to the bars of New York, Virginia, and the District of Columbia, and to various Federal and Appellate Courts--including the Federal Circuit.

### *13 Table of Contents

I. OVERVIEW OF REEXAMINATION
    A. Availability of Reexamination
    B. Request for Reexamination
    C. Substantive Basis for Reexamination
    D. The Request for Reexamination

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

    E. Scope of Reexamination
    F. General Reexamination Procedures
    G. *Ex Parte* Reexamination Procedure
    H. *Inter Partes* Reexamination Procedure
**II. CONCLUSION OF THE REEXAMINATION**
**III. APPEALS AND JUDICIAL REVIEW**
**IV. CONCURRENT PROCEEDINGS**
    A. Concurrent Reexaminations
    B. Concurrent Reexamination and Litigation
**V. ESTOPPEL EFFECTS OF *INTER PARTES* REEXAMINATION**
**VI. BENEFITS OF REEXAMINATION FOR THIRD PARTIES**
    A. Standard for Unpatentability and Claim Construction
    B. Prosecution History Estoppel
    C. Reduction of Infringement Damages
    D. Inequitable Conduct
    E. Restricted Procedure in *Inter Partes* Reexamination
**VII. BENEFITS OF REEXAMINATION FOR THIRD PARTIES**
    A. Opportunity to Amend Claims
    B. Presumption of Validity over Cited Art
    C. Estoppel in *inter partes* reexamination
    D. Lack of participation in *ex parte* reexamination
    E. Cost
**VIII. IS REEXAMINATION THE RIGHT CHOICE?**
**IX. CONCLUSION**

**\*15** Reexamination may be an attractive option for a party accused of infringement prior to litigation, particularly where the patent held by the accuser is susceptible to a strong prior art attack. Two forms of reexamination are available: *ex parte* reexamination and *inter partes* reexamination. This paper discusses some features of and issues associated with reexamination from the perspective of a third party challenger to a patent.

**I. OVERVIEW OF REEXAMINATION**

**A. Availability of Reexamination**

    *Ex parte* reexamination was introduced by Congress in 1980 [FN1] and is available for patents issued on or after July 1, 1981. An optional *inter partes* reexamination procedure was introduced in the American Inventors Protection Act of 1999 (AIPA). [FN2] *Inter partes* reexamination applies to a much smaller group of patents currently in force: any patent that issues from an original application (including a continuation) filed in the United States on or after November 29, 1999, the date of enactment of the AIPA.
    A reexamination can take place at any time during the period of enforceability of a patent, i.e., from issue through six years following expiration of the patent. [FN3] Once the patent has expired, however, it is no longer possible to narrow the scope of any claim being examined. [FN4]

**B. Request for Reexamination**

    To initiate a reexamination, a party files a written request for reexamination of one or more claims of an issued patent. A request for *ex parte* reexamination may be filed by "any person," including **\*16** the patent owner, as well as a third party. [FN5] If the requester is other than the patent owner, the requester must serve the attorney of record of the patent, if possible. [FN6] The requester in an *ex parte* reexamination can file

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

anonymously. [FN7] The fee for filing a request for *ex parte* reexamination is $2,520 in FY 2007; there is no discount for small entities. [FN8] A request for *inter partes* reexamination can be filed only by a third party. [FN9] The requester of an *inter partes* reexamination can not be anonymous; the request must include the identity of the real party in interest. [FN10] The fee for filing a request for *inter partes* reexamination is $8,800 in FY 2007; there is no discount for small entities. [FN11]

A request for *inter partes* reexamination must include a certification that the *inter partes* reexamination is not prohibited by the statutory estoppel provisions of 37 C.F.R. § 907, [FN12] discussed further below.

## C. Substantive Basis for Reexamination

A request for reexamination must include a statement pointing out a "substantial new question of patentability" arising from only particular categories of prior art--"patents or printed publications." [FN13] Other categories of prior art, such as prior on sale or public use activity, can not form the basis for the request and can not be considered during the reexamination. The new question of patentability may be based on 35 U.S.C. §§ 102(a), 102(b), 102(d), 102(e), or 102(g), and may arise under 35 U.S.C. § 103 based on those portions of § 102. [FN14] Arguments based on issues other than prior art, such as lack of an enabling disclosure or failure to disclose the best mode for practicing the invention under 35 U.S.C. § 112, can not be the basis for the new *17 question of patentability. [FN15] The prior art patent or publication can include material that was previously cited by or to the PTO or considered by the PTO. [FN16]

The precise meaning of a "substantial new question of patentability" is not identified in any statute or rule. The PTO has stated that a prior art patent or printed publication raises a substantial new question of patentability when there is a substantial likelihood that a reasonable examiner would consider the prior art document important in deciding whether or not the claim is patentable. [FN17] A finding of a *prima facie* case of unpatentability, however, is not required. [FN18] A question is not "new" if it has been decided by the PTO in a prior examination or pending reexamination of the patent or if the patent has been held invalid by a Federal Court in a final decision on the merits involving the question. [FN19]

## D. The Request for Reexamination

The request for reexamination must identify every claim for which reexamination is requested and provide a detailed explanation of the pertinency and manner of applying the cited prior art to every such claim. [FN20] A requester may also point out how the claims are distinguished over the prior art. [FN21] Affidavits or declarations explaining the contents of the cited prior art or the effective date of a reference may be submitted with the request. [FN22]

Within three months of the filing of a request for reexamination, the PTO determines whether a substantial new question of patentability exists. [FN23] If the PTO makes this determination in the positive, then the *18 PTO orders *ex parte* or *inter partes* reexamination of the patent, as requested. [FN24] A negative determination is final and non-appealable. [FN25] However, the requester can file a petition under 37 C.F.R. § 1.181 within one month of a negative determination requesting reconsideration. [FN26] If the petition decision is negative, a portion of the reexamination fee will be refunded to the requester (currently $1,690 for an *ex parte* reexamination and $7,970 for an *inter partes* reexamination). [FN27]

The PTO makes the determination of whether a substantial new question of patentability exists without input from the patent owner, unless the patent owner is also the party requesting *ex parte* reexamination. The PTO had proposed a new rule in April 2006 that would allow patent owners to respond to the third party request for reexamination in both *ex parte* and *inter partes* reexamination. The goal of this proposed rule was to reduce improper and / or unnecessary reexamination orders determining a substantial new question of patentability to exist. This rule was intended to achieve this goal by improving the evidence / information before the examiner

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and increasing the examiner's understanding of the issues prior to issuing an order determining there to be a substantial new question of patentability. [FN28] This proposed rule, however, was not adopted in the final rule. [FN29]

### E. Scope of Reexamination

Previously, all patent claims, even those claims not designated in the request for reexamination, were considered once a reexamination had been ordered by the PTO. Recently, the PTO announced it will no longer reexamine all claims as a matter of course. Instead, it will generally reexamine only those claims for which (a) the reexamination was requested, and (b) a substantial new question of patentability was raised. [FN30] Amendments in reexamination proceedings will not be *19 permitted to enlarge the scope of the claims of the patent. [FN31] Claims in reexamination proceedings are examined only on the basis of patents and printed publications. With respect to subject matter added or deleted in the reexamination proceeding, the examiner may apply the requirements of 35 U.S.C. § 112. [FN32] Any other issues will be noted by the examiner and the patent owner can consider the advisability of filing a reissue application to have such issues considered and resolved. [FN33]

### F. General Reexamination Procedures

Under current PTO procedures, the examiner assigned to the reexamination is different from the examiner who examined the original application. [FN34] Both forms of reexamination are conducted with "special dispatch." [FN35] A shortened statutory period of two months is ordinarily set for responses to reexamination Office Actions. [FN36] The patent owner can obtain extensions of time for responses only for "sufficient cause," and the request for extension must be filed on or before the date due. These requests are not automatically granted. [FN37] Extensions of time are not available, however, to the third party requester in an *inter partes* reexamination. [FN38]

The patent owner can not enlarge or broaden the scope of any claim of the patent during reexamination, but the patent owner can present narrower claims in view of any cited prior art. [FN39] A reexamination can not be abandoned or withdrawn by the requester or the patent owner. [FN40] In both *ex parte* and *inter partes* reexamination, the patent owner is subject to the continuing duty of disclosure of information material to patentability. [FN41] The requester in a reexamination is not subject to such a duty. No continuation or divisional applications, and no requests for continued examination (RCE) or continuing prosecution applications (CPA), can be filed based on the reexamined patent. [FN42] Accordingly, *20 once a final rejection is made, the patent owner must put the case in condition for allowance or appeal the final rejection.

### G. *Ex Parte* Reexamination Procedure

Following an order granting *ex parte* reexamination, the patent owner is given a period of not less than two months to file an optional statement concerning the identified new question(s) of patentability. [FN43] The statement may include proposed amendments or new claims. If the reexamination requester is not the patent owner, the statement must be served on the requester. The requester then has two months to file a reply to the patent owner's statement. [FN44] The reply is not limited in content to the issues raised in the patent owner's statement; it may, for example, include the citation of additional prior art. At that point, the third party's participation in the reexamination proceeding ends. [FN45] If the patent owner files no statement, the third party requester can not participate in the reexamination beyond filing the initial request. [FN46] A third party requester, however, must be provided with copies of Office Actions and responses by the patent owner. [FN47]

Interviews between the examiner and the patent owner are permitted in *ex parte* reexaminations. However,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

third party requesters are not permitted to participate in the interviews. [FN48] An ex parte reexamination typically concludes when the PTO issues a Notice of Intent to Issue *Ex Parte* R eexamination Certificate ("NIRC"), PTO Form PTOL 469. This Form indicates that prosecution is closed and that a reexamination certificate is going to issue. The NIRC identifies cancelled claims, confirms patentable claims, and incorporates new or amended claims. The patent owner must place the rejected claims in condition for allowance or appeal the rejection prior to issuance of the reexamination certificate. Until issuance of the reexamination certificate, the PTO has the discretion to reopen prosecution upon a showing of good cause. Once the reexamination certificate is issued, this particular reexamination proceeding is finished and no further action can be taken without instituting a new proceeding, such as another reexamination or a reissue.

## *21 H. *Inter Partes* Reexamination Procedure

The order for *inter partes* reexamination is usually accompanied by the First Office Action on the merits. [FN49] The patent owner is allowed to propose amendments to existing claims and to add new claims. [FN50] However, as its name implies, *inter partes* reexamination is a step closer to a true adversarial proceeding, providing the third party requester with opportunities to participate in the reexamination process beyond the initiation stage. Each time the patent owner files a response to an Action on the merits from the examiner, the third party requester has one opportunity to file written comments within 30 days of service of the response. [FN51] The patent owner is not permitted to file a patent owner's statement, as in *ex parte* reexaminations, and the third party is not permitted to reply to the reexamination order. The written comments are limited to addressing issues raised by the Office Action or the patent owner's response. For example, the third party can refute arguments made by the patent owner and support arguments made by the examiner. [FN52] The third party may cite additional prior art, but is limited to prior art that meets one of the following three criteria: (1) necessary to rebut a finding of fact by the examiner; (2) necessary to rebut an argument or response made by the patent owner; or (3) prior art that became known or available to the third party only after the filing of the *inter partes* reexamination request. [FN53] All communications between the parties to the *inter partes* reexamination and the PTO are required to be conducted in writing. Neither party is permitted to obtain an interview on the merits with the examiner. [FN54]

Previously, the patent owner was able to file an unlimited number of responses to an Office Action, thus delaying the reexamination proceeding because the third party requestor would then have 30 days to reply. [FN55] To remedy this potential problem, the PTO recently amended the rules to require a patent owner to show sufficient cause why entry of any supplemental responses to Office actions should be permitted. The showing of sufficient cause requires the patent owner to provide the following:

*22 (1) A detailed explanation of how the criteria of 37 C.F.R. § 1.111(a)(2)(i) is satisfied;

(2) an explanation of why the information in the supplemental response could not have been presented together in the original response to the Office action; and

(3) a compelling reason why the PTO should enter the supplemental response. [FN56] Hence, the new rule limits the patent owner's ability to drag out the *inter partes* reexamination proceeding and should help the goal of completing reexaminations with "special dispatch."

After the examiner has considered any comments filed in response to the Office Action closing prosecution in an *inter partes* reexamination, the examiner issues a Right of Appeal Notice. [FN57] The Right of Appeal Notice is a truly Final Office Action that sets forth each ground of rejection or final decision favoring patentability, and identifies the status of each claim. [FN58] Both parties then have a one month period for appealing the decision to the Board of Patent Appeals and Interferences.

## II. CONCLUSION OF THE REEXAMINATION

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

At the conclusion of a reexamination, the PTO issues a certificate setting forth the results of the reexamination proceeding. The certificate cancels any claim determined to be unpatentable, confirms any claim determined to be patentable, and incorporates in the patent any new claim or amended claim determined to be patentable. [FN59] If the reexamination terminates with all claims canceled, "no further Office proceedings will be conducted with regard to that patent or any reissue application, or reexamination requests relating thereto." [FN60]

## III. APPEALS AND JUDICIAL REVIEW

In an *ex parte* reexamination, the patent owner has the right to appeal from the final rejection of any claim to the Board of Patent Appeals and Interferences, [FN61] and may appeal a Board decision to the Federal Circuit. **\*23** A District Court civil action under 35 U.S.C. § 145 is not available. [FN62] Third parties can not appeal or seek judicial review of any determinations made in an *ex parte* reexamination. [FN63]

In an *inter partes* reexamination, both the third party and the patent owner have rights of appeal. After an examiner has issued a final decision in an *inter partes* reexamination, either the patent owner or the third party requester can appeal an adverse determination (including, in the third party's case, a final determination not to make a proposed rejection) to the Board. Cross appeals are permitted. [FN64] As a result of a 2002 amendment designed to make *inter partes* reexamination a more attractive alternative to litigation, a final decision in an appeal to the Board can be appealed by either party to the Federal Circuit, and the patent owner and the third party requester may each be a party to each other's Federal Circuit appeal. [FN65] (Previously, only the patent owner could appeal to the Federal Circuit, and the third party requester could not participate in these appeals). [FN66] A civil action under 35 U.S.C. § 145 is unavailable to either party. [FN67]

## IV. CONCURRENT PROCEEDINGS

### A. Concurrent Reexaminations

A second *ex parte* reexamination may be ordered prior to the termination of prosecution in a pending earlier-ordered *ex parte* examination of the same patent. The reexamination proceedings will generally be consolidated and result in the issuance of a single NIRC and a single reexamination certificate, [FN68] subject to certain exceptions discussed in MPEP § 2283. While a third party requester can not take part in the *ex parte* reexamination after the preliminary stage, the **\*24** requester can file one or more subsequent requests for reexamination that are, in effect, responsive to actions taken by the patent owner in the earlier reexamination. Each subsequent request requires a showing of an additional substantial new question of patentability which must be, as of May 2004, different from the substantial new question(s) raised in the pending reexamination proceeding. [FN69] Using this tactic, a third party requester can mitigate the *ex parte* nature of the proceedings. [FN70]

A similar approach is not possible in *inter partes* reexamination. If an *inter partes* reexamination requested by a third party is pending, that third party is prohibited from initiating a second *inter partes* reexamination. [FN71] A third party requester or the patent owner can file an *ex parte* reexamination while a prior *inter partes* reexamination is pending, and the PTO can decide to merge the two proceedings. Moreover, while a prior *ex parte* reexamination is pending, a third party can file a request for *inter partes* reexamination and the PTO can likewise order a merger. [FN72]

### B. Concurrent Reexamination and Litigation

In an *ex parte* reexamination, courts will typically consider stays of a litigation pending the outcome of the reexamination process. Factors considered by the court in determining whether to grant a stay usually include

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

whether (1) a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) a stay will simplify the issues in question and trial of the case; and (3) discovery is complete and a trial date is set. The earlier a request for a stay is made, the more likely it is to be granted. [FN73]

In an *inter partes* reexamination, the patent owner has a statutory right to obtain a stay of a pending litigation involving claims of the patent unless the court determines that a stay would not serve the interests of justice. [FN74] No such right is granted to the third party **25** requester. The PTO, on the other hand, is not authorized to stay an *ex parte* reexamination in light of concurrent litigation concerning the same patent because its statutory task is to proceed with reexamination using "special dispatch." [FN75] However, the PTO can "suspend" an *inter partes* reexamination "for good cause" pending the conclusion of litigation. [FN76] A final court holding of invalidity or unenforceability of patent claims, after all appeals, is controlling on the PTO and may lead to termination of a concurrent *inter partes* reexamination. [FN77]

## V. ESTOPPEL EFFECTS OF *INTER PARTES* REEXAMINATION

A third party requester whose request for an *inter partes* reexamination results in an order that reexamination is to proceed is thereafter statutorily estopped from asserting, in any civil action arising in whole or in part under the patent jurisdictional statute (28 U.S.C. § 1338), the invalidity of any claim finally determined to be valid and patentable on any ground which the requester "raised or could have raised" during the *inter partes* reexamination proceedings. [FN78] According to the PTO, "the estoppel provision is the most frequently identified inequity that deters third parties from filing requests for *inter partes* reexamination of patents." [FN79]

Note, however, that there is currently a proposed amendment to 35 U.S.C. § 315(c) that would strike the "could have raised" language from the statute to limit the estoppel effect to issues that were <u>actually</u> litigated during the *inter partes* reexamination proceeding. [FN80] The only exception to this estoppel is where the subsequent assertion of invalidity is based on newly-discovered prior art that was unavailable to the third party and the PTO at the time of the *inter partes* proceedings. [FN81] It is unclear how broadly "unavailable" should be construed (for example, whether it imposes an affirmative duty on a third party to investigate potential prior art). [FN82] This estoppel applies also to any entity in privity with the third party requester.

**26** Similarly, if a final decision has been entered against a third party in an action arising under 28 U.S.C. § 1338 to the effect that the party has not sustained its burden in proving invalidity of any patent claim in the litigation, or if a final decision in an *inter partes* reexamination instituted by the third party is favorable to the patentability of any claim, then neither the third party nor its privies may thereafter request an *inter partes* examination of any such patent claim on the basis of issues which the party or its privies raised or could have raised in the litigation, or in the prior *inter partes* reexamination. [FN83] A "newly-discovered prior art" exception is applicable to this form of preclusion as well.

A third party requester in an *ex parte* reexamination is not precluded from raising the same issues in subsequent litigation between it and the patent owner.

## VI. BENEFITS OF REEXAMINATION FOR THIRD PARTIES

### A. Standard for Unpatentability and Claim Construction

The statutory presumption of validity of patents in Federal Court infringement actions [FN84] is not applicable to reexamination proceedings. [FN85] A third party need not provide "clear and convincing" evidence of unpatentability. Instead, a patent prosecution standard applies: the examiner in a reexamination gives claims their broadest reasonable interpretation consistent with the specification. [FN86] Such a standard typically makes the claims more vulnerable to anticipation and obviousness rejections in reexamination than in litigation.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## B. Prosecution History Estoppel

A patent that survives a reexamination is unlikely to do so unscathed. Even in those cases in which the patent owner does not cancel or amend claims in view of the cited prior art, the patent owner may make representations that narrow the scope of the claims or distinguish the art from the claims. New arguments presented by the patent owner may give rise to new prosecution history estoppels. The patent owner may be forced to choose among claim construction options in ways that limit *27 the scope of the claims. [FN87] Moreover, amendments made to the claims may limit the applicability of the doctrine of equivalents to the amended elements as outlined in *Festo* [FN88] and its progeny.

## C. Reduction of Infringement Damages

Claim cancellations and narrowing amendments in a reexamination will eliminate past infringement damages. Unless a claim emerges from reexamination substantially identical to the original claim, damages are not available for the time period preceding issuance of the reexamination certificate. [FN89] As a high percentage of reexaminations result in amendments or cancellations of claims, this is a significant benefit of reexamination to the party accused of infringement.

## D. Inequitable Conduct

Omissions or misrepresentations of material facts by the patent owner to the examiner during a reexamination with the intent to deceive can form the basis for a defense of unenforceability based on inequitable conduct. Moreover, the grant of an order of reexamination establishes the materiality of the art cited by a third party requester. If the evidence shows that the patent owner was aware of the art during prosecution but failed to disclose it, a basis for an inequitable conduct defense may exist.

## E. Restricted Procedure in *Inter Partes* Reexamination

The absence of discovery mechanisms and cross-examination of witnesses can be a disadvantage of reexamination in comparison to litigation. However, in *inter partes* reexamination the restricted procedural framework of reexamination provides certain benefits for the third party. The requester's comments are filed after the patent owner's response, and the patent owner has no right to file a subsequent response. Thus, the third party requester may have the "last word" before the examiner makes a decision.

## *28 VII. BENEFITS, CAUTIONS, AND CONCERNS FOR REEXAMINATION

### A. Opportunity to Amend Claims

Either reexamination procedure provides a mechanism by which patent owners can amend claims to avoid prior art. Litigation does not generally provide such a mechanism. Therefore, a claim that might be considered invalid during litigation could be amended during reexamination to produce a "valid" claim. Such an amendment may result in the reduction, or complete alleviation, of damages, but an injunction for present and future activities would still be an available remedy. This may be particularly important in situations where the alleged infringing product has a considerable future lifetime, when past damages are low, or when there are limited or no effective "design-around" options. Thus, in some situations, it may be better to allow a court to invalidate a patent or a patent claim rather then engaging in the reexamination process in which the patent owner can amend the claims to improve their validity.

### B. Presumption of Validity over Cited Art

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Once a patent has proceeded through a reexamination process, a court will find a presumption of validity over the art cited during the reexamination (similar to the presumption of validity over art cited during the initial examination.) This presumption may increase the difficulty in presenting invalidity arguments during litigation based on the same prior art. Also, the jury will be told that the patent claim twice withstood scrutiny by the PTO--a very powerful jury argument.

### C. Estoppel in *Inter Partes* Reexamination

*Inter partes* reexamination can be an effective method for invalidating or narrowing a competitor's patent with the benefit of participation in the proceedings before the PTO. As indicated above, however, an estoppel arises from the *inter partes* reexamination procedure regarding those issues which were made, or could have been made, during the procedure. This may limit the ability to defend an infringement action in the future. Consideration should be given to the probability of litigation, other possible litigation defenses, the strength of the prior art, the completeness of the analysis of prior art, possible amendments to the claims to avoid the prior art, and the desirability of traditional discovery tools which are denied by the *inter partes* reexamination procedure. In particular, a thorough review of the known prior art **\*29** should be made and the results of the review should be captured in the reexamination request.

In contrast, *ex parte* reexamination does not require all issues to be presented by the third party. Thus, one or more issues may be retained by the third party for use in a subsequent reexamination request or in litigation.

### D. Lack of Participation in *Ex Parte* Reexamination

After the initial request for reexamination and the optional reply to the optional patent owner's statement, the requester no longer participates in the reexamination procedure. This can create situations in which the patent owner is able to work with the examiner to obtain patent claims that the requester believes should be challenged, but the requester can not do so. However, this can be mitigated by the ability to file a second reexamination provided that a new question of patentability can be found.

### E. Cost

The cost for reexamination is generally much lower than litigation of the same issues because there is no discovery or cross-examination. However, the costs of reexamination are usually significantly greater than the filing fees if the reexamination is going to be effective. First, a search must often be performed to identify patents and publications for the reexamination. Once the prior art has been identified, it should be analyzed and an effective request for reexamination with detailed analysis of the prior art and claims of the challenged patent should be prepared. At a minimum, one substantially new question of patentability must be raised regarding at least one claim. This will initiate the reexamination process. In many cases, however, it is worthwhile to provide multiple questions of patentability against multiple claims of the patent and, preferably, using several different references. In an *inter partes* reexamination, a full analysis should be performed because the third party may be precluded from presenting additional issues in the future. The analysis and preparation of such a request can take substantial attorney time.

## VIII. IS REEXAMINATION THE RIGHT CHOICE?

A decision regarding reexamination is highly factually driven. Relevant factors include:
  • Strength of the prior art (e.g., anticipation vs. obviousness);
  • Amount of past damages that could be eliminated;
  **\*30** • Ability to "design-around" and avoid future damages;

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

- Number of different questions of patentability;
- Strength of the infringement claim;
- Resources of the patent owner;
- Potential amendments to the patent claims to avoid the prior art and whether those amendments might cover an alleged infringing product;
- Other defenses to patent infringement;
- Likelihood of litigation; and
- Impact of an injunction on the product.

Reexamination can be particularly effective when damages can be reduced or eliminated due to amendment of claims during reexamination. Reexamination is even more effective when the alleged infringing product avoids the amended claims, can be redesigned to avoid the amended claims, or is at or near the end of its life cycle.

An initial step in deciding whether to initiate a reexamination procedure is the identification of prior art. Employees knowledgeable in the subject matter can be a good source of prior art. In addition, a professional searcher can be engaged to perform a comprehensive and broader search through patents and other publications. Technical articles and internet references can be good sources of prior art which were not considered by the examiner during the original prosecution of the patent.

If reexamination is appropriate, the next question is whether to initiate an *ex parte* or *inter partes* reexamination. *Ex parte* reexamination is the best choice in most circumstances. This allows a much less expensive entrance into reexamination and does not generate estoppel issues. *Inter partes* reexamination is probably best used when the prior art is exceptionally strong, the other party is likely to initiate litigation, and the estoppel of validity challenges during litigation is acceptable. *Inter partes* reexamination provides a mechanism outside of litigation to test a patent's validity without the cost of expensive discovery procedures.

As indicated above, for an *ex parte* reexamination, the completeness and depth of the reexamination request can be selected based on a variety of factors. In some instances, it may be sufficient to identify a single new question of patentability for one or more claims. In other instances, an indepth analysis of the prior art and claims to determine multiple new questions of patentability for each of the patent claims may be warranted. In yet other instances, something between these two extremes can be used. This is a decision that can be made on a case-by-case basis. Alternatively, *31 a selected level of prior art searching and analysis can be made a default for all reexamination proceedings. If the *inter partes* reexamination procedure is pursued, a complete analysis of the prior art should be performed and included in the reexamination request because the requester may be precluded from raising new issues relating to prior art known during the reexamination proceeding or discovered afterwards.

A reexamination should be initiated relatively soon after receiving a "cease and desist" letter or other communication from a patent owner, preferably before answering the letter or having further communication with the other party. If litigation is first initiated, reexamination should be initiated as soon as possible because the court is more likely to stay the litigation the earlier the reexamination request is filed. In addition, the results of a search for prior art are less likely to be provided to the other party during discovery if reexamination is initiated early.

## IX. CONCLUSION

Reexamination carries certain risks for third parties. In addition to the relatively harsh estoppel provisions applicable to *inter partes* reexamination, a reexamination that does not invalidate or narrow the claims over the cited art will leave the patent stronger (or perceived by a jury as stronger) than it was before the reexamination. This is true of both *ex partes* and *inter partes* reexamination. Clearly, claims confirmed in reexamination present added barriers to a successful contest in litigation. [FN90]

Nevertheless, when a third party is informally accused of infringement by a patentee and the patentee is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

considered unlikely to proceed to filing suit, and where the accused infringer believes that there is relatively strong prior art available, reexamination provides a relatively inexpensive and quick procedure for forcing the patentee to defend the validity of a weak patent. A "nuisance" patent holder hoping to force quick settlements or licenses out of accused infringers on the basis of a weak patent portfolio may be compelled to reassess such a strategy. Statistics on the outcome of *32 reexamination requests suggest that it is very likely that a reexamination will result in at least some narrowing of claims. [FN91]

In certain technical fields, there is a great deal of non-patent documentary prior art that is often overlooked by the examiner during prosecution. Reexamination of patents in such areas may be an especially effective way for third parties to challenge overbroad or weak patents as being anticipated or obvious, and to provide the PTO the opportunity to correct the mistaken issuance of a patent.

[FN1]. Pub. L. No. 96-517, 94 Stat. 3016, § 1 (1980), codified as amended at 35 U.S.C. §§ 301 *et seq.*

[FN2]. Intellectual Property and Communications Omnibus Reform Act of 1999, subch. 1948, Pub. L. No. 106-113, 113 Stat. 1501, §§ 1501-567 to 1501A-570 (Subtitle F, "Optional *Inter partes* Reexamination Procedure Act of 1999"), codified as amended at 35 U.S.C. §§ 311 *et seq.* The AIPA left *ex parte* reexamination largely unchanged.

[FN3]. 35 U.S.C. § 311(a); 37 C.F.R. §§ 1.510(a), 1.913. The six-year period is the statute of limitations under 35 U.S.C. § 286 for infringement actions.

[FN4]. *See In re Papst-Motoren*, 1 U.S.P.Q.2d 1655 (Bd. Pat. App. & Inter. 1986).

[FN5]. Patent owners have used *ex parte* reexamination as a means of strengthening the presumption of validity of a patent by submitting new art uncovered by an accused infringer and then arguing that the claims are patentable over the cited art.

[FN6]. 37 C.F.R. § 1.510(b)(5); 1.915(b)(5). The address for service is the attorney or agent of record according to 37 C.F.R. §1.33(c) or the patent owner, if no attorney or agent is of record. If service is not possible then a duplicate copy of the request must be provided to the USPTO.

[FN7]. MPEP § 2212.

[FN8]. 37 C.F.R. § 1.20(c)(1).

[FN9]. 35 U.S.C. § 311(a).

[FN10]. 35 U.S.C. § 311(b)(1); 37 C.F.R. § 1.915(b)(8).

[FN11]. 37 C.F.R. § 1.20(c)(2).

[FN12]. 37 C.F.R. § 1.915(b)(7).

[FN13]. 35 U.S.C. §§ 301-302, 312(a); 37 C.F.R. §§ 1.510, 1.906(a), 1.915.

[FN14]. MPEP §§ 2217, 2258.

[FN15]. However, during a reexamination, the PTO may properly examine new or amended claims for compliance with § 112, and the patent owner may amend claims in order to comply with § 112. 37 C.F.R. §§ 1.552(a), 906(a); *In re Etter*, 756 F.2d 852, 856 (Fed. Cir.) (in banc), *cert. denied*, 474 U.S. 828 (1985); MPEP

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

§§ 2671.01-2671.02.

[FN16]. 35 U.S.C. §§ 303(a), 312(a) (as amended by 21st Century Department of Justice Authorization Act of 2002, Pub. L. No. 107-273, § 13105, 116 Stat. 1900 (Nov. 2, 2002), legislatively overruling *In re Portola Packaging, Inc.*, 110 F.3d 786 (Fed. Cir. 1997).

[FN17]. MPEP §§ 2242, 2642.

[FN18]. *Id.*

[FN19]. MPEP §§ 2240, 2242, 2640, 2642.

[FN20]. 35 U.S.C. §§ 302, 311(b)(2); 37 C.F.R. §§ 1.510(b), 1.915(b)(3); MPEP §§ 2214, 2617.

[FN21]. 37 C.F.R. § 1.510(b)(2). This is often done when the patent owner is the requester.

[FN22]. MPEP §§ 2216-2217, 2616-2617.

[FN23]. 35 U.S.C. §§ 303, 312.

[FN24]. 35 U.S.C. §§ 303-304, 312(a), 313; 37 C.F.R. §§ 1.515, 1.525, 1.923, 1.931.

[FN25]. 35 U.S.C. §§ 303(c), 312(c).

[FN26]. 37 C.F.R. §§ 1.515(c), 1.927.

[FN27]. 37 C.F.R. § 1.26(c).

[FN28]. *See generally* PTO Official Gazette Notices dated April 25, 2006.

[FN29]. *See* 72 FR 18892, 18896-18898 (April 16, 2007).

[FN30]. *See* Notice of Clarification of Office Policy to Exercise Discretion in Reexamining Fewer Than All the Patent Claims, available at http:// www.uspto.gov/web/offices/pac/dapp/opla/preognotice/reex_cls_requested.pdf (May 14, 2007).

[FN31]. 37 C.F.R. §§ 1.552(b), 1.906(b).

[FN32]. 37 C.F.R. §§ 1.552(a), 1.906(a).

[FN33]. 37 C.F.R. §§ 1.552(c), 1.906(c).

[FN34]. MPEP §§ 2236, 2636.

[FN35]. 35 U.S.C. §§ 305, 314(c).

[FN36]. MPEP §§ 2263, 2666.

[FN37]. 37 C.F.R. §§ 1.550(c), 1.956.

[FN38]. 37 C.F.R. § 1.947.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN39]. 35 U.S.C. §§ 305, 314(a); 37 C.F.R. §§ 1.530(j), 1.906(b).

[FN40]. MPEP §§ 2610, 2688.

[FN41]. 37 C.F.R. §§ 1.555, 1.933.

[FN42]. MPEP §§ 2271, 2671.02.

[FN43]. 37 C.F.R. §1.530(a).

[FN44]. 35 U.S.C. § 304; 37 C.F.R. §§ 1.530, 1.535.

[FN45]. 37 C.F.R. § 1.550(g).

[FN46]. MPEP § 2251.

[FN47]. 37 C.F.R. § 1.550(f); MPEP § 2254.

[FN48]. 37 C.F.R. § 1.560; MPEP § 2281.

[FN49]. 37 C.F.R. § 1.935.

[FN50]. 35 U.S.C. § 314(a); 37 C.F.R. § 941.

[FN51]. 37 C.F.R. § 1.947.

[FN52]. 35 U.S.C. § 314(b); 37 C.F.R. § 1.947.

[FN53]. 37 C.F.R. § 1.948(a).

[FN54]. 37 C.F.R. § 1.955.

[FN55]. 37 C.F.R. §§ 1.937(b), 1.111.

[FN56]. 37 C.F.R. § 1.945(b). *See* **72 FR 18892** (April 16, 2007).

[FN57]. 37 C.F.R. § 1.953.

[FN58]. 37 C.F.R. § 1.953(c).

[FN59]. 35 U.S.C. §§ 307, 316; 37. C.F.R. §§ 1.570, 1.997.

[FN60]. 37 C.F.R. §§ 1.570(d), 1.997(d).

[FN61]. 35 U.S.C. §§ 134(b), 306.

[FN62]. 35 U.S.C. § 141. The option of appealing the decision of the Board of Patent Appeals and Interferences to either (A) the United States Court of Appeals for the Federal Circuit pursuant to 35 U.S.C. 141, or (B) the United States District Court for the District of Columbia pursuant to 35 U.S.C. 145 is only available to *ex parte* reexaminations filed <u>before</u> November 29, 1999. See MPEP § 2279.

[FN63]. MPEP §§ 2273, 2279.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN64]. 35 U.S.C. § 315; 37 C.F.R. § 1.959.

[FN65]. 35 U.S.C. §§ 141, 315, as amended by 21st Century Department of Justice Authorization Act of 2002, Pub. L. No. 107-273, § 13106, 116 Stat. 1900 (Nov. 2, 2002); 37 C.F.R. § 1.983; USPTO Report to Congress on *Inter Partes* Reexamination, available at http:// www.uspto.gov/web/offices/dcom/olia/reports/reexam_report.htm.

[FN66]. *Id.*

[FN67]. MPEP § 2683.

[FN68]. 37 C.F.R. § 1.565(c).

[FN69]. MPEP § 2240.

[FN70]. *See, e.g., In re Bass,* 314 F.3d 575 (Fed. Cir. 2002) (third party requester requested a second reexamination after examiner indicated intent to issue a reexamination certificate allowing reexamined claims; examiner granted second reexamination, merged the proceedings, and rejected claims based on additional art).

[FN71]. 35 U.S.C. § 317(a); 37 C.F.R. § 1.907(a); MPEP 2686.01.

[FN72]. *See* 37 C.F.R. § 1.989; MPEP 2686.01.

[FN73]. *See, e.g., Perricone v. Unimed Nutritional Services, Inc.,* 2002 U.S. Dist. LEXIS 17613 (D.Conn. 2002); *Softview Computer Products Corp. v. Haworth, Inc.,* 56 U.S.P.Q.2d 1633 (S.D.N.Y. 2000); *Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404 (W.D.N.Y. 1999).

[FN74]. 35 U.S.C. § 318.

[FN75]. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422 (Fed. Cir. 1988).

[FN76]. MPEP § 2686.04 (construing 35 U.S.C. § 314).

[FN77]. MPEP § 2686.04.

[FN78]. 35 U.S.C. § 315(c).

[FN79]. USPTO Report to Congress on *Inter Partes* Reexamination.

[FN80]. *See* H.R. 1908: Patent Reform Act of 2007 at § 6(b), available at http://www.govtrack.us/congress/billtext.xpd?bill=h110-1908.

[FN81]. 35 U.S.C. § 315(c).

[FN82]. *See* USPTO Report to Congress on *Inter Partes* Reexamination (noting that the degree to which the "unavailable" prior art exception applies is unclear).

[FN83]. 35 U.S.C. § 317(b); 37 C.F.R. § 1.907.

[FN84]. 35 U.S.C. § 282.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN85]. *In re Etter*, 756 F.2d 852, 858-859 (Fed. Cir.) (in banc), *cert. denied*, 474 U.S. 828, 858-859 (1985). *Etter*, which involved a third party's request for *ex parte* reexamination, would seem to be applicable to *inter partes* reexamination.

[FN86]. *In re Hiniker Co.*, 150 F.3d 1362, 1368 (Fed. Cir. 1998).

[FN87]. *See, e.g., Spectrum International, Inc. v. Sterilite Corp.*, 164 F.3d 1372 (Fed. Cir. 1998) (summary judgment of noninfringement affirmed; patentee cannot recapture a broad claim construction that it had surrendered in distinguishing prior art during reexamination).

[FN88]. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002).

[FN89]. *See, e.g., Laitram Corp. v. NEC Corp.*, 163 F.3d 1342 (Fed. Cir. 1998) (patentee not entitled to damages based on activity of defendant prior to issuance of reexamination certificate where substantive claim changes were made during reexamination).

[FN90]. *See Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970 (Fed. Cir. 1986) (suggesting that evidentiary burdens are likely higher for challengers after reexamination).

[FN91]. For example, according to data provided by the PTO on reexaminations between 1981 and March 2004, of the 98 percent of reexaminations not ordered by the PTO, approximately 43 percent were initiated by patent owners and 55 percent were initiated by third parties. Of this 98 percent, about 91 percent led to reexamination proceedings having the following results:

| Requested by patent owner | Requested by third party | Reexamined claims |
|---|---|---|
| 23% | 30% | All confirmed |
| 7% | 12% | All cancelled |
| 70% | 58% | Some narrowed |

Michael D. Bednarek et al., *Katz Patent Reexaminations: A Change in Momentum Favoring RAKTL Targets*. Available at http:// library.findlaw.com/2004/Jun/9/133461.html (December 13, 2004).
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.