QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
Claude M. Stern (Bar No. 96737)
  claudestern@quinnemanuel.com
Evette D. Pennypacker (Bar No. 203515)
  evettepennypacker@quinnemanuel.com
Mike D. Powell (Bar No. 202850)
  mikepowell@quinnemanuel.com
Randy Garteiser (Bar No. 231821)
  randygarteiser@quinnemanuel.com

555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Defendant
KRAFT FOODS GLOBAL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY, a Delaware corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>KRAFT FOODS GLOBAL, INC, a Delaware Corporation,<br><br>        Defendant. | CASE NO. C 07-4413 PJH<br><br>**DECLARATION OF CHARLIE Y. CHOU IN SUPPORT OF KRAFT FOODS GLOBAL, INC.'S REPLY TO IT'S MOTION TO STAY, OR IN THE ALTERNATIVE, TO EXPEDITE DISCOVERY AND RESCHEDULE PRELIMINARY INJUNCTION HEARING** |

1    I, Charlie Y. Chou, declare as follows:

2    1.    I am an attorney licensed to practice law in the State of California.  I am an

3    associate of the law firm of Quinn Emanuel Urquhart Oliver & Hedges, LLP, counsel of record for

4    the Defendant Kraft Foods Global, Inc. ("Kraft") in this matter.

5    2.    I make this declaration in support of Kraft's Reply to its Motion to Stay or Expedite

6    Discovery.  I have personal knowledge of the facts stated herein and if called to testify could and

7    would competently testify thereto.

8    3.    On September 25, 2007, our office received a box of documents from Gregory S.

9    Cordrey, an attorney with Howrey LLP, counsel of record for The Procter & Gamble Company

10    ("P&G") in this action.  The box contained 1,767 pages of documents, and I personally inspected

11    each page.  Some of the 1,767 pages are duplicates of one another.

12    4.    The box was accompanied by a cover letter dated September 24, 2007.  Attached

13    hereto as Exhibit A is a true and correct copy of Mr. Cordrey's cover letter dated September 24,

14    2007.

15    5.    The cover letter from Mr. Cordrey represents that documents labeled P&G-KRAFT

16    0001-580 are responsive to Kraft's Requests for Production Nos. 3, 6, 7, 8, 10, 11, 13, 19, 20, 24,

17    and 32.

18    6.    The documents labeled P&G-KRAFT 0001-580 consist of some documents

19    reflecting P&G's manufacturing development, business modeling, summaries of customer surveys,

20    design specifications, and testing of P&G's plastic coffee container.  Absent from this group are

21    any documents relating to the following areas:

22    (a)    Documents reflecting that Kraft will suffer irreparable harm unless the
         Court issues an order enjoining Kraft from infringing P&G's patent-in-suit.

23

24    (i)    Documents showing that P&G will be financially harmed by Kraft's
         introduction of its Flavor Lock Container into the market.

25    (ii)    Documents showing that if Kraft continues to sell ground coffee in
         its plastic container, it will, in any way, hurt P&G's ground coffee

26    business.

27    (iii)    Documents showing that Kraft, by its continued sale of its Flavor
         Lock Container, will increase its market share at the expense of

28    P&G's market share.

51282/2236055.1

-2-

      (iv)    Documents reflecting that P&G's market share growth in 2003 and 2004 were solely attributable to the introduction of its plastic coffee container.

      (v)    Documents reflecting that consumer preference for P&G's product, especially the benefits provided by its plastic coffee container technology contributed to its market share loss due to Hurricane Katrina.

      (vi)    Documents illustrating that Kraft's sales of its 39-ounce Flavor Lock Container will diminish sales of P&G's 39-ounce plastic coffee containers.

      (vii)    Documents demonstrating that Kraft's sales of products with the same or similar advantages as P&G's products will increase Kraft's customer loyalty at the detriment of P&G's customer loyalty.

      (viii)    Documents demonstrating that Kraft, with its Flavor Lock Container for roasted coffee, is now in a position to regain all or part of the increased market share that P&G was able to obtain in recent years.

      (ix)    Documents demonstrating that Kraft's Flavor Lock Container will chip away at the consumer good will that P&G has built.

      (x)    Documents demonstrating that customer will try Kraft's *Maxwell House®* brand coffee simply because it is being offered in a new plastic container that is similar to P&G's.

  (b)    Documents reflecting data derived from customer research relating to P&G's plastic coffee container.

  (c)    Documents reflecting data derived from customer surveys showing that the innovations P&G's plastic coffee container creates goodwill among coffee customers.

  (d)    Documents reflecting data derived from customer surveys showing that P&G increased customer loyalty when it introduced its plastic coffee container.

  (e)    Documents showing that Kraft's continued sales of its Flavor Lock Container will effect P&G's penetration of the market among new coffee consumers.

  (f)    Documents showing that P&G has earned a leadership position among retailers because its coffee customers prefer Folgers' innovative plastics packaging over metal cans.

  (g)    Documents of data showing reflecting that customers are willing to pay more for Folgers than for the equivalent size *Maxwell House* 39 ounce containers.

  (h)    Documents reflecting actual commercial success by P&G attributable to its plastic coffee container in the marketplace.

7.    Mr. Cordrey's cover letter also states that the documents labeled P&G-KRAFT 0581-1747 are responsive to Kraft's Requests for Production Nos. 7, 8, 24, and 32. This group of documents reflect P&G's manufacturing development, design specifications, Tom Manske's personal notes regarding the testing (dated 2/02-3/06) and testing results of P&G's plastic coffee container. Absent from this group are any documents relating to the following areas:

    (i)    Documents demonstrating that P&G was able to use the advantage of its new plastics coffee container to sell its Folgers brand coffee at a higher premium and/or achieve an increase in market share.

    (j)    Documents demonstrating that P&G gained 3 to 4 percentage points of market dollar share of ground coffee was attributable to P&G's launch of its plastic coffee container.

8.    Mr. Cordrey's cover letter also states that the documents labeled P&G-KRAFT 1748-1767 are responsive to Kraft's Requests for Production Nos. 7, 8, and 24. This group of documents reflect P&G's manufacturing development, design specifications, testing procedures and testing results of P&G's plastic coffee container. Absent from this group are any documents relating to the following areas:

    (k)    Documents demonstrating that P&G was able to use the advantage of its new plastics coffee container to sell its Folgers brand coffee at a higher premium and/or achieve an increase in market share.

    (l)    Documents demonstrating that P&G gained 3 to 4 percentage points of market dollar share of ground coffee was attributable to P&G's launch of its plastic coffee container.

9.    I have specifically looked at the documents provided by Mr. Cordrey to see if any of them reflected the "aroma value" test referred to in the declaration of Jennifer Floyd or the pressure test of Kraft's *Maxwell House* brand coffee container that is referred to in the declaration of Douglas B. Zeik. I did not find any documents reflecting either of these tests.

10.    On September 27, 2007, our office received from Ms. Karaman-Stothers, a Howrey Case Manager, a letter (dated September 26, 2007) and a compact disc containing 2,240 pages of documents. The cover letter from Ms. Karaman-Stothers represented that the documents were responsive to some of Kraft's Requests for Documents. Attached hereto as Exhibit B is a true and correct copy of Ms. Karaman-Stothers cover letter dated September 26, 2007.

-4-

1      11.    I have personally done a cursory check to see what information is contained within

2  the September 27, 2007 production, but given that Kraft's Reply to the Motion to Stay is due

3  today, I was not in a position to do a thorough review. Based on my limited review, however, it

4  does not appear that the documents reflect the "aroma value" test referred to in the declaration of

5  Jennifer Floyd or the pressure test of Kraft's *Maxwell House* brand coffee container that is referred

6  to in the declaration of Douglas B. Zeik.

7      I declare under penalty of perjury under the laws of the United States that the above

8  statements are true and correct. Executed this 27th day of September, 2007, in the City of

9  Redwood Shores, California.

Charlie Y. Chou

51282/2236055.1