QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Claude M. Stern (Bar No. 96737)
    claudestern@quinnemanuel.com
  Evette D. Pennypacker (Bar No. 203515)
    evettepennypacker@quinnemanuel.com
  Mike D. Powell (Bar No. 202850)
    mikepowell@quinnemanuel.com
  Randy Garteiser (Bar No. 231821)
    randygarteiser@quinnemanuel.com

555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Defendant
KRAFT FOODS GLOBAL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY, a Delaware corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>KRAFT FOODS GLOBAL, INC, a Delaware Corporation,<br><br>        Defendant. | CASE NO. C 07-4413 PJH<br><br>**KRAFT FOODS GLOBAL, INC.'S REPLY IN SUPPORT OF MOTION TO STAY, OR IN THE ALTERNATIVE, TO EXPEDITE DISCOVERY AND RESCHEDULE PRELIMINARY INJUNCTION HEARING**<br><br>Date: October 3, 2007<br>Time: 9:00 AM<br>Place: Courtroom 3, 17th Floor |

DEFENDANT'S REPLY ISO MOTION FOR STAY, OR ALTERNATIVE MOTION TO EXPEDITE DISCOVERY
CASE NO. C 07-4413 PJH

# TABLE OF CONTENTS

**Page**

Introduction ...................................................................................................................1

I.    THE COURT SHOULD STAY THIS LAWSUIT PENDING THE OUTCOME OF THE *INTER PARTES* REEXAMINATION PROCEEDING ...............................................2

    A.    The *Inter Partes* Reexam is Not Finished. ..........................................................2

    B.    Kraft Will Demonstrate to the BAPI or the Federal Circuit that the '418 Patent is Invalid. ...............................................................................................3

    C.    Precedent and Common Sense Compel a Stay Here. ............................................5

    D.    A Stay Will Conserve the Parties' and the Court's Resources and Simplify Any Case if the Patent Survives Reexamination. .................................................8

    E.    P&G Has No Evidence It Will Be Prejudiced By A Stay. ....................................9

II.    IF THE COURT DOES NOT GRANT KRAFT'S MOTION TO STAY, GOOD CAUSE EXISTS TO GRANT KRAFT'S MOTION TO EXPEDITE DISCOVERY AND RESCHEDULE THE PRELIMINARY INJUNCTION HEARING DATE..............13

Conclusion..................................................................................................................15

DEFENDANT'S REPLY ISO MOTION FOR STAY, OR ALTERNATIVE MOTION TO EXPEDITE DISCOVERY
CASE NO. C 07-4413 PJH

51282/2236229.2

# TABLE OF AUTHORITIES

**Page**

## Cases

*AT&T Corp. v. Vision One Security Sys.*,
914 F. Supp. 392 (S.D. Cal. Aug. 15, 1995) ............................................................14

*Abbot Labs v. Selfcare, Inc.*,
17 F. Supp. 2d 43 (D. Mass. 1998) ...........................................................11, 12

*Brown v. Shimano Am. Corp., No. CV88-6565 WJR (BX)*,
1991 WL. 133586 (C.D. Cal. Jan. 29, 1991)................................................7

*Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*,
72 F.3d 872 (Fed. Cir. 1995)................................................................7

*Christian v. Alloy, Inc.*,
2004 WL. 1375274 (S.D.N.Y. June 17, 2004) ..............................................14

*Echostar Techs. Corp. v. Tivo, Inc.*,
No. 5:05- CV-81 (DF), 2006 WL. 2501494 (E.D. Tex. July 14, 2006)..........7, 8

*Ethicon Endo-Surgery v. U.S. Surgical Corp.*,
855 F. Supp. 1500 (S.D. Ohio 1994)....................................................12

*Flynt Distributing Co., Inc. v. Harvey*,
734 F.2d 1389 (9th Cir. 1984)..............................................................10

*Goldie's Bookstore, Inc. v. Superior Court*,
739 F.2d 466 (9th Cir. 1984)................................................................10

*Grayling Indus., Inc. v. GPAC, Inc.*,
No. 1:89-CV-451-ODE, 1991 WL. 236196 (N.D. Ga. Mar. 25, 1991) ...............7

*Honeywell Int'l, Inc. v. Int'l Trade Comm'n*,
341 F.3d 1332 (Fed. Cir. 2003)..............................................................5

*KSR Int'l Co. v. Teleflex, Inc.*,
127 S. Ct. 1727 (2007) ...................................................................4, 5

*Loffland Brothers Co v. Mid-western Energy Corp.*,
225 U.S.P.Q. 886 (W.D.Okla. 1985)........................................................6

*Middleton, Inc. v. Minnesota Mining and Mfg. Co.*,
No. 4:03-CV-40493, 2004 WL. 1968669 ................................................7

*Middleton v. 3M*,
2004 U.S. Dist. LEXIS 16812 (S.D. Iowa Aug. 24, 2004) ............................3

*Nanometrics, Inv. v. Nova Measuring Instruments, Ltd.*,
No. C06-2252 SBA,
2007 WL. 627920 (N.D. Cal. Feb. 26, 2007)..............................................7

-ii-

1   *Nutrition 21 v. United States*,
        930 F.2d 867 (Fed. Cir. 1991)............................................................10

2

3   *Pass & Seymour, Inc. v. Hubbell Inc.*,
        2007 WL. 2172648 (N.D.N.Y. July 23, 2007)........................................9

4   *Perricone v. Unimed Nutritional Servs., Inc.*,
        2002 WL. 31075868 (D.Conn. July 18, 2002)........................6, 7, 12, 13

5

6   *RDS Group Ltd. v. Davison*,
        No. 02-CV-8168, 2003 U.S. Dist. LEXIS 1337 (Jan. 17, 2003)...............14

7   *RasterOps v. Radius, Inc.*,
        861 F. Supp. 1479 (N.D. Cal. 1994) ....................................................5

8

9   *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
        897 F.2d 511 (Fed. Cir. 1990)..............................................................7

10  *Syntex, Inc. v. U.S. Patent & Trademark Office*,
        882 F.2d 1570 (Fed. Cir. 1989)............................................................3

11

12  *TiVo Inc. v. EchoStar Commc'n Corp.*,
        446 F. Supp. 2d 644 (E.D. Tex. 2006) ................................................13

13  *Verizon Cal., Inc. v. Peevey*,
        No. C03-2838, 2004 WL. 3550113 (N.D. Cal. Jan. 13, 2004), *vacated on other grounds*, 413

14      F.3d 1069.............................................................................................10

15  *Verizon Servs. Corp. v. Vonage Holdings Corp.*,
        2007 WL. 1202744 (Fed. Cir. 2007).....................................................6

16

17                          **Statutes**

18  35 U.S.C. §§ 134, 315............................................................................3

19  35 U.S.C. § 315(c)..............................................................................8, 9

20  35 U.S.C. section 112, ¶2......................................................................5

21  37 C.F.R. § 1.997..................................................................................3

22  F.R.C.P. 30   .......................................................................................15

23

24

25

26

27

28

-iii-
DEFENDANT'S REPLY ISO MOTION FOR STAY, OR ALTERNATIVE MOTION TO EXPEDITE DISCOVERY
CASE NO. C 07-4413 PJH

## Introduction

*The PG lawsuit against Maxwell House's new packaging led us to take a detailed look at KFT's coffee business. There is little evidence that the KFT coffee business has started to turn around. So for now PG may see the new format as a threat but the damage so far (if there is any) is not evident.*

Independent Analyst JP Morgan
September 19, 2007 (last week)

Procter & Gamble ("P&G") urges this Court to race through preliminary injunction proceedings against Kraft Foods Global, Inc. ("Kraft") even though (1) the validity of the only asserted patent in the case hangs in the balance in an uncompleted (the first of three phases) *inter partes* reexamination proceeding, and (2) P&G has completely failed to present evidence that it will be harmed by a stay or continuance of these proceedings or that P&G's coffee sales have been adversely effected by Kraft's plastic *Maxwell House®* container.

P&G is trying to have its cake and eat it, too:

- P&G wants to drag Kraft and this Court through this litigation and, more particularly, its preliminary injunction motion, while the *inter partes* reexamination proceeding is pending, even though — and P&G just plain ignores this fact — if the *inter partes* proceedings result in the '418 patent claims being rejected, *this suit is a nullity*:  there would be no patent on which to bring suit.

- P&G wants this Court *right now* to treat the *inter partes* reexamination proceeding as if it were completed and resulted in confirmation of the claims of the '418 patent — essentially precluding Kraft from proving invalidity of the '418 patent to this Court — even though that proceeding still has 2 levels of appeals available.

- P&G wants this Court to make a determination of Kraft's infringement and issue an injunction, even though P&G's papers are devoid of claim construction analysis, or analysis of the '418 patent's extensive file history (remarkably, P&G has not even presented the file history to this Court), or the understanding of the patent claims or terms by one of ordinary skill in the art.

- P&G urges to this Court that Kraft's actions will cause P&G irreparable injury, without presenting a shred of tangible, specific evidence, while it simultaneously brags to its investment community about its rosy future.

- P&G submits ten (10) percipient declarations to support its preliminary injunction motion and opposition to this stay motion, but when Kraft seeks to cross-examine these witnesses and the '418 patent inventors, P&G claims Kraft seeks too much information.

P&G mischaracterizes the relevant law and the evidence, and persistently glosses over its own lack of actual *evidentiary* support for its claims.  P&G has not shown and cannot show that it is or will be unduly prejudiced by a stay in this case or that it will be irreparably harmed absent an injunction.  It simply has no evidence of harm.  There is no rush here, and this case is properly stayed, to allow the reexamination proceeding to run its course.   At the very least, the hearing on the preliminary injunction motion has to be delayed for a sufficient amount of time to give Kraft the opportunity to conduct discovery to establish its defenses to the claim of infringement here.

## I.    THE COURT SHOULD STAY THIS LAWSUIT PENDING THE OUTCOME OF THE *INTER PARTES* REEXAMINATION PROCEEDING

### A.    The *Inter Partes* Reexam is Not Finished.

To avoid the stay that should be entered in this case, P&G repeatedly states as fact that Kraft has "lost twice in the PTO already." (Opp. at 4)  This is false.  Kraft did not take any part in the original prosecution that led to the '418 patent.  Nor has Kraft "already lost on all the patent claims." (Opp. at 3)  The *inter partes* reexamination has not even technically finished the first stage: P&G's patent still faces review by the Board of Patent Appeals and Interferences ("BAPI") and, assuming the patent survives, the Federal Circuit.  Kraft intends to complete that process. (Declaration of John LeBoutillier in Support of Motion to Stay ("Opening LeBoutillier Decl.") ¶3)

P&G also argues — without citing any authority whatever — that "Kraft does not even have the right to seek a stay to pursue an appeal of its *inter partes* reexamination." (Opp. 6)  This is also wrong.  Although Section 318 expressly provides that the patent owner may obtain a stay of any pending litigation pending an appeal of an *inter partes* reexamination, that does not mean that a 3rd-party requestor like Kraft cannot: in fact, the opposite is true, and this Court retains its

1   oft-exercised inherent discretion to stay cases under these circumstances. *See Middleton v. 3M,*

2   2004 U.S. Dist. LEXIS 16812 (S.D. Iowa Aug. 24, 2004). Indeed, on the very next page of

3   P&G's Opposition brief, P&G cites to no less than four cases where district courts have granted

4   stays pending the outcome of an *inter partes* reexamination. (Opp. at 8 n.7)

5   P&G also ignores the salient differences between *ex parte* and *inter partes* reexamination

6   proceedings. In particular, the requestor in an *ex parte* reexamination proceeding has no right to

7   appeal the examiner's decision on reexam — the patentee alone has that right. *See* M.P.E.P.

8   §2273 (Appeal in Ex Parte Reexamination: "A third party requestor may not appeal, and may not

9   participate in the patent owner's appeal."); *see also Syntex, Inc. v. U.S. Patent & Trademark*

10  *Office*, 882 F.2d 1570, 1572 (Fed. Cir. 1989). In stark contrast, the requester in an *inter partes*

11  reexamination has the right to appeal the examiner's confirmation of claims made in an Action

12  Closing Prosecution ("ACP"). 35 U.S.C. §§ 134, 315.

13  The *inter partes* reexamination is not nearly complete. P&G will have the right to claim

14  that the validity of its patent is confirmed only once the reexamination appeal process is over. 37

15  C.F.R. § 1.997.

16          **B.     Kraft Will Demonstrate to the BAPI or the Federal Circuit that the '418**
                  **Patent is Invalid.**
17

18          In its Opposition, P&G tries to convert this Motion to Stay into a Motion for Preliminary

19  Injunction by arguing that this Court should not stay this case unless it first has the chance to

20  evaluate Kraft's invalidity or non-infringement arguments. This is precisely wrong. The key issue

21  on this motion is whether a stay will serve judicial economy simplify any eventual litigation, and

22  whether P&G will be prejudiced by the stay, not whether Kraft is certain to win the reexamination.

23  This is why courts routinely stay litigations pending reexaminations even where the plaintiff is in a

24  position to file a preliminary injunction motion or move for summary judgment of infringement.

25  The key point here is that, if the reexamination results in the '418 patent being invalidated, the

26  litigation proceedings before this Court will have been a waste of time: P&G will have had no

27  right to sue, the parties would have spent resources unnecessarily, and any injunction issued by

28  this Court would be a nullity.

1    There should be no question that Kraft has a compelling invalidity case here (even

2  ignoring its other defenses to the infringement claim[1]).  Whether on the appeal of the ACP or

3  before this Court, Kraft will demonstrate that the '418 patent is invalid — particularly in light of

4  the U.S. Supreme Court's decision in *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727, 1739 (2007).

5    In *KSR*, the United States Supreme Court ruled:  "The combination of familiar elements

6  according to known methods is likely to be obvious when it does no more than yield predictable

7  results." *KSR*, 127 S.Ct. at 1739.  The patent at issue in *KSR* dealt with the combination of an

8  electronic sensor with an adjustable automobile gas pedal so that the pedal's position could be

9  transmitted to a computer that controls the throttle in the vehicle's engine.  One prior art reference

10  disclosed an example of an adjustable pedal,  another explained how to mount a modular sensor on

11  a pedal's support structure, and a third disclosed an adjustable pedal with a fixed pivot point.  The

12  Supreme Court affirmed the district court's grant of summary judgment finding the asserted patent

13  invalid because the combination of the various prior art elements was obvious.

14    P&G's argument that Kraft did not submit argument to the PTO regarding *KSR* (Opp. at 5)

15  ignores the fact that Kraft could not have submitted such argument, because it filed its petition for

16  *inter partes* reexamination of the '418 patent *before the Supreme Court issued its decision in KSR*.

17  And, because the examiner issued its ACP confirming the claims without an interim office action

18  to which P&G could respond, Kraft had no opportunity to provide briefing or other argument to

19  the examiner on the newly issued *KSR* decision.  M.P.E.P. § 2662.  Thus, Kraft never had the

20  opportunity to provide argument to the examiner regarding *KSR*.  However, Kraft does have that

21  opportunity on appeal to the BAPI.  P&G's speculation that the examiner here knew of *KSR*

22  because of an internal PTO memorandum and is presumed to have rendered its decision in light of

23  *KSR* is just speculation: nothing in the PTO decision suggests that the examiner considered *KSR*.

24

---

25    [1]  P&G's preliminary injunction motion purports to address infringement without even
providing this Court the '418 patent's file history, which is critical to construing any patent.

26  *Phillips v. AWH*, 415 F.3d 1303 (Fed. Cir. 2005).  Here, even a brief excerpt of the file history
reflects that, if the term "region of deflection" has any definite meaning at all, that meaning must

27  include at least in part the characteristics of "isolation" and "uniformity."  (Reply Stern Decl. Ex.
E)  P&G ignores this entirely.

28

1    This case is to plastic packaging what *KSR* was to automobile foot pedals.  The

2    combination of known elements in P&G's '418 patent is indistinguishable from the combination of

3    elements at issue in *KSR*.  The main elements of the bulk of P&G's asserted claims are: (1) a

4    plastic container with an open top; (2) a handle built into the body of the container; (3) the

5    container having at least one "region of deflection"; (4) a "protuberance continuously disposed

6    around the perimeter of" the container which is "proximate" to the "top" of the container; (5) a

7    flexible "closure" which is "removably attached and sealed" to the protuberance, and which

8    includes a "one-way valve"; and (6) the plastic container having a certain "aroma value" as

9    determined by a subjective "smell test" by — this is not exaggeration — 40 lay panelists who

10   participate in the test.

11       On appeal to the BAPI, and if necessary before this Court, Kraft will demonstrate that,

12   under *KSR*, (1) the collective packaging art addressed by the examiner in the reexam includes each

13   element of '418 patent claims, and (2) other printed publication art not before the examiner during

14   the reexam demonstrates that the '418 patent claims are invalid under *KSR*.  Kraft has also

15   collected, and will present to this Court if this stay is not granted, numerous prior art packaging

16   references in the market before June 4, 2001 (the earliest possible priority date for the '418 patent)

17   that plainly render the '418 patent invalid under *KSR*.  (Reply Stern Decl. ¶¶ 8-9, Ex. F)[2]

18       **C.    Precedent and Common Sense Compel a Stay Here.**

19       Kraft has cited numerous cases where the courts stayed patent infringement cases in light

20   of pending re-examination proceedings.  Facing this overwhelming authority, P&G notes that the

21   PTO has, at just the first of three stages of the reexamination process, confirmed the '418 patent,

22

23   ────────────────

24   [2] Kraft has other significant arguments to support invalidating the '418 patent, including that
     every asserted claim should be found invalid as indefinite under 35 U.S.C. section 112, ¶2 .  In

25   particular, if required to file an opposition to P&G's preliminary injunction motion, Kraft will
     show that the terms "aroma value" and "region of deflection" fail  to "adequately perform their

26   function of notifying the public of the [scope of the] patentee's right to exclude."  *Honeywell Int'l,
     Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1340 (Fed. Cir. 2003) (citations omitted).  Such

27   questions regarding the indefiniteness of asserted claims are sufficient to deny a preliminary
     injunction.  *See, e.g., RasterOps v. Radius, Inc.*, 861 F.Supp. 1479, 1490 (N.D. Cal. 1994).

28

DEFENDANT'S REPLY ISO MOTION FOR STAY, OR ALTERNATIVE MOTION TO EXPEDITE DISCOVERY
CASE NO. C 07-4413 PJH

1 and therefore argues for an unprecedented black-letter rule: once the PTO confirms a patent at the

2 first stage of reexamination, this Court loses its discretion to stay the litigation.

3       P&G's proposed rule fails. First, this rule ignores the fact that "numerous courts have

4 granted stays pending reexamination proceedings notwithstanding the well-developed posture of

5 the litigation. *See, e.g., Gould*, 705 F.3d 1340 (stay granted five years after commencement of

6 litigation and 20 days before scheduled trial date); *Loffland Brothers Co v. Mid-western Energy*

7 *Corp.*, 225 U.S.P.Q. 886 (W.D.Okla. 1985) (stay granted after substantial discovery, pre-trial

8 conference, and scheduled trial date); *Emhart*, 3 U.S.P.Q.2d 1889 (stay granted 18 months after

9 significant discovery, but no trial preparation); *Grayling Indus., Inc. v. GPAC, Inc.*, 19 U.S.P.Q.2d

10 1872, 1873 (N.D.Ga. 1991) (stay granted with discovery completed and only trial remaining in

11 case); *Perricone v. Unimed Nutritional Servs., Inc.*, 2002 WL 31075868, at *3 n.1 (D.Conn. July

12 18, 2002). Under P&G's proposed rule, even if the district court had stayed litigation pending a

13 reexamination, once the first stage of reexamination resulted in confirmation of the patent, the

14 district court's discretion to continue the stay would be removed. P&G cites no cases that support

15 this radical limitation of the district court's power to stay a case. [3]

16       Second, no authority suggest that the district court's inherent "stay" authority is so limited.

17 Courts have the power stay permanent *injunctions* after a full trial on the merits where a jury has

18 found a patent valid and infringed. *See, e.g., Verizon Servs. Corp. v. Vonage Holdings Corp.*,

19 2007 WL 1202744 (Fed. Cir. 2007) (unpublished) (granting stay of permanent injunction issued

20 after trial pending appeal); *see also Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*,

21

---

22    [3]   A rule that made the district court's discretion dependent on the state of the reexamination
23 proceeding would yield absurd results. What if the PTO in its initial review during *inter partes*
   reexamination invalidates the patent, but on appeal, the BAPI reverses and confirms the patent,
24 and the patentee immediately files suit against the third party requestor: Has the 3rd party
   requestor suddenly lost the right to have the litigation stayed, even though there are now two
25 different results reached during the appeal process? What if an *inter partes* reexamination is filed
26 by the defendant after litigation has commenced, and the district court stays the litigation pending
   the reexamination; if the PTO confirms the patent at the first stage, does the district court lose the
27 discretion to continue the stay? Of course not. P&G's black letter rule doesn't lead to sensible
28 answers in any of these situations.

DEFENDANT'S REPLY ISO MOTION FOR STAY, OR ALTERNATIVE MOTION TO EXPEDITE DISCOVERY
CASE NO. C 07-4413 PJH

1   72 F.3d 872 (Fed. Cir. 1995); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511

2   (Fed. Cir. 1990) (same).  It would be anomalous for the district court to be precluded from staying

3   litigation where a federal agency made a provisional determination of a patent's validity, while that

4   same court has the right to stay an injunction (or the balance of the proceeding) where there has

5   been a final jury verdict on validity and infringement.

6          Third, P&G's proposed rule flies in the face of clear authority recognizing the district

7   court's inherent authority to stay patent litigation pending reexamination.  As noted earlier,

8   although section 318 gives the patentee the inherent right to seek to stay litigation pending re-

9   examination, that provision has been interpreted as not overriding the district court's inherent

10   discretion to stay litigation pending reexamination at the request of the defendant.  *See Middleton*,

11   2004 U.S. Dist. LEXIS 16812.  If Congress wanted to divest the district court's of discretion to

12   grant a stay of the court proceedings upon the validation of the patent at any stage of the *inter*

13   *partes* reexamination proceeding, it would have said so.

14          In the final analysis, this case is precisely like the numerous cases Kraft has already cited

15   where district courts have stayed litigation pending a decision from the PTO in an *ex parte*

16   reexamination proceeding, irrespective of interim developments during the reexamination.  *See,*

17   *e.g., Brown v. Shimano Am. Corp.*, No. CV88-6565 WJR (BX), 1991 WL 133586, at * 1 (C.D.

18   Cal. Jan. 29, 1991) (court  granting "defendants' motion for a stay of the litigation pending the

19   U.S. Patent and Trademark Office's (PTO) consideration of defendants' request for

20   reexamination..."); *Echostar Techs. Corp. v. Tivo, Inc.*, No. 5:05- CV-81 (DF), 2006 WL 2501494,

21   at *1-*3 (E.D. Tex. July 14, 2006) (court granting a stay while  defendants' *ex parte* and *inter*

22   *partes* reexamination requests were pending before the PTO); *Grayling Indus., Inc. v. GPAC, Inc.*,

23   No. 1:89-CV-451-ODE, 1991 WL 236196, at * 3 (N.D. Ga. Mar. 25, 1991); *Middleton, Inc. v.*

24   *Minnesota Mining and Mfg. Co.*, No. 4:03-CV-40493, 2004 WL 1968669, at *1 and *10 (S.D.

25   Iowa Aug. 24, 2004); *Nanometrics, Inv. v. Nova Measuring Instruments, Ltd.*, No. C06-2252 SBA,

26   2007 WL 627920, at *1 (N.D. Cal. Feb. 26, 2007); *Perricone,* 2002 WL 31075868, at *1 and *4 .

27   In these cases, the district court did not suggest it would revisit the appropriateness of the stay

28   depending on what happened during an interim stage of the reexamination.

1    P&G's statement that "district courts and the Board of Patent Appeals and Interferences

2    must use different standards to interpret claims" is irrelevant.  (Opp. at 6)  If Kraft loses this *inter*

3    *partes* proceeding after all appeals, it will be precluded from making the prior art arguments it is

4    making in the reexamination again before this Court.  *See* 35 U.S.C. 315(c).  That means that

5    Kraft cannot argue that if this Court applies a different standard, the result will come out

6    differently than the result reached by the PTO.  Once the *inter partes* reexamination is final, and

7    assuming the '418 is confirmed in relevant part, Kraft cannot argue about the art currently on

8    reexam before this Court under any standard at all.  As the court in *Echostar Techs. Corp. v. Tivo,*

9    *Inc.*, No. 5:05- CV-81 (DF), 2006 WL 2501494, at *1-*3 (E.D. Tex. July 14, 2006) convincingly

10   observed, after discussing the estoppel restraints on a 3rd party requestor in an *inter partes*

11   reexamination, "courts have an even more compelling reason to grant a stay when an *inter partes*

12   reexamination is proceeding with the same parties, which is precisely the case here." *Id.* at *3.

13       P&G's argues that the mere "possibility" of the PTO and this Court reaching different

14   outcomes regarding the validity of the '418 patent "is no reason to derail this litigation." (Opp. at

15   6)  This misses the point.  If Kraft prevails on the reexamination, then there is no suit, since P&G

16   would have no patent.  If Kraft loses the reexamination, then this case will be substantially

17   narrowed regarding the art that Kraft can cite in its invalidity defense.  Allowing the two

18   proceedings to run simultaneously is the worst of both worlds, since this will necessarily result in

19   substantially wasted resources, as this Court and the parties will expend effort which, irrespective

20   of the reexamination result, could have avoided had the reexamination completed first.

21   **D.    A Stay Will Conserve the Parties' and the Court's Resources and Simplify Any
         Case if the Patent Survives Reexamination.**

22       The parties and the Court will benefit substantially from allowing the *inter partes*

23   reexamination process to play out to its intended end before expending resources on this litigation.

24   Once the final decision is issued, if Kraft is successful, the '418 patent will be found invalid, and

25   there will be nothing to litigate: no claim construction, no discovery, no motion practice, no waste.

26       Even if Kraft is not successful on its appeal, allowing the *inter partes* process to

27   completely play out will save resources for the parties and the Court.  Once the reexamination is

28

1   complete (and assuming Kraft loses), Kraft will be precluded from citing as invalidating the very

2   same prior art it cited to the PTO again to this Court. *See* 35 U.S.C. § 315(c). Thus, allowing the

3   *inter partes* reexamination process to be completed will narrow the issues for the parties to take

4   discovery on and brief and argue to this Court.

5        P&G complains that even if judicial resources might be saved, those resources are now

6   needed "to prevent Kraft from carrying out a calculated strategy to usurp its competitor's market

7   leadership through blatant patent infringement." (Opp. at 5) This argument proves too much, as it

8   could be advanced by an patentee-plaintiff facing reexamination: if accepted, this would preclude

9   a stay in any case where reexamination was pending.

10       If this litigation proceeds, whether P&G can secure a preliminary injunction (or prevail at

11  all) will depend on the extent to which this Court concludes both (a) that Kraft is infringing the

12  '418 patent, and (b) that the '418 patent is valid. P&G has the burden on the former, Kraft on the

13  latter. Kraft would have the right to take substantial discovery concerning claim construction (the

14  '418 has never been judicially construed), the extent to which the patent is valid under the prior art,

15  as well as all other defenses available to Kraft (*e.g.* lack of enablement, indefiniteness, absence of

16  best mode, on-sale bar, etc.). Of course, Kraft has not had the opportunity to conduct any of this

17  research yet; by the same token, P&G has offered no evidence at all on any of these issues relating

18  to its claim or defenses. Absent a stay, the parties will expend enormous resources, all of which

19  may be entirely wasted if the '418 patent never survives the reexamination.

20       **E.    P&G Has No Evidence It Will Be Prejudiced By A Stay.**

21       The law is clear that, "[a] stay of litigation may be appropriate, pending PTO

22  reexamination, even in a case where a preliminary injunction motion has been made." *Pass &*

23  *Seymour, Inc. v. Hubbell Inc.*, 2007 WL 2172648, at *12 (N.D.N.Y. July 23, 2007). The mere fact

24  that P&G filed a preliminary injunction motion cannot, on its own, constitute grounds for

25  declining to grant a stay. If it were, then any patentee-plaintiff could avoid a stay by filing a

26  groundless preliminary injunction motion at the commencement of the suit. P&G must show that

27  it will be unduly prejudiced by a stay. P&G has utterly failed to demonstrate such prejudice.

28       P&G has had no less than <u>three</u> separate opportunities (the preliminary injunction motion,

1   its opposition to the administrative motion, and its opposition to this motion) to present this Court

2   with evidence of its prejudice and irreparable harm.  P&G only provided the Court with rank

3   speculation in uncorroborated statements from its own employees.  (*See, e.g.*, Gemeiner Decl. ¶13

4   (Kraft is "poised" to regain market share); Schmeller Decl. ¶3 (Kraft can "potentially" recapture

5   market share); Roe Decl. ¶5 (Kraft is "now in position" to regain market share)).  This conjecture

6   is insufficient to establish irreparable harm.  *See Goldie's Bookstore, Inc. v. Superior Court*, 739

7   F.2d 466, 472 (9th Cir. 1984) (speculative loss of customers or goodwill not sufficient to establish

8   irreparable injury); *Verizon Cal., Inc. v. Peevey*, No. C03-2838, 2004 WL 3550113, at *3 (N.D.

9   Cal. Jan. 13, 2004) (denying injunction where loss of customers or goodwill was speculative),

10  *vacated on other grounds*, 413 F.3d 1069.

11       Nothing in these statements even comes close to describing *irreparable* harm; i.e., harm

12  for which money damages would be inadequate to compensate P&G .  *See, e.g., Flynt Distributing*

13  *Co., Inc. v. Harvey*, 734 F.2d 1389, 1396 (9th Cir. 1984) (reversing preliminary injunction because

14  money damages provided an adequate remedy).  "[N]either the difficulty of calculating losses in

15  market share, nor speculation that such losses might occur, amount to proof of special

16  circumstances justifying the extraordinary relief of an injunction prior to trial."  *Nutrition 21 v.*

17  *United States*, 930 F.2d 867, 871 (Fed. Cir. 1991) (same).  Indeed, P&G's argument proves too

18  much, as "reliance on possible market share loss would apply in every patent case where the

19  patentee practices the invention."  *Id.*

20       P&G argues that if it were to lose market share to Kraft, it would not be able to reclaim it.

21  (*See, e.g.*,  Gemeiner Decl. ¶16, Roe Decl. ¶9 and Schmeller Decl. ¶3).  This speculation is

22  entirely at odds with the same declarants' testimony that, because of Hurricane Katrina, P&G lost

23  market share, but then *within six months*, recovered it.  (*See, e.g.*, Gemeiner Decl. ¶11; Reply

24  LeBoutillier Decl. ¶10).  P&G's arguments that it will lose "captaincy" or that it will lose the

25  benefit of giving out free samples with its Folgers coffee also fail to demonstrate irreparable

26  injury.  These arguments both presuppose that Kraft will gain material, if not greatest, market

27  share over P&G.  P&G claims its Folgers brand coffee holds a *12 point market share lead* over

28  Kraft's *Maxwell House*.  There is no evidence that Kraft's sale of Maxwell House brand coffee in

                                          -10-

1   plastic containers is threatening this lead.  (Reply LeBoutillier Decl. ¶12)

2              Notably absent from P&G's papers in this case are any statements from its sales staff

3   indicating that Kraft's plastic *Maxwell House* container is having an effect on its sales, any

4   evidence that retailers have broken contracts or reduced their orders of Folgers coffee, any

5   financial data evidencing a change in P&G's sales or market position, any press or other third

6   party analysis indicating that Kraft is actually or even likely to take market share from P&G, or

7   any other similar evidence that even tends to show Kraft is having or will have the effect P&G

8   alleges it will have.  (*See* Reply LeBoutillier Decl. ¶7)  Presumably, P&G did not submit this

9   evidence because it does not exist.  P&G's minimal document production to Kraft thus far is

10  devoid of support (Declaration of Charlie Chou ¶¶ 6-8).  Kraft's internal analysis similarly

11  confirms that this is the case.  (Reply LeBoutillier Decl. ¶¶ 7-8)  In fact, there is no evidence that

12  Kraft's plastic *Maxwell House* container, which has been on the market since July 10, 2007 (over

13  2 1/2 months) has had any adverse effect on P&G's sales at all.[4]  The only independent analyst

14  considering P&G's allegations has concluded — as of last week — that "there is little evidence

15  that the [Kraft] coffee business has started to turnaround.  So for now PG may see the new format

16  as a threat but the damage so far (if there is any) is not evident."  (Reply Stern Decl., Ex. A)

17             P&G's own financial statements and securities filings do not give any indication or

18  warning that P&G's coffee business will be adversely effected by Kraft's plastic coffee container,

19  or that its goodwill is being eroded by Kraft's conduct.  (Reply Stern Decl. Exs. C, D)  To the

20  contrary, P&G has made numerous public announcements *before and during this lawsuit* that its

21

22  _____

    [4]  Kraft's new container was on store shelves by July 10, 2007 or at the latest a week or two
23  thereafter.  (Reply LeBoutillier Decl. ¶ 6)  P&G submitted a declaration in support of its motion
    for preliminary injunction stating that "[i]n late June 2007, one of my employees responsible for
24  competitive product monitoring made me aware that Kraft was selling roast and ground coffee in a
    39-ounce plastic container.  The exact timing of Kraft's introduction of the product is unclear.
25  When we found the Kraft's new plastic container on store shelves, my group was not aware of any
    announcements Kraft had made regarding the container."  (Huntington Decl. ¶4)  If Mr.
26  Hungtington's declaration is to be believed, P&G delayed nearly *three months* before bringing its
    motion.  P&G's delay itself militates against a finding that it will be prejudiced by a stay.  *Abbot*
27  *Labs v. Selfcare, Inc.*, 17 F.Supp. 2d 43, 50 (D. Mass. 1998).

28

DEFENDANT'S REPLY ISO MOTION FOR STAY, OR ALTERNATIVE MOTION TO EXPEDITE DISCOVERY
CASE NO. C 07-4413 PJH

1    overall business (of which coffee is a portion) is continuing to increase in sales and profitability.

2    (*Id.*, Exs. C, D; citing continued growth in investor guidance figures.)  P&G cannot honestly claim

3    material harm, much less irreparable harm, even if Folgers were to lose some sales or market share

4    to *Maxwell House* brand coffee.  *See Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 855 F. Supp.

5    1500, 1516-17 (S.D. Ohio 1994) (finding fierce competition between the parties a factor weighing

6    against injunction).

7        Because its very own evidence does not support its irreparable harm or undue prejudice

8    case, P&G asks this court to deny the stay at least until P&G's motion for preliminary injunction

9    is fully briefed.  (Opp. at 9:12-14)  But this misses the point.  It was P&G's burden here, at this

10    Motion to Stay, to establish that a stay would cause it undue prejudice or irreparable injury.  The

11    Court and Kraft now have the benefit of P&G's preliminary injunction and motion to stay

12    declarations.  If these declarations do not prove irreparable injury or prejudice from the granting of

13    a stay, then there is no need to require Kraft to complete its opposition to the preliminary

14    injunction motion.  P&G presumably desires to see how Kraft will respond to P&G's conclusory

15    arguments about infringement in its preliminary injunction motion.  But P&G cites to no authority

16    for the proposition that, in a Motion to Stay, Kraft must rebut P&G's arguments of infringement.

17        P&G also complains that, in *Perricone*, where the court holds that *even when a*

18    *preliminary injunction motion is pending*, a stay the litigation pending a reexamination can still be

19    appropriate, the defendant's sales "occur[ed] primarily through radio advertisement and mail order

20    and reach[ed] a limited geographic market (the Northeast) as compared to the nationwide market

21    reached by the plaintiff's product."  *Perricone*, 2002 WL 31075868, at *3 .  This finding in

22    *Perricone* is irrelevant.  The Court in *Perricone* clearly held that the "loss of customers and sales

23    of the plaintiff's product and the erosion of the plaintiff's position in the market — while serious,

24    *does not amount to undue prejudice*."  *Id.* (emphasis added).  Just like the plaintiff in *Perricone*,

25    P&G has greater market share than the party against whom an injunction is being sought.  If this

26

27

28

DEFENDANT'S REPLY ISO MOTION FOR STAY, OR ALTERNATIVE MOTION TO EXPEDITE DISCOVERY
CASE NO. C 07-4413 PJH

1  fact was irrelevant in *Perricone*, it is equally irrelevant here.  As in *Perricone*, a stay should issue

2  here in the face of P&G's preliminary injunction motion.[5]

3      The market for ground, roast coffee is a well-established, mature market.  (*See* Huntington

4  Decl. ¶ 6)  P&G's AromaSeal is not the type of product — such as, for example, a new

5  semiconductor technology — that likely will become obsolete before this litigation ends, or whose

6  success depends on *establishing* a market for a new product.  *Cf. TiVo Inc. v. EchoStar Commc'n

7  Corp.*, 446 F.Supp.2d 644, 664, 669 (E.D. Tex. 2006) (following jury verdict of willful

8  infringement, district court orders permanent injunction and emphasizes nascent market and

9  "critical time in market's development").

10     P&G also suggests, without any supporting evidence, that a stay would "prejudice P&G's

11 ability to obtain evidence."  (Opp. at 15:10-12)  P&G has presented no reason to believe that any

12 relevant evidence will become unavailable should this Court stay the action pending final

13 resolution of the reexamination.  The patent issued in January of this year, and Kraft began selling

14 its *Maxwell House* brand coffee in a plastic contain in July of this year.  P&G does not explain

15 how, under these circumstances, evidence might be lost.  Moreover, the parties can agree to

16 preserve any relevant evidence pending the outcome of the *inter partes* proceeding.

17 **II.    IF THE COURT DOES NOT GRANT KRAFT'S MOTION TO STAY, GOOD
        CAUSE EXISTS TO GRANT KRAFT'S MOTION TO EXPEDITE DISCOVERY
18      AND RESCHEDULE THE PRELIMINARY INJUNCTION HEARING DATE**

19     P&G admits that expedited discovery is appropriate upon a showing of good cause, and

20 that "[g]ood cause may exist if Kraft can show an urgent need for discovery to respond to P&G's

21 preliminary injunction."  (Opp. at 16); *see also* W. Schwarzer, A.W. Tashima, J. Wagstaffe,

22 FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:157 (1993).  Kraft has made this showing here.

23     The undisputed evidence shows that, if P&G's injunction is granted, Kraft's lost sales

24 _____

25 [5]  The *Perricone* court further noted that a stay was appropriate notwithstanding the "serious" loss of customers and market share because "profits lost by the plaintiff by the continued sales of
26 the defendant's product can be compensated by damages."  2002 WL 31075868, at *3.  And, in
   *Perricone*, like here, "the patented invention at issue [did] not appear to be a short-lived
27 technology, such as electronics or software, such that a stay of this case will permit the defendant
   to infringe upon the patented invention for the life of that invention.  *Id.*
28

51282/2236229.2                             -13-

1  revenue is on the order of $250 million.  (*See* Opening LeBoutillier Decl. ¶3)  P&G has no proof

2  that, absent a preliminary injunction, it has or will suffer damages approaching those Kraft would

3  incur from issuance of the injunction.  Instead, P&G offers a declaration of Scott Goodfellow,

4  P&G's finance manager for Folgers coffee in North America, who disputes Mr. LeBoutillier's

5  conclusions by explaining how P&G was able to respond to Hurricane Katrina; and doing his own

6  calculations of Kraft's likely financial loss based on his assumptions of how much of Kraft's

7  coffee would be affected.  (Opp. at 11-13)  Put simply, Mr. Goodfellow's assumptions are all

8  wrong, as painstakingly explained by Mr. LeBoutillier.  (Reply LeBoutillier Decl. ¶¶17-30)

9  P&G concedes that Kraft should get some discovery, but complains that P&G, not Kraft,

10  should be allowed discovery.  (Opp. at 15-16)  In fact, courts do routinely grant expedited

11  discovery to defendants facing the prospect of a preliminary injunction.  *See, e.g., AT&T Corp. v.*

12  *Vision One Security Sys.*, 914 F.Supp. 392, 396 (S.D. Cal. Aug. 15, 1995) ("[T]he Court granted

13  defendants' request for expedited discovery in connection with the preliminary injunction.");

14  *Christian v. Alloy, Inc.*, 2004 WL 1375274, *2 (S.D.N.Y. June 17, 2004) (granting expedited

15  discovery to defendant opposing preliminary injunction); *RDS Group Ltd. v. Davison*, No. 02-CV-

16  8168, 2003 U.S. Dist. LEXIS 1337 (Jan. 17, 2003) (same).

17  P&G's argument that Kraft may not get discovery because it has not formally served

18  discovery is a makeweight.  Until the Rule 26(f) conference, neither party can conduct discovery;

19  and even were discovery to be allowed, the normal 30-day response period for document and other

20  production would be unworkable given the current preliminary injunction schedule.  This is why

21  Kraft has moved the Court, as an alternative remedy, for leave to take expedited discovery.  And,

22  although P&G suggests that it was ready and willing to allow discovery, the fact is that the limited

23  documents it has produced to date are largely "filler," and not directly related to any of the

24  testimony P&G offered to support its preliminary injunction motion.  (Chou Decl. ¶¶ 6-9, 11)

25  P&G's criticism of Kraft's proposed discovery is also misplaced.  As reflected in the chart

26  attached to the Stern Declaration as Exhibit G, each of Kraft's discovery requests was specifically

27  tailored to issues raised by P&G's preliminary injunction motion.  P&G also offers a "gotcha"

28  argument, by contending that, although P&G has presented 10 declarants in support of its

DEFENDANT'S REPLY ISO MOTION FOR STAY, OR ALTERNATIVE MOTION TO EXPEDITE DISCOVERY
CASE NO. C 07-4413 PJH

1  preliminary injunction motion (which does not even include several of the '418 inventors), the

2  presumptive 10 deposition under F.R.C.P. 30 should preclude Kraft from taking all relevant

3  depositions in this case.  Kraft submits that, under the circumstances, it is difficult to imagine a

4  better situation where good cause exists to exceed the 10 deposition presumption.  For P&G to

5  present 10 witnesses and then hide behind FRCP 30 flies in the face of the principle that one

6  seeking equity must do equity.

7        The discovery Kraft seeks is appropriate, and P&G's argument that it would suffer

8  irreparable harm even from a brief continuance to allow Kraft to take limited expedited discovery

9  fails for all the reasons expressed above as to why P&G has not shown irreparable harm

10  generally.[6]  Moreover, regardless what showing P&G will make to establish irreparable harm in

11  the context of a preliminary injunction, there is absolutely no evidence that P&G would suffer

12  irreparable harm from the brief continuance Kraft seeks to conduct discovery.  P&G cannot

13  seriously argue, for example, that it would lose appreciable market share in a few weeks' time, or

14  that its customer loyalty levels would suffer any appreciable loss during that short time frame.  At

15  most, P&G would be subject to some increased lost sales, which are fully compensable at law and

16  therefore not "irreparable" harm.

17  **Conclusion**

18        For all these reasons, and those set forth in Kraft's opening brief, Kraft's Motion to Stay or

19  Alternative Motion to Expedite Discovery and Reschedule Hearing Date Should Be Granted.

20

21

22

23

24      [6]  P&G complains that the holiday season is a busy time for the ground roast coffee market, and a P&G finance manager declares that "[a]pproximately 33% of its annual sales occurred between October and December."  (Goodfellow Decl. ¶ 15)  Goodfellow estimates that in FY 2007/08, approximately 36% of its sales will occur between October and December.  (*Id.* ¶ 16)  Even if this were true, it is hardly earth-shattering, since 36% over three months is 12% per month.  The remaining 64% of sales occur over the remaining 9 months, or 7.11% per month.  In other words, P&G is arguing only that its sales in October, November and December are approximately 5% higher per month.

25

26

27

28

-15-

DEFENDANT'S REPLY ISO MOTION FOR STAY, OR ALTERNATIVE MOTION TO EXPEDITE DISCOVERY
CASE NO. C 07-4413 PJH

1

2   DATED:  September 27, 2007          QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
3

4
                                        By /s/
5                                          Claude M. Stern

6
                                        Attorneys for Kraft Foods Global, Inc.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

51282/2236229.2
                                        -16-
DEFENDANT'S REPLY ISO MOTION FOR STAY, OR ALTERNATIVE MOTION TO EXPEDITE DISCOVERY
CASE NO. C 07-4413 PJH