QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Claude M. Stern (Bar No. 96737)
    claudestern@quinnemanuel.com
  Evette D. Pennypacker (Bar No. 203515)
    evettepennypacker@quinnemanuel.com
  Mike D. Powell (Bar No. 202850)
    mikepowell@quinnemanuel.com

555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Defendant
KRAFT FOODS GLOBAL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KRAFT FOODS GLOBAL, INC, a Delaware Corporation,<br><br>Defendant. | CASE NO. C 07-4413 PJH<br><br>**DECLARATION OF CLAUDE STERN IN SUPPORT OF KRAFT FOODS GLOBAL, INC.'S REPLY IN SUPPORT OF MOTION TO STAY, OR IN THE ALTERNATIVE, TO EXPEDITE DISCOVERY AND RESCHEDULE PRELIMINARY INJUNCTION HEARING**<br><br>Date: October 3, 2007<br>Time: 9:00 AM<br>Place: Courtroom 3, 17th Floor |

I, Claude M. Stern, declare as follows:

1. I am a partner with the law firm of Quinn Emanuel Urquhart Oliver &Hedges LL, counsel to defendant Kraft Foods Global, Inc. ("Kraft"), defendant in the above-referenced action.

2. Each of the following statements is made of my own personal knowledge and, if called upon to testify about any of these matters, I could and would competently do so.

3. Attached hereto as Exhibit A is a true and correct copy of a J.P. Morgan North American Equity Research Report, issued last week, and dated September 18, 2007, which addresses the extent to which Kraft is likely to cause Procter & Gamble ("P&G") injury or damage as a result of Kraft's sale of *Maxwell House®* brand coffee in the new plastic container. In the very introduction of the report, the author states:

> The PG lawsuit against Maxwell House's new packaging led us to take a detailed look at KFT's [Kraft's]coffee business. There is little evidence that the KFT coffee business has started to turnaround. **So for now PG may see the new format as a threat but the damage so far *(if there is any)* is not evident**. *(Emphasis added.)*

4. Attached hereto as Exhibit B is a true and correct copy of a P&G Form 8-K which P&G filed with the Securities & Exchange Commission on or about September 25, 2007 (2 days ago). This report can be obtained from the P&G website under the "SEC Filings" headline (at http://www.pginvestor.com/phoenix.zhtml?c=104574&p=irol-sec), and indicates on the last page the net sales and net earnings that P&G received for, among other things, the "Snacks, Coffee and Pet Care" product lines, for each of the last three fiscal years (2005, 2006, 2007). According to this document, the annual sales and earnings for P&G, that presumably would include sales of the *Folgers* brand coffee products, were as follows:

| Fiscal year | Snacks, Coffee and Pet Care Net Sales | Snacks, Coffee and Pet Care Net Earnings |
| --- | --- | --- |
| 2005 | $4,314,000,000 | $444,000,000 |
| 2006 | $4,383,000,000 | $385,000,000 |
| 2007 | $4,537,000,000 | $477,000,000 |

5. Attached hereto as Exhibit C is a true and correct copy of a press release issued by P&G last week on September 18, 2007, which I obtained from the P&G website ( at http://www.pginvestor.com/phoenix.zhtml?c=104574&p=irol-newsArticleMain&ID=1036344). In the press release, P&G represents that:

> The Procter & Gamble Company (NYSE: PG) confirmed previously announced sales and earnings guidance for the July to September quarter of fiscal year 2007/08. **The company continues to expect sales growth for the quarter of six percent to eight percent, organic sales growth in line with previous guidance and diluted earnings per share of $0.88 to $0.90**. (Emphasis added.)

6. Attached hereto as Exhibit D is a true and correct copy of a press release issued by P&G about three (3) months ago, on June 5, 2007, which I obtained from the P&G website ( at http://www.pginvestor.com/phoenix.zhtml?c=104574&p=irol-newsArticle&ID=1011230&highlight=44). In the press release, P&G represents that:

> The Procter & Gamble Company (NYSE: PG) confirmed previously announced sales and earnings guidance for the April to June quarter of fiscal year 2006/07. **The company continues to expect sales growth for the quarter of six percent to seven percent, organic sales growth in line with previous guidance and diluted earnings per share of $0.64 to $0.66**. (Emphasis added.)

7. I have searched the P&G website and Google generally to find any press release or other securities filings where P&G states that P&G expected its Folgers brand earnings or sales in the coming quarter or two quarters to be adversely affected (whether materially or not) by Kraft's release in July 2007 of its *Maxwell House* brand coffee in plastic containers, or by the continued sale of Kraft's product. I could find no such press release, filing or report.

8. In filing the Preliminary Injunction in this case and in filing its opposition to this Motion to Stay, P&G has never submitted to this Court the file history for the '418. Attached hereto as Exhibit E is a true and correct copy of just the last office action excerpt of this file history. As an example only, this excerpt reveals that, in trying to convince the PTO to issue the '418 patent, P&G sought to distinguish certain prior art relied on and cited by the PTO. In seeking to distinguish this prior art, P&G made the claim to the PTO that the claims of the '418

patent, unlike the specific prior art cited, incorporate something referred to as "region of deflection." In its explanation to the PTO, P&G sought to define the specific characteristics of a "region of deflection." Nowhere in its preliminary injunction papers or in its opposition to this Motion to Stay has P&G made any reference to this file history segment (or any other portion of the file history).

9. In the short time my firm has been involved in this case, we have gathered various forms of prior art (both printed publication and actual inventions) that I believe render the asserted claims of the '418 patent invalid, or, at a minimum, reflect a good faith belief that the asserted claims of the '418 patent are invalid. We have also prepared various charts (all of which are work product) that reflect how prior art packaging art maps onto the asserted claims of the '418 patent, and establish that the claims of the '418 patent are, at a minimum, obvious under the *KSR v. Teleflex* standard, and therefore invalid under Section 103 of the Patent Act. As an example only, I attach hereto as Exhibit F a true and correct copy of one of these charts in draft form (applied to a representative asserted claim).

10. P&G argues in Opposition to the Motion to Stay that some or most of the document requests, interrogatories or requests for admissions that we served on P&G last week as part of our Motion to Stay seek irrelevant information or are otherwise overbroad. Attached hereto as Exhibit G is a true and correct copy of a chart that I have assembled (portions were assembled at my instruction) that identifies in general how each of the discovery requests we have provided to P&G is relevant to the claim asserted or defenses thereto in this case. As of this date, I have received no communication from P&G or its lawyers indicating that P&G cannot locate the requested documents or information, or that it is not feasible for P&G to obtain the documents or information, or that it is overly burdensome for P&G to obtain the documents or information.

///

///

///

///

DECLARATION OF CLAUDE STERN
CASE NO. C 07-4413 PJH

1   I declare under penalty of perjury of the laws of the United States that the foregoing is true
2   and correct. Executed on September 27, 2007, at Redwood Shores, California.

CLAUDE M. STERN